# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| PHYLLIS BALL, by her General Guardian, PHYLLIS BURBA, et al., | Case No. 2:16-cv-282 |
| Plaintiffs, | JUDGE EDMUND A. SARGUS |
| v. | MAGISTRATE JUDGE ELIZABETH A. PRESTON DEAVERS |
| JOHN KASICH, Governor of Ohio, in his official capacity, et al., | |
| Defendants. | |

## MOTION TO DISMISS OF OHIO GOVERNOR JOHN KASICH

Defendant Ohio Governor John Kasich moves this Court to dismiss all claims asserted against him pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, Fed. R. Civ. P. 12(b)(6). Because Plaintiffs have failed to allege facts sufficient to overcome the Governor's Eleventh Amendment immunity, this Court lacks jurisdiction over their claims. The Governor also specifically joins and incorporates the motion to dismiss concurrently filed by Defendants John Martin and John McCarthy.  This motion is more fully supported by the attached memorandum in support.

Respectfully submitted,

MIKE DeWINE
Ohio Attorney General

*/s/ Ryan L. Richardson*
RYAN L. RICHARDSON (0090382)\*
　　*Lead and Trial Counsel*
Assistant Attorney General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio  43215
Tel: (614) 466-2872; Fax: (614) 728-7592
ryan.richardson@ohioattorneygeneral.gov

*Counsel for Defendant Governor John Kasich*

**MEMORANDUM IN SUPPORT**

This case concerns Ohio's system for serving people with developmental disabilities. As Plaintiffs recognize within their Complaint, Ohio's state agencies—such as the Department of Developmental Disabilities—are responsible for managing Ohio's service system. Plaintiffs, therefore, have named the Directors of multiple state agencies involved in providing developmental disability services.

But, in addition to these Directors, Plaintiffs have also named Ohio's Governor as their initial defendant. This is improper. As many courts have held, the Governor's oversight of the executive branch and ability to influence policy are insufficient reasons to name him as a party in a lawsuit. Rather, applying Eleventh Amendment immunity and *Ex parte Young* (as well as basic pleading standards), to name an official in a case, a plaintiff must allege that the official is actually connected to enforcing the challenged conduct. Here, because the Governor lacks the necessary connection, he should be dismissed.

**BACKGROUND**

Plaintiffs, six individuals with developmental disabilities and the Ability Center of Greater Toledo, bring this action against the Governor, the Director of the Ohio Department of Developmental Disabilities, the Director of the Ohio Department of Medicaid, and the Director of Opportunities for Ohioans with Disabilities. Relying on an aggressive reading of *Olmstead v. L.C.*, 527 U.S. 581 (1999), Plaintiffs allege that Ohio's approach to serving people with developmental disabilities violates federal law. They purport to bring claims under Title II of the American with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and the Social Security Act. Compl. ¶ 12. They seek broad declaratory and injunctive relief as well as certification of a class action. *Id.*

## STANDARD

The Governor moves for dismissal based on Eleventh Amendment immunity. Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle for this motion. *Machisa Design Servs., Inc. v. Bd. of Educ. of Sch. Dist of City of Columbus*, No. 2:12–cv–838, 2013 WL 80273, at *2 (S.D. Ohio Jan. 7, 2013). But when such a motion raises a facial attack to the sufficiency of the pleadings (as here), the Court employs the same standards as it does under Rule 12(b)(6). *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)). Plaintiffs must plead sufficient facts, taken as true, to state a facially plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court need not accept conclusory statements or legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

The Governor also moves to dismiss (in the alternative to Eleventh Amendment immunity) for failure to state a claim under Rule 12(b)(6). As detailed below, the Complaint fails to connect the Governor to any of the alleged violations. *See infra* § II.B. Although case law often addresses this problem within the context of Eleventh Amendment immunity, Plaintiffs' failure to allege a sufficient connection is also fatal under general pleading requirements. At bottom, Plaintiffs fail to plead sufficient facts to state a facially plausible claim against the Governor; because one cannot reasonably infer from these allegations that the Governor has committed any violation, the Governor should be dismissed.

## LAW AND ARGUMENT

**I.  The Governor joins and incorporates the motion to dismiss of the other State Defendants.**

Concurrent with the present motion, Defendants John Martin, Director of the Ohio Department of Developmental Disabilities, and John McCarthy, Director of the Ohio Department of Medicaid are filing a motion to dismiss based on the *Martin* Consent Decree, res judicata,

3

ripeness, lack of standing, and failure to state a claim. Any dismissal on these grounds would apply equally to the Governor. The Governor fully joins that motion to dismiss and incorporates it as if written herein. He moves separately only to outline independent reasons requiring his dismissal.

**II.     The Governor is entitled to immunity from Plaintiffs' ADA claim.**

The Eleventh Amendment bars lawsuits against States in federal court. *Babcock v. Michigan*, 812 F.3d 531, 533-34 (6th Cir. 2016). There are three exceptions to Eleventh Amendment immunity: (1) the State has consented to suit; (2) Congress has abrogated the State's immunity; or (3) the suit is against a state official in his/her official capacity (for prospective relief) under *Ex parte Young*, 209 U.S. 123 (1908). *Beil v. Lake Erie Corr. Records Dept.*, 282 F. App'x 363, 366 (6th Cir. 2008).

Here, the Complaint reflects that Plaintiffs are trying to invoke the third exception—a claim against the Governor in his official capacity. *See* Compl., ¶ 83 ("Defendant Kasich is sued in his official capacity."). The Sixth Circuit has held that plaintiffs can bring ADA claims against state officials in their official capacity under the *Ex parte Young* doctrine. *See Carten v. Kent State Univ.*, 282 F.3d 391, 395-97 (6th Cir. 2002); *see also Patel v. Wright State Univ.*, No. 3:07–cv–243, 2009 WL 1458908, at *12 (S.D. Ohio May 26, 2009) (holding that Eleventh Amendment immunity bars ADA claims against state officials for monetary damages, but not injunctive relief under *Ex parte Young*). *But* it naturally follows that, to bring an *Ex parte Young* claim, a plaintiff must satisfy *Ex parte Young* requirements. In this case, Plaintiffs do not.

    **A.     *Ex parte Young* requires a sufficient connection between the named official and the challenged conduct.**

"Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law[.]" *S & M Brands, Inc.*

4

*v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). But the exception only applies when the named official has a *sufficient connection to enforcement* of the challenged statute or conduct. *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415-16 (6th Cir. 1996); *see also Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) ("*Young* does not reach state officials who lack 'a special relation to the particular statute' and '[are] not expressly directed to see to its enforcement.' And it requires more than a bare connection to administering a statute.") (quoting *Ex parte Young*, 209 U.S. at 157).

In other terms, the doctrine requires a challenge to "a state official's *action*." *Deters*, 92 F.3d at 1415 (emphasis in original). "The state official sued [] must have, by virtue of the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff complains." *Floyd v. Cnty. of Kent*, 454 F. App'x 493, 499 (6th Cir. 2012); *Nat'l Coalition for Students with Disab. Educ. & Legal Def. Fund v. Taft*, No. C2-00-1300, 2001 WL 1681115, at *4 (S.D. Ohio Sept. 24, 2001) ("When a state official has no connection to the enforcement of a statute, and therefore no duty to a plaintiff, he is properly dismissed as a defendant."). Absent such connection, "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Deters*, 92 F.3d at 1416 (collecting cases).

"Courts have not read *Young* expansively," *id.* at 1415, and have routinely dismissed government officials when allegations fail to connect the official to the challenged conduct. *See, e.g.*, *Top Flight Entertainment, LTD. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) (dismissal for failing to allege a sufficient connection "between [the Attorney General] and the alleged unconstitutional acts"); *Brown v. Strickland*, No. 2:10–cv–166, 2010 WL 2629878, at *3 (S.D. Ohio June 28, 2010) (dismissing Governor and Attorney General); *Taft*, 2001 WL 1681115, at

5

*4 (dismissing Governor); *Confederated Tribes & Bands of Yakama Indian Nation v. Locke*, 176 F.3d 467, 469-70 (9th Cir. 1999) (dismissing Governor because he lacked connection to operating state lottery); *Woods v. Ohio*, No. 5:11CV565, 2011 WL 4730529, at *3 (N.D. Ohio Oct. 7, 2011) (dismissing Governor).

And federal courts have repeatedly rejected attempts to make Governors defendants based on their general roles in appointing officials, supervising officials, setting policy, and making budget recommendations. *See, e.g.*, *Hendricks v. Kasich*, No. 2:12–cv–729, 2013 WL 2243873, at *9 (S.D. Ohio May 21, 2013) (holding, despite Governor's role in budget process, that Governor was not responsible for enforcing law/policy relating to inmate medical care); *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 714 F.2d 946, 953 (9th Cir. 1983) (concluding that Governor's role in "making general policy and budget recommendations, as well as administrative appointments," was insufficient to connect him to alleged school segregation); *Tohono O'odham Nation v. Ducey*, 130 F.Supp.3d 1301, 1310-11 (D.Ariz. 2015) ("State executive officers routinely influence decisions of the state's executive branch—which is virtually always the branch whose actions are challenged in cases raising the *Ex parte Young* exception—and yet courts consistently hold that general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.") (internal quotation omitted); *Kobe v. Haley*, No. 3:11–1146, 2012 WL 3269221, at *4 (D.S.C. Aug. 10, 2012) (collecting case law rejecting notion that "appointment power [and] general supervisory power" are sufficient to make government officials defendants); *Connecticut Ass'n of Health Care Facilities, Inc. v. Rell*, No. 3:10CV136, 2010 WL 2232693, at *5 (D.Conn. June 3, 2010) (finding Governor's introduction of budget bill was insufficient to connect her to challenge of Medicaid program).

6

**B.    Plaintiffs fail to allege a sufficient connection between the Governor and the alleged violations.**

Applying these principles, Plaintiffs fail to allege a sufficient connection between the Governor and the challenged conduct relating to Ohio's developmental disability services.

As Plaintiffs concede in their pleadings, specific state agencies are responsible for managing Ohio's provision of services and funding to people with developmental disabilities. *See, e.g.*, Compl. ¶ 148 (alleging that the state agency Defendants are "responsible for the planning, funding, oversight, and delivery of employment services for people with intellectual and developmental disabilities in Ohio"). Under Ohio law, the Department of Developmental Disabilities is responsible for Ohio's "comprehensive statewide programs and services for persons with . . . a developmental disability and their families[.]" Ohio Rev. Code § 5123.02(A); Compl. ¶ 84. The Department of Medicaid is Ohio's "single state agency" for "supervis[ing] the administration of the medicaid program." Ohio Rev. Code § 5162.03; Compl. ¶ 90. Finally, Opportunities for Ohioans with Disabilities is the agency responsible, under the Rehabilitation Act, for administering Ohio's vocational rehabilitation services. *See* 29 U.S.C. § 721(a)(2); Compl. ¶ 94.

In contrast to these specific agency assignments and duties, Plaintiffs try to connect the Governor to this case through his general supervisory authority. They reference the Governor's role in "seeing that [Ohio laws] are faithfully executed," Compl. ¶ 79; "setting policy for executive departments," *id.* ¶ 80; recommending and approving the budget, *id.* ¶ 81; and issuing executive orders, *id.* ¶ 82. As detailed above, these are exactly the type of general responsibilities courts have found insufficient under *Ex parte Young*. If these types of duties were enough, this would encourage the over-naming of Governors in lawsuits: "Were the law otherwise, the [*Ex parte Young*] exception would always apply. Governors who influence state

executive branch policies (which virtually all governors do) would always be subject to suit under *Ex parte Young*. The exception would become the rule." *Ducey*, 130 F.Supp.3d at 1311.

Contrary to Plaintiffs' suggestion, the creation of the Office of Health Transformation fails to justify naming the Governor as a defendant. *See* Compl. ¶ 82. Much like the Governor, the Office's role is one of broad oversight, helping coordinate general policies across Ohio's overall health system. *See* Executive Order 2011-02K (referenced at Compl. ¶ 82, attached in full as Governor's Exhibit A). But the Office in no way usurps the responsibilities of Ohio's state agencies in administering services to people with developmental disabilities. And, although created through Executive Order, the Office—like other executive agencies—has its own Director responsible for its day-to-day operation. Finally, as is the case with the Governor, Plaintiffs' allegations fail to link the Office's conduct to the violations they allege.

Considering the above circumstances, the Governor should be dismissed. Tellingly, at least one federal court has dismissed a Governor under highly similar circumstances to the present case. *See Peter B. v. Sanford*, No. 6:10–767, 2012 WL 2149784 (D.S.C. June 13, 2012). In *Sanford*, individuals with disabilities brought a lawsuit against the South Carolina Governor alleging that the State's administration of its Medicaid program was in violation of *Olmstead*. *Id.* at *1-*2. The court dismissed the claims against the Governor applying Eleventh Amendment immunity. *Id.* at *4-*5. It held that the Governor's supervisory power, appointment power, and ability to review and comment on the Medicaid plan were insufficient to meet *Ex parte Young* requirements. *Id.* at *5. The court further recognized that "as a practical matter, to impose an injunction on the governor to cure any alleged problems based on 42 C.F.R. § 431 or 42 U.S.C. § 1396 would have no real effect." *Id.*

Likewise here, Plaintiffs try to connect the Governor to this case through his general supervisory authority. But given that separate state agencies are responsible for administering Ohio's service system, any injunction as to the Governor would be without practical effect.

### III. Plaintiffs' Rehabilitation Act claim also fails against the Governor.

Moving to the Rehabilitation Act, Plaintiffs' claim against the Governor fails for similar reasons. The Governor is also an improper defendant for this claim.

Section 504 of the Rehabilitation Act prohibits disability discrimination by "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Under the Rehabilitation Act, any waiver of Eleventh Amendment immunity is linked to receipt of federal funds. *Nihiser v. Ohio E.P.A.*, 269 F.3d 626, 628 (6th Cir. 2001). In *Nihiser*, the Sixth Circuit held that state agencies waive Eleventh Amendment immunity "when they accept federal funds." *Id.*; *see also* 42 U.S.C. § 2000d-7 (stating that immunity will not apply, under the Rehabilitation Act, to "discrimination by recipients of Federal financial assistance").

Many courts have further explained that waiver of Eleventh Amendment immunity *is limited to the state agency receiving federal funding*. *See, e.g.*, *Doe v. Nebraska*, 345 F.3d 593, 598 (8th Cir. 2003) ("[T]his waiver of sovereign immunity is limited and applies only to the individual agency that receives the federal funds, i.e., a state can avoid waiver by accepting federal funds for some departments and declining them for others.") (internal quotations omitted); *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 113 n.2 (2nd Cir. 2001) ("[Section] 504 applies only to those government agencies or departments that accept federal funds, and only those periods during which the funds are accepted."); *Everett H. v. Dry Creek Joint Elementary Sch. Dist.*, 5 F.Supp.3d 1167, 1181 (E.D. Cal. 2014) ("Defendants correctly point out that proper defendants under § 504 'are recipients of federal funding.'") (internal quotations omitted); *Dansby-Giles v. Jackson State Univ.*, 638 F. Supp.2d 698, 701

(S.D. Miss. 2009) ("[T]he Rehabilitation Act applies only to those state agencies or departments receiving federal funds[.]").  Receiving federal funding is also a necessary element of a Rehabilitation Act claim. *Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030-31 (6th Cir. 1995).

Several courts have similarly held that the proper defendant for a Rehabilitation Act claim is the head of the agency whose actions are in question. *See, e.g.*, *Klein v. United States*, No. 3:15-cv-134, 2015 WL 6736114, at *5 (S.D. Ohio Nov. 4, 2015) (holding the proper defendant under the Rehabilitation Act "is the head of the department, agency or unit in which the alleged discriminatory acts occurred") (internal quotations omitted); *Crawford v. Hagel ex rel. U.S. Dept. of Def.*, No. 1:14–CV–539, 2014 WL 5343803, at *1 n.1 (W.D. Mich., Oct. 20, 2014) ("[D]istrict courts within the Sixth Circuit have held that the proper defendant in claims by federal government employees under the Rehabilitation Act is the head of the federal agency or department."); *Kirby v. Brown*, No. 2:13-CV-00021, 2013 WL 4780767, at *10 (E.D. Cal. Sept. 5, 2013) (holding that a state agency, not the Governor, was proper defendant for Section 504 claim); *McAuliffe v. U.S. Dept. of Veterans Affairs*, No. C 06-07353, 2007 WL 2123690, at *2 (N.D. Cal. July 23, 2007) ("The only proper defendant for a claim under Section 504 of the Rehabilitation Action is the head of the relevant agency.").

Here, Plaintiffs have failed to plead sufficient facts showing that the Governor has waived immunity.  The Governor does not receive the relevant federal funding.  Rather, it is the Department of Developmental Disabilities (whose Director is included in this lawsuit) that receives and manage federal funds associated with disability services.  Again, the Governor is *not* the proper defendant.

Beyond potential waiver, this Court has also indicated that parties may bring *Ex parte Young* claims under the Rehabilitation Act. *See Jackie S. v. Connelly*, 442 F.Supp.2d 503, 517 (S.D. Ohio 2006). Any such claim, however, fails against the Governor for the reasons already detailed above, *see infra* § II.B; Plaintiffs fail to allege a sufficient connection between the Governor and the challenged conduct.

IV. **Eleventh Amendment immunity bars Plaintiffs' Social Security Act claim.**

Finally, the Governor is also entitled to immunity from Plaintiffs' third claim under the Social Security Act. Plaintiffs allege that Ohio's Medicaid program fails to comply with 42 U.S.C. § 1396. But the Sixth Circuit has held that Congress failed to abrogate immunity through this statute. *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002); *see also Davidson v. Howe*, 749 F.3d 21, 28 (1st Cir. 2014) ("The provisions of the Medicaid Act upon which plaintiffs rely do not contain anything approaching an unequivocal[ ] express[ion] of an intent to abrogate.") (internal quotations omitted); *Greenless v. Almond*, 277 F.3d 601, 606 n.6 (1st Cir. 2002) ("States do not waive their Eleventh Amendment immunity merely by participating in the Medicaid program."). Nor, as described above, have Plaintiffs stated sufficient facts to state an *Ex parte Young* claim against the Governor.

V. **The Governor's inclusion as an official capacity defendant is redundant.**

Even setting aside immunity, from a practical standpoint, naming the Governor in his official capacity was unnecessary. An official capacity claim against a state official is considered a claim against the State. *McGath v. Hamilton Local Sch. Dist.*, 848 F.Supp.2d 831, 838 (S.D. Ohio 2012). Thus, when the relevant agency/entity is already included in a lawsuit, courts regularly dismiss redundant official capacity claims against individuals. *See, e.g.*, *id.*; *Parson v. Homer*, No. 1:12CV948, 2013 WL 5441734, at *3 (S.D. Ohio Sept. 27, 2013).

Here, because Plaintiffs bring claims against the state agencies responsible for managing Ohio's developmental disability services, the official capacity claim against the Governor is redundant. None of the injunctive relief Plaintiffs seek is actually aimed at functions of the Governor. Under these circumstances, because the Governor's participation in this case is unnecessary, he should be dismissed.

## **CONCLUSION**

For the above reasons, the Court should dismiss Plaintiffs' claims against the Governor.

> Respectfully submitted,
>
> MIKE DeWINE
> Ohio Attorney General
>
> *s/ Ryan L. Richardson*
> RYAN L. RICHARDSON (0090382)*
>     **Lead and Trial Counsel*
> Assistant Attorney General
> Constitutional Offices Section
> 30 East Broad Street, 16th Floor
> Columbus, Ohio  43215
> Tel: (614) 466-2872; Fax: (614) 728-7592
> ryan.richardson@ohioattorneygeneral.gov
>
> *Counsel for Defendant Governor John Kasich*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the U.S. District Court, Southern District of Ohio, on June 27, 2016, and served upon all parties of record via the court's electronic filing system.

>
> */s/ Ryan L. Richardson*
> RYAN L. RICHARDSON (0090382)
> Assistant Attorney General