IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| **PHYLLIS BALL,** *et al.,* | ) | **Case No.: 2:16-cv-282** |
|  | ) |  |
| **Plaintiffs** | ) | **JUDGE SARGUS** |
|  | ) |  |
| **v,** | ) | **MAGISTRATE JUDGE DEAVERS** |
|  | ) |  |
| **JOHN KASICH,** *et al.,* | ) |  |
|  | ) |  |
| **Defendants** | ) |  |
|  | ) |  |
| **and** | ) |  |
|  | ) |  |
| **OHIO ASSOCIATION OF COUNTY BOARDS SERVING PEOPLE WITH DEVELOPMENTAL DISABILITIES** | ) ) ) | |
|  | ) |  |
| **Intervenor-Defendant** | ) |  |
|  | ) |  |

---

### MOTION OF INTERVENOR-DEFENDANT OHIO ASSOCIATION OF COUNTY BOARDS SERVING PEOPLE WITH DEVELOPMENTAL DISABILITIES TO INTERVENE AS DEFENDANT

---

The Ohio Association of County Boards Serving People With Developmental Disabilities (hereinafter "OACBDD") respectfully requests leave to intervene as a defendant in the above captioned action pursuant to Rule 24 of the Federal Rules of Civil Procedure, on behalf of itself and all 88 county boards of developmental disabilities in the State of Ohio, and to file the Answer which is attached hereto and marked Exhibit A. The reasons for this motion are set forth more fully in the attached brief.

Respectfully submitted,

s/ Franklin J. Hickman
Franklin J. Hickman (0006105)
fhickman@hickman-lowder.com
Trial Attorney
John R. Harrison (0065286)
jharrison@hickman-lowder.com
HICKMAN & LOWDER CO., L.P.A.
1300 East Ninth St., Suite 1020
Cleveland, OH  44114
(216) 861-0360 telephone
(216) 861-3113 facsimile
Counsel for OACBDD

**MEMORANDUM  IN SUPPORT OF**
**OACBDD MOTION TO INTERVENE AS DEFENDANT**


**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.     FACTS ................................................................................................................ 1

    A.   OACBDD ........................................................................................................ 1

    B.   Role of County Boards of DD ......................................................................... 2

        1.   General Role ............................................................................................... 2

        2.   DD Board Role in Funding Local Services ................................................. 3

        3.   DD Board Role with ICFs ........................................................................... 4

        4.   DD Board Role with HCBS Waivers .......................................................... 5

           (a)   Basic Role ........................................................................................... 5

           (b)   Planning .............................................................................................. 6

           (c)   Responsibility for Match ..................................................................... 6

           (d)   Wait Lists ............................................................................................ 7

III.     ARGUMENT ...................................................................................................... 8

    A.   OACBDD Has Standing To Participate As a Party ......................................... 8

        1.   General ....................................................................................................... 8

        2.   OACBDD Has Representational Standing .................................................. 9

           (a)   OACBDD Members Have Standing .................................................... 10

           (b)   The Interests at Stake are Germane to OACBDD's Purpose ............... 10

           (c)   Participation by Individual DD Boards Is Not Essential ..................... 11

    B.   OACBDD is Entitled to Intervene as a Matter of Right ................................. 12

        1.   Standard for Intervention as of Right ........................................................ 12

        2.   The Motion to Intervene is Timely ............................................................ 13

        3.   OACBDD Has a Substantial Legal Interest in the Subject Matter of the Litigation .... 13

        4.   OACBDD's Ability to Protect the Interests of the DD Boards May Be Impaired By the Outcome of the Litigation ................................................. 14

        5.   Existing Parties Do Not Adequately Represent Interests of DD Boards. ..................... 15

    C.   OACBDD Should be Granted Permissive Intervention ................................... 16

i

1.  The Motion to Intervene is Timely ................................................................ 16

2.  OACBDD Has Common Issues of Law and Fact in Defending against Plaintiffs' Claims .................................................................................................................... 17

3.  Intervention by OACBDD will not cause any delay ...................................... 17

4.  There is No Prejudice to Any Party ............................................................... 17

IV.   CONCLUSION ..................................................................................................... 18

**MEMORANDUM IN SUPPORT OF**
**OACBDD MOTION TO INTERVENE AS DEFENDANT**

## I.    INTRODUCTION

The Ohio Association of County Boards Serving People with Developmental Disabilities

("OACBDD") seeks to intervene in the above-captioned litigation in its role as representative of

Ohio's County Boards of Developmental Disabilities ("DD Boards").  The DD Boards play an

integral and legally mandated role in the implementation and monitoring of community services

in Ohio.    Over 72% of funding for local, community-based services comes directly from local

resources developed by the local DD Boards.  Affidavit of Bridget Gargan, Exhibit B, ¶7.  The

DD Boards, through OACBDD, should have an equal voice throughout the defense and

resolution of this matter.

This Court granted OACBDD leave to intervene as a Defendant in *Martin v. Voinovich,* Case

No. C2-89-362, Doc.# 217, Order of March 7, 1994; this Court should allow OACBDD to

intervene as a Defendant in this successor proceeding to the *Martin* litigation.

## II.   FACTS

### A.   OACBDD

OACBDD is a private not-for-profit corporation operating under 501(c)(6).  Affidavit of

Bridget Gargan, Exhibit B.  OACBDD represents the interests of its membership, which consists

of all 88 County Boards of Developmental Disabilities ("DD Boards") in Ohio.  Established in

August, 1983, OACBDD is governed by a Board of Trustees selected from around the State.

The Mission of OACBDD is "To support County Boards of Developmental Disabilities in

providing services and supports to people with developmental disabilities."  *Id.*

The purposes of OACBDD are defined as follows:

1

- To work for the interests of people with developmental disabilities in the State of Ohio.

- To work on behalf of and for the interests of County Boards of DD promoting effective and efficient management and administrative practices and services.

- To standardize, coordinate, simplify, and disseminate basic information to County Boards of DD and to assist in public relations efforts.

- To maintain, promote, and improve effective administrative capabilities of Board Members and Superintendents in the county board system through in-services, technical assistance, conferences, and research studies utilizing the most cost effective means.

- To monitor legislation at the State and National levels which affects persons with developmental disabilities and County Boards of DD and to advocate for their interests through efforts of interested citizens, other DD professionals, and lobbying.

- To act as an effective professional resource with the Governor's Office and all state agencies/departments and associations promoting the interests of County Boards of Developmental Disabilities.

- To collect, analyze, and report data to member County Boards of DD.

- To establish and coordinate specialized purchasing for services utilized and requested by our membership.

- To provide legal research and opinions for members of the OACB.

*Id.*

### B.  Role of County Boards of DD

1.  General Role

DD Boards are political subdivisions governed by Ohio Rev. Code Chapter 5126.  Under Ohio Rev. Code § 5126.04(A), Plaintiffs acknowledge that DD Boards serve approximately 90,000 persons with developmental disabilities ("DD").  Plaintiffs' Complaint Doc. #1 ¶133.

DD Boards are required to "plan and set priorities based on available resources for the provision of facilities, programs, and other services" to meet the needs of current residents with DD and former residents with DD who reside in "state institutions."  Ohio Rev. Code §

2

5126.04(A). DD Boards are required to develop "individual habilitation or service plans for individuals with developmental disabilities who are being served or who have been determined eligible for services and are awaiting the provision of services." *Id*. The duties of DD Boards are further defined in Ohio Rev. Code § 5126.05. Section 5126.05(A) states in relevant part that each DD Board has the duty to:

(1) Administer and operate facilities, programs, and services as provided by this chapter …

(2) Coordinate, monitor, and evaluate existing services and facilities available to individuals with developmental disabilities …

   ***

(8) Provide service and support administration in accordance with section 5126.15 of the Revised Code…

Under Ohio Rev. Code § 5126.051, a DD Board has a duty to provide residential services and adult services to the extent that resources are available and in accordance with an individual's service plan. Ohio Rev. Code § 5126.051(A), (B).

In their Complaint, Plaintiffs have characterized the general role of DD Boards as follows:

> Rather than administer its service system for people with intellectual and developmental disabilities at the state or regional level, Ohio established local county boards of developmental disabilities. These entities are charged with carrying out a number of critical functions in the service system for people with intellectual and developmental disabilities, including assisting individuals and families in understanding and accessing the range of institutional and community-based service options.

Plaintiffs' Complaint Doc. #1 ¶133.

   2.   DD Board Role in Funding Local Services

DD Boards are authorized to raise funds through local property tax levies. Ohio Rev. Code § 5705.222. These levies play a crucial role in funding local services, including providing match

3

for most Home and Community Based Services ("HCBS") waiver services.[1]  In 2015, local

funding, primarily from tax levies, accounted for 72.5% of total amounts received for local

services by DD Boards throughout Ohio.  Affidavit of Bridget Gargan, Exhibit B, ¶7.

      3.    DD Board Role with ICFs

DD Boards play a limited but important role for persons living in Intermediate Care Facilities

for Individuals with Intellectual Disabilities ("ICFs").  ICFs are licensed by the Department of

Developmental Disabilities ("DODD").  42 C.F.R. § 483.410(e); Ohio Rev. Code § 5124.06(A)

(2).  In ascertaining whether a license should be issued and for on-going surveys, the Director of

DODD may assign a local DD Board the duty of reviewing the personnel and services of the

ICF.  Ohio Rev. Code § 5123.19(H)(1).

An ICF serving nine or more residents must give prior notice to the local DD Board if the

ICF seeks to admit a new resident.  The ICF must provide the DD Board with "all information

about the individual in the provider's possession." Ohio Rev. Code § 5124.68(A) (1).  Within

five business days after receipt of the notice, the DD Board must evaluate the individual and

counsel the individual about the nature, extent, and timing of the services that the individual

needs and the least restrictive environment in which the individual could receive the needed

services.  The DD Board is required to give the DODD documentation of the results of these

---

[1] Medicaid HCBS Waivers allow for states to make exceptions to certain federal Medicaid rules; primarily, consumers "waive" their right to institutional care, allowing individuals with disabilities to receive care in their home or community setting instead of in a long-term care facility. Waiver services vary depending on the type of waiver, and may include services such as home-maker/personal care, nonmedical transportation, employment and day services, nutrition assistance, respite for caregivers, certain therapies, and accessibility modifications. Waivers do not reimburse for costs of room and board.  Waivers which are currently available to persons with DD include the Level One, Individual Options ("IO"), and Self-Empowered Life Funding ("SELF").  A fourth waiver, the Transition DD is being phased out and does not accept new individuals. Rules governing HCBS waivers available to persons with DD are at Ohio Admin. Code Chapter 5123:2-9.

counseling sessions. Ohio Rev. Code § 5124.68(A), (B).

If a resident of an ICF, or the resident's guardian, notifies DODD that there is interest in enrolling the resident in an HCBS waiver, DODD informs the local DD Board. If that individual is eligible for an HCBS waiver and chooses to enroll in a waiver, the DD Board has a duty to enroll that resident on an HCBS waiver provided that there is an available slot and the DODD has determined that there are sufficient funds to pay the match. The DD Board must make the waiver available regardless of the resident's place on the waiting list established under Ohio Rev. Code § 5126.042. Ohio Rev. Code § 5124.69(C), (D).

In the event that a major unusual incident or unusual incident occurs in an ICF, the ICF must give a report to the local DD Board which has authority to conduct a separate investigation. Ohio Admin. Code 5123:2-17-02(H)(6).

### 4. DD Board Role with HCBS Waivers

#### (a) Basic Role

Ohio law gives DD Boards specific authority to manage HCBS waivers in the county. Ohio Rev. Code § 5126.055(A)(1) states each DD Board "has medicaid local administrative authority ["MLAA"] to, and shall, do all of the following for an individual with [DD] who resides in the county that the county board serves and seeks or receives home and community-based services…" Services required of a DD Board as MLAA include in part:

i. Perform assessments and evaluations of the individual;

ii. Assist eligible individuals to exercise the individual's right to choose a qualified and willing provider of the services;

iii. Provide services when the DD Board is a certified provider and the individual has chosen to accept services from the DD Board;

iv. Monitor the services provided to the individual and ensure the individual's health, safety, and welfare;

    v.      Develop and update an effective individual service plan, recommend the plan to the DODD and Dept. of Medicaid, and, unless approval is denied, implement the plan;

    vi.     Have an investigative agent conduct investigations in accordance with rules;

    vii.    Have a services and support administrator who provides services, similar to case management services, set forth in Ohio Rev. Code § 5126.15.

Plaintiffs accurately summarize the role of DD Boards in management of HCBS waiver services as follows:

> The Defendants have chosen to delegate a significant amount of oversight for home and community-based waiver programs to county boards of developmental disabilities. These local entities are responsible for conducting most of the operational and administrative day-to-day functions associated with the Medicaid home and community-based waiver programs for people with intellectual and developmental disabilities, including maintaining waiting lists for home and community-based services, conducting waiver eligibility determinations, and providing certain waiver-funded services, including case management.

Plaintiffs' Complaint Doc. #1 ¶ 184.

      (b)    Planning

DD Boards are required to submit plans annually to DODD which identify individuals who have priority to receive HCBS waiver services, the likely services needed by each such individual and funds available for the local match. The plans must also identify the individuals who are eligible to receive Medicaid-funded case management services. Ohio Rev. Code § 5126.054. These plans are used by DODD to allocate waivers to the individual counties. Ohio Admin. Code 5123:2-9-01(H).

      (c)    Responsibility for Match

In general, a local DD Board is required to pay the non-federal share or match for all HCBS waiver services provided to persons with DD in that county, whether the HCBS services are provided by the DD Board or a private provider. Ohio Rev. Code § 5126.0510. Local match

6

amounts to approximately 40% of the total cost allowable by Medicaid.  Exceptions to the DD

Boards' general match obligation are found at Ohio Rev. Code § 5126.0510 and include waivers

obtained by individuals who have been diverted from an ICF under Ohio Rev. Code § 5124.68 or

who have received a waiver designed to lower the number of persons in ICFs, pursuant to Ohio

Rev. Code § 5124.69.  The *Martin* settlement included provisions for the State to pay the match

for additional waivers. Exhibit C, p. 6 ¶1.  Administration of these *Martin* waivers remains with

the DD Boards.  Am. Sub. H.B. 64 included state funds to cover match for an additional 3,000

waivers.

In 2015, the total match obligation for all HCBS waivers for the DD population amounted to

$535 million. Of this amount, DD Boards paid $324 million, or 64.2%.  DODD funds paid the

balance.  Affidavit of Bridget Gargan Exhibit B ¶ 8.

        (d)    Wait Lists

Ohio law requires DD Boards to establish and maintain waiting lists for persons seeking

HCBS waivers.  Ohio Rev. Code § 5126.042(C); Ohio Admin. Code 5123:2-1-08.  Local DD

Boards are responsible for managing all aspects of these lists.  *Id.*

In general, available slots are to be filled based on the earliest date a person signed a request

for a waiver.  The statute, however, requires DD Boards to determine whether a person should be

given priority under circumstances set forth in Ohio Rev. Code § 5126.042(C).  The priority

categories include, *inter alia*, persons living in ICFs. *Id.*  Persons who are in an emergency are

given priority over anyone on the wait list.  Ohio Admin. Code 5123:2-1-08(D)(9).  The criteria

for emergency status are at Ohio Rev. Code § 5126.042(A); Ohio Admin. Code 5123:2-1-

08(B)(5).

Every year, DD Boards must review the current status, reassess the service needs, and notify

the individual, or the individual's representative, of the individual's position on the waiting list;

and provide contact information on alternate resources to meet the individual's needs.  Ohio

Admin. Code 5123:2-1-08(D)(7).  If an individual seeks emergency status, the local DD Board

must review the request and make a determination.  The DD Board is required to provide notice

of adverse determinations to the individual or guardian.  Ohio Admin. Code  5123:2-1-08(F)(4).

While the Ohio Department of Medicaid retains final authority on issues related to Medicaid

services and funding, if there is an appeal on denial of emergency status or any other adverse

decision related to the wait list, the DD Board must prepare and present the case supporting its

decision. Ohio Admin. Code  5123:2-1-08(F); Chapter 5101:6.

Ohio Admin. Code 5123:2-1-08(D)(7).  DODD has set aside 1,864 IO waiver slots for

individuals who have been on waiting lists the longest and who are eligible for an HCBS waiver.

Motion to Dismiss of Martin and McCarthy, Doc #27 p. 5.

## III.  ARGUMENT

### A.  OACBDD Has Standing To Participate As a Party

#### 1.    General

Standing is an issue which primarily affects a plaintiff in litigation, but does require some

consideration when OACBDD, an association representing its members, seeks status as a party

in order to assert its own interests and the interests of its members.  The general standards for

allowing an association to have standing are well established and summarized in *Warth v. Seldin*,

422 U.S. 490, 511 (1975):

> There is no question that an association may have standing in its own right to seek judicial
> relief from injury to itself and to vindicate whatever rights and immunities the association
> itself may enjoy. Moreover, in attempting to secure relief from injury to itself the association
> may assert the rights of its members, at least so long as the challenged infractions adversely

8

affect its members' associational ties. E.g., *NAACP v. Alabama*, [357 U. S. 449] at 458-460; *Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 183-187 (1951) (Jackson, J., concurring).

The Sixth Circuit defined the general requirements in *Sierra Club v. United States EPA,* 793 F.3d 656, 661 (6th Cir. 2015):  "An organization like Sierra Club can establish standing through two routes: on behalf of its members, in what we have called "representational standing," or on its own behalf if directly injured."  These principles were followed by this Court in *Northeast Ohio Coalition for the Homeless v. Husted*, 2016 U.S. Dist. LEXIS 74121, *106 (S.D. Ohio, 2016), ("An organization may assert constitutional standing in one of two ways:  (1) on its own behalf because it has suffered a palpable injury as a result of [a defendant's] actions; or (2) as the representative of its members.").  OACBDD is asserting representational standing only.

2.    OACBDD Has Representational Standing

OACBDD has standing as the representative of its members.  The U.S. Supreme Court defined the elements of representational standing in *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180-181 (2000):

> An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. [Citation omitted]

The Sixth Circuit has adopted these requirements in numerous cases. *See e.g. Am. Canoe Ass'n v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 540 (6th Cir. 2004) ("Sierra Club has standing to sue on behalf of its members when 'its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'[citation omitted]")

9

(a)  OACBDD Members Have Standing

Members of OACBDD would have standing to act as parties in their own right.  The Sixth Circuit in *Am. Canoe Ass'n supra,* held that  a member of an association "would have standing to sue in his own right when he has suffered a concrete and particularized injury in fact that is fairly traceable to the defendant's actions and a favorable decision would redress his injury."  *Id.*

While the DD Boards would be in the role of defendants, not plaintiffs, the assertions of Plaintiffs represent a direct challenge to the role of DD Boards in implementing HCBS waivers. Plaintiffs' complaint seeks to reform a system in which DD Boards play a critical role.  *See e.g.* Plaintiffs' Complaint Doc. #1 ¶¶ 185-186.  Any resolution of this case, by agreement or by Court order, will necessarily and inevitably involve the DD Boards.

(b)  The Interests at Stake are Germane to OACBDD's Purpose

In *ACLU of Ohio v. Taft*, 385 F.3d 641, 646 (6th Cir. 2004), the Sixth Circuit addressed this standard as follows:

> The ACLU has also shown that the interests at stake in this case are germane to the organization's purpose. The ACLU submitted an affidavit from its Executive Director, Christine Link, explaining the organization's purpose as follows: "The object of this organization is to aid in maintaining and extending constitutional and other fundamental rights, liberties, privileges, and immunities, and to take all legitimate actions in furtherance of that object without political partisanship." [citation omitted] This case addresses citizens' right to vote and right to equal representation, which falls squarely within the ACLU's purpose of guaranteeing constitutional and fundamental rights.

The mission of OACBDD, as shown in the affidavit of Bridget Gargan (Exhibit B) is to "support County Boards of Developmental Disabilities in providing services and supports to people with developmental disabilities." *Id. ¶*4.  The purposes of OACBDD include:

- "To work for the interests of people with developmental disabilities in the State of Ohio.

- To work on behalf of and for the interests of County Boards of DD promoting effective and efficient management and administrative practices and services."

*Id.* ¶5.

OACBDD has been, is and will be at the center of supporting DD Boards in coping with past, present and future systemic changes.  OACBDD had a leading role in the drafting, passage and implementation of H.B. 94, eff. 6/6/2001 which defined the role of DD Boards in the administration of Medicaid services in Ohio.  The legislation covered such issues as minimum participation by DD Boards in HCBS waivers (Ohio Rev. Code § 5126.0512), duty to pay match for HCBS waivers (Ohio Rev. Code § 5126.0510), role of DD Board staff in developing, implementing and monitoring HCBS services in the county (Ohio Rev. Code § 5126.055), planning requirements for development of HCBS services (Ohio Rev. Code § 5126.054) and management of waiting lists (Ohio Rev. Code § 5126.042).Affidavit of Bridget Gargan, Exhibit B, ¶6.

The changes sought by Plaintiffs in the system and the impact of those changes on local boards are clearly germane to the purpose of OACBDD.

(c)     Participation by Individual DD Boards Is Not Essential

The issues raised by Plaintiffs which implicate the DD Boards do not address any single DD Board specifically; rather their Complaint asserts claims against the system as a whole. OACBDD has a long history of negotiating systemic changes on behalf of its membership. Since all DD Boards are members of OACBDD and all regions of the State are included in its governing board, OACBDD can effectively and competently represent the interests of DD Boards without the participation of any single member as a separate party.

The inclusion of 88 separate county entities would be inefficient and impractical; OACBDD can and will effectively represent the interests of all of its members as it has done many times in the past.

11

### B. OACBDD is Entitled to Intervene as a Matter of Right

1. Standard for Intervention as of Right

Fed. R. Civ. P. 24(a) states:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: …
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Sixth Circuit has interpreted this rule to require four elements to be met before intervention under Fed. R. Civ. P. 24(a) can be granted:

> (1) the application must be timely;
>
> (2) the Intervenor must have a substantial legal interest in the subject matter of the litigation;
>
> (3) the Intervenor's ability to protect that interest must be impaired by the outcome of the litigation; and
>
> (4) the present parties to the litigation do not adequately protect the Intervenor's interest.

All four criteria must be met before intervention of right will be allowed. *Grubb v. Norris,* 870 F.2d 343,345 (6th Cir, 1989), citing *Triax Co. v. TRW Inc.* 724 F.2d 1224, 1127 (6th Cir. 1984); *Coal. to Defend Affirmative Action v. Granholm,* 501 F.3d 775, 779 (6th Cir. 2007). Factual circumstances considered under Rule 24(a) should be "broadly construed in favor of potential intervenors." *Stupak-Thrall v. Glickman,* 226 F.3d 467, 472 (6th Cir. 2000); *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991).  Close cases should be resolved in favor of recognizing an interest under Rule 24 (a). *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999).

12

2.    The Motion to Intervene is Timely

This Court articulated the following considerations in assessing whether a motion to

intervene is timely:

> 1) the point to which the suit has progressed; 2) the purpose for which intervention is sought;
> 3) the length of time preceding the application during which the proposed intervenors knew
> or should have known of their interest in the case; 4) the prejudice to the original parties due
> to the proposed intervenors' failure to promptly intervene after they knew or reasonably
> should have known of their interest in the case; and 5) the existence of unusual circumstances
> militating against or in favor of intervention. *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th
> Cir. 2011) (internal citation omitted). "No one factor is dispositive, but rather the
> determination of whether a motion to intervene is timely should be evaluated in the context
> of all relevant circumstances." *Id*. (internal quotation omitted).

*Wiley v. Triad Hunter LLC*, 2013 U.S. Dist. LEXIS 112066, **17-19 (S.D. Ohio Aug. 8, 2013).

The complaint in the above action was filed on March 31, 2016 – less than eight months before

the filing of this motion. Plaintiffs' Complaint Doc. #1.  Motions to dismiss have been filed by

the State Defendants and fully briefed by each party.  Plaintiffs have filed a motion to certify the

class; discovery on this issue is just beginning.  Filing the motion at this point can create no

prejudice to any party and there are no unusual circumstances which would render the motion

untimely.

OACBDD's Motion to Intervene is being filed at the very early stages of this litigation and is

well within the definition of timely.

3.    OACBDD Has a Substantial Legal Interest in the Subject Matter of the
       Litigation

The summary of the role of OACBDD and the members of OACBDD demonstrate that DD

Boards plan an integral role in the development and management of services for persons with

DD in Ohio.  OACBDD and its member DD Boards have an interest in matters affecting the

system of local implementation, local monitoring and local control within the bounds of the law.

13

Over 72% of funding for local services comes directly from local resources developed by the local DD Boards.  Affidavit of Bridget Gargan, Exhibit B, ¶7.

Plaintiffs' Complaint includes asserted failure to provide integrated residential, vocational and leisure services not only for people in ICFs, but also for people at risk of being placed in ICFs.  The latter are all being served by DD Boards.  Those in ICFs require the cooperation and, in many cases, the funding of the DD Boards to be served in the community whether or not they receive an HCBS waiver.  In its role as the association which represents the interests of all DD Boards in the State, OACBDD has a substantial legal interest in the subject matter of the litigation.

   4. OACBDD's Ability to Protect the Interests of the DD Boards May Be Impaired By the Outcome of the Litigation

Unless the DD Boards, through OACBDD, have an equal voice in the discovery process, negotiations and trial, if necessary, OACBDD will be severely compromised its duty "To work for the interests of people with developmental disabilities in the State of Ohio. ,,, [and] To work on behalf of and for the interests of County Boards of DD promoting effective and efficient management and administrative practices and services."  Affidavit of Bridget Gargan Exhibit B.

Plaintiffs' assertions in their Complaint clearly signal an intent to challenge the current system of local management and payment for HCBS services. Their Complaint can be fairly interpreted as an effort to dismantle the DD Boards' role in the oversight and management of HCBS services.  Plaintiffs assert:

> Defendants require that the local county boards fund the non-federal share of Medicaid expenditures under the home and community-based waiver programs. The Defendants' decision to administer and fund the service system in this way creates regional and local disparities in access to waiver services, and can prevent counties with fewer resources or more fiscal constraints from meeting their residents' service needs and supporting their preference for community living.

Plaintiffs Complaint Doc. #1 ¶185.  Plaintiffs specifically focus on the difference between the State's duty to pay for the match for ICF and the duty of DD Boards, in most cases, to pay for non-federal share of HCBS waivers.  *Id.* ¶186.  Plaintiffs conclude that "By establishing and maintaining this system of financial disincentives, Ohio increases the risk that individuals with more significant service needs will be referred to, and experience unnecessary institutionalization in, the State-funded ICF system."  *Id.*

If relief sought by Plaintiffs is achieved, the impact of their reform effort will inevitably reach every level of the system of delivery of HCBS services.  As the summary of the role of DD Boards in the Medicaid system illustrates (II.B.4) changes in the implementation of HCBS, even apart from match issues, will require additional resources to be provided by local DD Boards in the development and monitoring of additional community-based resources.

5.     Existing Parties Do Not Adequately Represent Interests of DD Boards.

The State Defendants do not have the same interests as the DD Boards and the DD Boards cannot rely on the State to fully represent the interests and values of the DD Boards.  As the Court noted in *Ohio v. United States EPA,* 313 F.R.D. 65, 68-69, (S.D. Ohio 2016), citing *Jansen v. City of Cincinnati*, 904 F.2d 336, 343 (6th Cir. 1990):

> interests need not be wholly "adverse" before there is a basis for concluding that existing representation of a "different" interest may be inadequate.'" (quoting *Nuesse v. Camp*, 385 F.2d 694, 703, 128 U.S. App. D.C. 172 (D.C. Cir. 1967))). "[I]t may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997).

The interests of the other Defendants as expressed in the various motions focus on arguments specific to the State-level administration.  There is no focus on preserving the value and contribution made by the ability of local DD Boards to manage, monitor and implement the HCBS waivers at the county and to provide other community-based services.

15

The interests of DD Boards, through OACBDD, need to be represented by allowing OACBDD to intervene as a matter of right.

### C.   OACBDD Should be Granted Permissive Intervention

While the Court has authority and adequate support for granting the Motion to Intervene as a matter of right, permissive intervention is also warranted.

Fed. R. Civ. P. 24(b) states:

(b) Permissive Intervention.

  (1) In General. On timely motion, the court may permit anyone to intervene who: …

   (B) has a claim or defense that shares with the main action a common question of law or fact.

*** 

  (3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights

This Court in *Wiley v. Triad Hunter LLC*, 2013 U.S. Dist. LEXIS 112066, **17-19 (S.D. Ohio Aug. 8, 2013) interpreted the rule as follows:

> Even if a party is not entitled to intervention as a matter of right, the Court has discretion to allow for permissive intervention. … Under Rule 24(b), the Court may allow "[o]n timely motion" a party to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Court should also balance the factors of "undue delay prejudice to the original parties, and any other relevant [*19] factors . . . ." Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1248 (6th Cir. 1997).

### 1.    The Motion to Intervene is Timely

As discussed above in section III.B.2, this motion is being filed at a very early stage of the proceeding and meets any reasonable interpretation of timeliness.  In the *Wiley* opinion, this Court found the motion to intervene timely and allowed permissive intervention while motions to dismiss and motions for summary judgment were pending.  *Id.* 20-21.

      2.     OACBDD Has Common Issues of Law and Fact in Defending against Plaintiffs' Claims

As demonstrated throughout this brief, the DD Boards are essentially implicated with claims made by the Plaintiffs.  The legal issues raised by Plaintiffs will have equal application to DD Boards and to OACBDD as the representative of the DD Boards.  The facts asserted by Plaintiffs acknowledge the "critical function" which DD Boards have in Ohio's system.  Plaintiffs' Complaint Doc. #1 ¶133.  Plaintiffs have raised a challenge to the role of DD Boards in implementing the HCBS waivers. *Id.* ¶185.  The questions of law and fact are inextricably intertwined with DD Board functions.

      3.     Intervention by OACBDD Will Not Cause Any Delay

This litigation is at a very early stage.  Allowing intervention will have no effect on the timing of the Court's ruling on the Defendants' Motions to Dismiss, nor will there be any impact on the pending Plaintiffs' Motion to Certify the Plaintiff class.

      4.     There is No Prejudice to Any Party

Any resolution to the issues raised by Plaintiffs will require participation by the DD Boards.  OACBDD is the voice of DD Boards on the State level.  Participation by OACBDD will not cause any prejudice and will, in fact, assist in the over-all resolution of this litigation.

17

## IV.  CONCLUSION

For the reasons stated above, this Court should grant OACBDD's Motion to Intervene and

accept the Answer of OACBDD for filing.

Respectfully submitted,

<u>s/ Franklin J. Hickman</u>
Franklin J. Hickman (0006105)
fhickman@hickman-lowder.com
Trial Attorney
John R. Harrison (0065286)
jharrison@hickman-lowder.com
HICKMAN & LOWDER CO., L.P.A.
1300 East Ninth St., Suite 1020
Cleveland, OH  44114
(216) 861-0360 telephone
(216) 861-3113 facsimile
Counsel for OACBDD

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Motion of Ohio Association of County Boards Serving People with Developmental Disabilities to Intervene as Defendant was filed electronically on November 29, 2016. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

s/ Franklin J. Hickman
Franklin J. Hickman (0006105)

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Answer of OACBDD |
| B | Affidavit of Bridget Gargan |
| C | Consent Order in *Martin v. Strickland* 89-cv-00362 (S.D. Ohio 2007) |