UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PHYLLIS BALL, by her General
Guardian, PHYLLIS BURBA, et al.,
    Plaintiffs,

v.

JOHN KASICH, Governor of Ohio,
in his official capacity, et al.,

    Defendants.

Case No. 2:16-cv-00282
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on Plaintiff's unopposed Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2). (ECF No. 42.) For the Reasons stated below, Plaintiffs' Motion is **GRANTED**.

### I.    BACKGROUND

This proposed class action was filed on March 31, 2016 by Plaintiffs Phyllis Ball, Antonio Butler, Caryl Mason, Richard Walters, Ross Hamilton, and the Ability Center of Greater Toledo (collectively "Plaintiffs")[1] on behalf of themselves and other similarly situated individuals with intellectual and developmental disabilities who are institutionalized or at serious risk of institutionalization in large Intermediate Care Facilities ("ICFs") with eight or more beds throughout Ohio. The action is brought against Defendants John Kasich (in his official capacity as Governor of Ohio), Kevin Miller (in his official capacity as Director of Opportunities for Ohioans with Disabilities), John McCarthy (in his official capacity as Director of the Ohio

---

[1] Nathan Narowitz previously joined as plaintiff in the Complaint and Motion for Class Certification, but has since withdrawn as a named plaintiff in the case, reserving his right to recover as a general member of the putative class.

Department of Medicaid), John Martin (in his official capacity as Director of the Ohio Department of Developmental Disabilities), and the Ohio Association of County Boards Serving People with Developmental Disabilities (collectively "Defendants"), and asserts three causes of action under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 et seq., Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 et seq., and the Social Security Act, 42 U.S.C. § 1396n(c)(2)(B)&(C).

A more detailed description of the allegations in this case are contained in this Court's March 23, 2017 Opinion and Order denying Defendants' motions to dismiss and granting in part Defendant Kasich's motion to dismiss the ADA and Social Security Act claims against him in his official capacity. (Opinion & Order, ECF No. 90.) To summarize, Plaintiffs allege that Defendants' administration of Ohio's service system for people with intellectual and developmental disabilities have left thousands of Ohioans unnecessarily institutionalized or at serious risk of institutionalization in violation of federal law. Plaintiffs assert that federal law entitles them to receive services in the most integrated setting appropriate, but that Defendants have failed to provide sufficient integrated community-based services necessary to avoid their institutionalization in large ICFs. Plaintiffs seek declaratory and injunctive relief compelling Defendants to modify Ohio's service system for persons with intellectual and developmental disabilities by providing reasonable access to integrated community-based services.

Plaintiffs filed this Motion for Class Certification on August 22, 2016, which Defendants have not opposed. (Plaintiffs' Motion for Class Certification ("Pl. Mot."), ECF No. 42.)

## II. STANDARD

Certification of class actions is controlled by Federal Rule of Civil Procedure 23. The party seeking class certification bears the burden of proof. *In re Am. Med. Sys., Inc.*, 75 F.3d

1069, 1079 (6th Cir. 1996). Although Rule 23(a) requirements are procedural, not jurisdictional, in nature, a party must satisfy the requisite criteria before class certification can be granted. *See D.D. v. Washington Cty.*, No. 2:10-CV-1097, 2011 WL 830761, at *1 (S.D. Ohio Mar. 3, 2011). In order for class certification to be granted, the Court must analyze any request to certify a class in light of the four factors outlined in Rule 23. *See, e.g., Equal Opp. Comm. v. Whirlpool*, 80 F.R.D. 10, 14 (N.D. Ind. 1978) ("The Rule 23 prerequisites are mandatory."). Put simply, parties cannot consent to Rule 23 certification. *Washington Cty.*, 2011 WL 830761, at *1. Rather, the Court may certify the proposed class only if it concludes, based on the record before the Court, that the four factors stated in Rule 23 are satisfied. Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These four requirements are known as numerosity, commonality, typicality, and adequacy of representation.

A district court is required to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are satisfied before certifying a class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). While a district court has broad discretion on whether to certify a class, that determination must be made within the confines of Rule 23. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) (district court bound by Federal Rules). A class is not maintainable as a class action merely because it is designated as such in the pleadings. *Am. Med. Sys.*, 75 F.3d at 1079. As the Court of Appeals has stated:

> Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled. Maintainability may be determined by the court on the basis of the

3

pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide.

*Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974) (citation omitted).

Supreme Court and Sixth Circuit law, however, do not allow the Court to inquire into the merits at the class certification stage. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule."). Accordingly, the Court's rigorous analysis must be limited to the substance and structure of Plaintiff's claims, rather than an inquiry into the merits. As the Sixth Circuit has stated, "[m]erits questions may be considered to the extent—*but only to the extent*—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1194–95 (2013)).

### III. DISCUSSION

Plaintiffs seek to certify a class consisting of:

> All Medicaid-eligible adults with intellectual and developmental disabilities residing in the state of Ohio who, on or after March 31, 2016, are institutionalized, or at serious risk of institutionalization, in an Intermediate Care Facility with eight or more beds, and who have not documented their opposition to receiving integrated, community-based services.

(Pl. Mot. at 3–4.) According to Plaintiffs, individuals at serious risk of institutionalization in a large ICF include people with intellectual and developmental disabilities "who now, or in the future: (1) apply for or are referred for admission to an ICF; or (2) are placed on waiting lists for Medicaid home and community-based services and have an aging caregiver or intensive needs as defined by Ohio Admin. Code 5123:2-1-08(D)(10)(c)." (*Id.* at 4.) Plaintiffs also seek the

4

appointment of Disability Rights Ohio, Sidley Austin, LLP, Attorney Samuel Bagenstos, and the Center for Public Representation as co-class counsel.

The Court will first discuss whether the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—have been satisfied, and will then discuss the requirements of Rule 23(b)(2) and the appointment of class counsel.

### A. Requirements of Rule 23(a)

1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no bright line numerical test by which the district court can determine when the numerosity requirement is satisfied. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976) ("Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case.") (citing *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970)). When class size reaches substantial proportions, the numerosity requirement is usually satisfied by the numbers alone. *Am. Med. Sys.*, 75 F.3d at 1079.

Plaintiffs state that the proposed class consists of at least 2,500 persons who have expressed a preference to receive integrated, community-based services and who currently reside in ICFs. (Pl. Mot. at 22–23.) Additionally, according to statements made by Defendants, at least 8,000 people who live in the community but rely on aging caregivers and 1,000 who are expected to lose the support of their primary caregiver within a twelve-month period are at serious risk of institutionalization. (Governor's Office of Health Transformation, *Enhance Community Developmental Disabilities Services* at 6, Ex. 10 to Pl. Mot., ECF No. 42-10.) Given

5

the size and fluid nature of the proposed class, the Court is satisfied that joinder of all members is impracticable and that the numerosity requirement is met.

2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). However, at the certification stage plaintiffs need not show that all class members have been injured in precisely the same way or were in fact injured at all. *Rikos*, 799 F.3d at 505 ("The Supreme Court in Dukes did not hold that named class plaintiffs must prove at the class-certification stage that all or most class members were in fact injured to meet this requirement.").

Instead, "the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation." *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003) (citing *Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 1996)); *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 580 (S.D. Ohio 1993)). Although Rule 23(a)(2) speaks of "questions" in the plural, there need be only one question common to the class. *Bovee*, 216 F.R.D. at 608 (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). A common question must be one that is "capable of classwide resolution—which means determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Plaintiffs assert that this case presents multiple common questions of fact and law, that if answered would resolve the legal claims of the class as a whole. Specifically, common questions of fact include whether: Plaintiffs are denied services in the most integrated setting because

6

Defendants unnecessarily fund a large number of ICFs; fail to provide sufficient access to integrate and community-based residential, employment, and day services; maintain a funding structure in a way that incentivizes institutionalization; and, fails to provide adequate and timely information regarding alternatives to institutional care to people in ICFs. (Pl. Mot. at 26–27.) Plaintiffs additionally assert that questions of law common to the class include whether these actions or inactions by Defendants amount to violations under the ADA, Section 504 of the Rehabilitation Act, or § 1396n(c)(2)(B) & (C) of the Social Security Act.

These questions closely mirror those identified in other cases in which courts have found the commonality requirement satisfied. *See e.g., Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 267 (D. N.H. 2013) ("[W]hether there is a systemic deficiency in the availability of community-based services, and whether that deficiency follows from the State's policies and practices, are questions central to plaintiffs' theory of the case."); *Lane v. Kitzhaber*, 283 F.R.D. 587, 598 (D. Or. 2012) (finding a common question of "whether defendants have failed to plan, administer, operate and fund a system that provides employment services that allow persons with disabilities to work in the most integrated setting"); *Steward v. Janek*, 315 F.R.D. 472, 493 (W.D. Tex. 2016) (certifying a class of "All Medicaid-eligible persons over twenty-one years of age with intellectual or developmental disabilities or a related condition in Texas who currently or will in the future reside in nursing facilities, or who are being, will be, or should be screened for admission to nursing facilities . . . .").

Because all proposed class members are allegedly subjected or at risk of experiencing the same alleged unnecessary segregation, the Court concludes that there are questions of fact and law common to all members of the proposed class. These common issues identified by Plaintiffs may also be resolved on a classwide basis in a single stroke. As Plaintiffs maintain, "a single

7

injunction which requires the expansion of integrated, community-based services" would "redress Plaintiffs' injuries, and benefit the class as a whole." (*Id.* at 28–29.) The commonality requirement is therefore satisfied.

3. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1082 (citing 1 Newberg on Class Actions § 3-13, at 3-76). Typicality requires that the "representative's interests [are] aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Id.* Stated differently, as the Sixth Circuit has summarized, "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399; *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). The commonality and typicality requirements are closely related because they both help determine whether the claim of the named plaintiff and those of the class are so interrelated that the interests of the absent class members will be protected. *Id.*

Like the commonality requirement, the named plaintiff's claims do not have to be identical to the claims and defenses of the other members of the putative class, and need not always involve the same facts or law, provided there is a common element of fact or law. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554 561 (6th Cir. 2007) (citing *Senter*, 532 F.2d at 525 n.31); *Putnam*, 169 F.R.D. at 94.

Plaintiff asserts that "the Individual Plaintiffs and the Plaintiff class are aggrieved by the same actions and inactions of the Defendants." (Pl. Mot. at 37.) Typical to all plaintiffs include

8

"Defendants' administration, operation, planning, and funding of the system for people with intellectual and developmental"; facing "the same limitations in accessing integrated residential, employment, and day services"; and, "a common interest in expanding community-based alternatives and avoiding unnecessary institutionalization." The legal claims plaintiffs assert also arise from the same legal theory. The typicality requirement is therefore met.

### 4. Adequacy of Representation

Rule 23(a)(4) permits certification if "the representative parties will fairly and adequately protect the interests of the class." This requirement is essential to due process because a final judgment in a class action is binding on all class members. *Am. Med. Sys.*, 75 F.3d at 1083 (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Beattie*, 511 F.3d at 562 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997)). The Sixth Circuit has articulated two criteria for determining the adequacy of representation: (a) "[t]he representative must have common interests with unnamed members of the class" and (b) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525.

#### (a) *Common Interests of Named Representatives*

The first requirement overlaps with the commonality and typicality requirements and requires that the representatives and "the class members have interests that are not antagonistic to one another." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (citing *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013)); *see also Shreve v. Franklin Cty.*, No. 2:10-cv-644, 2010 WL 5173162, at *15 (S.D. Ohio Dec. 14, 2010) ("A plaintiff may not be an adequate representative if that plaintiff is subject to unique defenses that place him or her in a position that is antagonistic to the interests of the class."). Thus, "the linchpin of the adequacy

9

requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dry Max*, 724 F.3d at 721.

Plaintiff asserts that "the individual Plaintiffs and the Plaintiff class have suffered a common injury and share a common interest—avoiding unnecessary institutionalization and having reasonable access to alternative, community-based services." (Pl. Mot. at 38.) By excluding from the class those who oppose receiving integrated care and instead prefer to reside in an ICF, those remaining in the class share a common interest with the Individual Plaintiffs in having the choice of community-based services as an alternative to institutionalization. Thus, the named representatives adequately represent the interests of the other class members.

(b) *Vigorous Prosecution by Class Counsel*

To satisfy the second requirement of the adequacy of representation requirement, it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter*, 532 F.2d at 525 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (5th Cir. 1973)). Plaintiffs therefore must have sufficient financial and personal involvement to encourage it to prosecute the action vigorously, and adequate resources and legal representation to meet the demands of maintaining the action. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1767 (1986)). Further, class counsel must be qualified, experienced, and generally able to conduct the litigation. *Stout*, 228 F.3d at 717.

Here, Plaintiffs seek to appoint Disability Rights Ohio, Sidley Austin, LLP, the Center for Public Representation, and Samuel Bagenstos as co-class counsel. According to Plaintiffs, Disability Rights Ohio is the federally-designated protection and advocacy organization for the state of Ohio and brings decades of litigation experience on behalf of individuals with disabilities, both individually and in class action cases. (Pl. Mot. at 40.) Sidley Austin, LLP is a national law firm with broad expertise in complex litigation and trial skills and brings extensive

litigation support capabilities to the case. (*Id.*) The Center for Public Representation also has forty years of experience in representing institutionalized persons with disabilities and has served as lead counsel in numerous class actions around the country. (*Id.*) Samuel Bagenstos is a civil rights litigator specializing in the area of disability law with more than twenty years of experience. (*Id.* at 46.) He previously served as the Deputy Assistant Attorney General for Civil Rights in the Civil Rights Division for the United States Department of Justice. Finally, Plaintiffs assert that the "Individual Plaintiffs' resources are adequate to represent the class competently" and "have no other professional commitments which are antagonistic to, or which would detract from, their efforts to seek a favorable decision for the class in this case." (*Id.*)

Based on these statements, the Court concludes that Plaintiffs are adequate class representatives and have vigorously prosecuted the interests of the class through qualified and experienced counsel and will likely continue to do so.

### B.     Requirements of Rule 23(b)(2)

In addition to satisfying the prerequisites of Rule 23(a), Plaintiff must demonstrate that the action falls within one of the subcategories of Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(2), which states, in relevant part:

> A class action may be maintained if Rule 23(a) is satisfied and if: . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360. A class action under Rule 23(b)(2) is referred to as a "mandatory" class action because class members do not have an automatic right to notice or a right to opt out of the class. The defining

11

characteristic of a mandatory class is "the homogeneity of the interests of the members of the class." *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 432 (6th Cir. 2009) (quoting *Reeb v. Ohio Dep't of Rehab. and Corr.*, 435 F.3d 639, 649 (6th Cir. 2006)).

To the extent Plaintiffs allege systemic civil rights violations and solely seek declaratory and injunctive relief designed to benefit the class as a whole, and do not seek monetary damages, the Court concludes that Rule 23(b)(2) certification is appropriate. Plaintiffs allege that "Defendants administer, operate, fund, and plan their system of services for people with intellectual and developmental disabilities in a discriminatory manner by failing to provide the community-based services required by the Plaintiff class to avoid their unnecessary institutionalization." (Pl. Mot. at 43.) To that end, "Defendants' decision to license, fund, and maintain an excessive number of segregated ICF placements, when coupled with their inadequate funding for and provision of home and community-based services," amounts to a systemic policy and practice that harms the putative class as a whole. (*Id.*) These are allegations that apply generally to the proposed class.

### C. Appointment of Class Counsel

Pursuant to Rule 23(g), Plaintiffs ask the Court to appoint Disability Rights Ohio, Sidley Austin, LLP, the Center for Public Representation, and Samuel Bagenstos as co-class counsel for Plaintiffs in this matter. As already stated in Section III.A.4.b., *supra*, counsel for Plaintiffs have thus far shown competence and vigor in representing the interests of the proposed class and collectively have significant experience in complex litigation and class action litigation. Plaintiffs affirm that there is no conflict among counsel. Finally, the Court finds that counsel for Plaintiffs have effectively investigated potential claims in this action, and have demonstrated that they will commit the necessary resources to representing the class.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion for Class Certification. (ECF No. 42). The Court hereby certifies a class under Rule 23(b)(2), which consists of the following:

> All Medicaid-eligible adults with intellectual and developmental disabilities residing in the state of Ohio who, on or after March 31, 2016, are institutionalized, or at serious risk of institutionalization, in an Intermediate Care Facility with eight or more beds, and who have not documented their opposite to receiving integrate, community-based services.

The Court further designates Disability Rights Ohio, Sidley Austin, LLP, Samuel Bagenstos, and the Center for Public Representation as co-class counsel.

**IT IS SO ORDERED.**

3-27-2017
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**