IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PHYLLIS BALL,** *et al.,*

       **Plaintiffs,**

                                Case No. 2:16-cv-282
                                Chief Judge Edmund A. Sargus, Jr.
   v.                            Magistrate Judge Elizabeth P. Deavers

**JOHN KASICH,** *et al.,*

       **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiffs' Motion to Compel from Defendant DODD and Memorandum in Support (ECF No. 345) ("Motion to Compel"), Ohio Department of Developmental Disabilities' Memorandum in Opposition to Plaintiffs' Motion to Compel Discovery from Defendant DODD (Doc. 345) (ECF No. 349) ("Opposition"), and Ohio Department of Developmental Disabilities' Supplement to Memorandum in Opposition to Plaintiffs' Motion to Compel Discovery from Defendant DODD (Doc. 345) (ECF No. 356) ("Supplemental Brief"). No reply was permitted. (ECF No. 337.) For the reasons that follow, the Motion to Compel is **GRANTED IN PART AND DENIED IN PART**.

### I.

A.    **Definition of the Class and Class Claims[1]**

Plaintiffs Phyllis Ball, Antonio Butler, Caryl Mason, Richard Walters, Ross Hamilton,

---

[1] "Plaintiffs' disputed discovery requests are relevant to the size and scope of the Plaintiff class[.]" (ECF No. 345 at 3.)

and the Ability Center of Greater Toledo (collectively, "Plaintiffs")[2] bring this class action on behalf of themselves and other similarly situated individuals with intellectual and developmental disabilities against Defendants John Kasich (in his official capacity as Governor of Ohio), Kevin Miller (in his official capacity as Director of Opportunities for Ohioans with Disabilities), John McCarthy (in his official capacity as Director of the Ohio Department of Medicaid), John Martin (in his official capacity as Director of the Ohio Department of Developmental Disabilities ("DODD")), and the Ohio Association of County Boards Serving People with Developmental Disabilities (collectively, "Defendants"). (ECF No. 1.) Plaintiffs allege that Ohio's administration, management, and funding of its service system for people with intellectual and developmental disabilities such as themselves puts them at serious risk of segregation and institutionalization in Intermediate Care Facilities ("ICFs") in violation of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act as interpreted by the United States Supreme Court's decision in *Olmstead v. L.C.*, 527 U.S. 581 (1999), and the Social Security Act, 42 U.S.C. § 1396n(c)(2)(B) & (C). (*Id.*)

On March 30, 2018, the Court granted in part and denied in part Plaintiffs' Motion for Class Certification. (ECF No. 303.) Specifically, the Court revised the class definition as follows:

> All Medicaid-eligible adults with intellectual and developmental disabilities residing in the state of Ohio who, on or after March 31, 2016, are qualified for home and community-based services, and, <u>after receiving options counseling</u>, express that they are interested in community-based services.

---

[2] Plaintiff Nathan Narowitz was originally named as a party in the Complaint but later withdrew as a Plaintiff without prejudice to his rights to recover as a general member of the putative class. (ECF No. 81.)

(*Id.* at 22 (emphasis added).) In revising this definition, the Court specifically rejected certifying

a broad class to include, *inter alias*, individuals on waiting lists:

> The Court concludes that the proposed "at risk" class members[3] do not have homogenous interests for the same reasons the proposed class members above did not. That is, the class members who may want community-based services do not have homogenous interests with those class members who do want community-based services. Likewise, some class members who are on the wait list want community-based services and some want services provided in Large ICFs. In a situation where there is limited funding, this not only reflects lack of homogenous interests, it indicates competing interests, which could actually harm certain members of a broad Rule 23(b) class because of the lack of notice and opportunity for class members to opt out. Therefore, because the proposed class does not suffer a uniform harm that can be remedied with the same relief, certifying a broad class is inappropriate.

(*Id.* at 21–22 (emphasis added).)

On May 2, 2018, the Court clarified the class definition:

1. At the status conference, the Court clarified its class definition as follows:

   a. "Interested in" means affirmatively state that they want community-based services.

   b. "Options counseling" means the counseling that is currently being utilized.

2. Thus, to be class members, the individuals:

   a. Must be Medicaid-eligible adults with intellectual and developmental disabilities residing in the state of Ohio who, on or

---

[3] Plaintiffs sought to define a group of "at risk" class members, whom they identified as people with intellectual and developmental disabilities who are qualified for home and community-based services and who now, or in the future:

(1) apply for or are referred for admission to an ICF; (2) are on waiting lists for Medicaid home and community-based services and have either an aging caregiver, intensive needs, or an emergency, as defined by Ohio's current or future waiting list rule, or (3) have another immediate need which creates a substantial risk of harm, as determined by Ohio's current or future waiting list rule.

(ECF No. 283 at 2–3 (emphasis added).)

> after March 31, 2016, are qualified for home and community-based
> services; and

> b.    <u>Must have received options counseling;</u> and

> c.    Must have <u>affirmatively stated</u> that they want community-based
> services, and have not had them provided.

(ECF No. 309 at 1–2 (emphasis added).)

At a mediation beginning on June 11, 2018, the parties again asked the Court to clarify

the class definition. (ECF No. 332 at 2.) The Court later memorialized the clarification of the

class as follows:

> The Court explained that the issue of the sufficiency of the options counseling "was
> not certified for class purposes." (Tr. at 3, ECF No. 323.) [footnote omitted] <u>The
> class consists of individuals who already received the options counseling as it is
> provided by the defendants.</u> The Court specified that the plaintiffs' claim that the
> defendants "failed to meaningfully inform" the plaintiffs "about feasible
> alternatives to institutional care" brought in the "Free Choice" claim was certainly
> a live claim, <u>but with regard to regard to individually-named plaintiffs only.</u> (*Id.*);
> (Compl. ¶¶ 219–220) ("Third Claim for Relief: Violation of the Social Security
> Act's "Free Choice" Provision under 42 U.S.C. § 1396n(c)(2)(B)&(C)").

(*Id.* at 2–3.)

While Plaintiffs have asked for reconsideration of this definition and clarification (ECF

No. 344), their request remains pending. Therefore, the definition and clarification above remain

the controlling class definition at this time.

## B.    Procedural History of Disputed Discovery Requests

On August 7, 2018, Plaintiffs propounded their Second Request for Production of

Documents ("RFP") (ECF No. 345-1) and Second Set of Interrogatories ("ROG") (ECF No. 345-

2) directed to DODD. On September 7, 2018, DODD responded to these requests. (ECF Nos.

368-1, 368-2). Thereafter, the parties conferred regarding these requests and responses but

reached impasse on certain requests. (ECF No. 338 at 1.) The Court conducted a conference on

October 2, 2018, and, after listening to the positions of these parties, determined that it was unable to resolve these disputes without the benefit of seeing the formal discovery requests and responses as well as the parties' arguments as they relate to each disputed request. (*Id.*) The Court therefore ordered Plaintiffs to file a motion to compel, specifically advising that it would not assess fees or sanctions in connection with the filing of this motion. (*Id.*) In accordance with the Court's Order (*id.*), Plaintiffs filed their Motion to Compel (ECF No. 345), which DODD opposed (ECF No. 349). While no reply was permitted except upon further Order of the Court (ECF No. 338 at 1), DODD filed a supplement to its Opposition on October 29, 2018. (ECF No. 356.) This matter is now ripe for resolution.

## II.

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citations omitted). "'It is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). Federal Rule of Civil Procedure 26(b) identifies the acceptable scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 33(a)(2) ("An interrogatory may relate to any matter that may be inquired into under Rule 26(b)."), 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)[.]"). In short, "a plaintiff should have access to information necessary to establish her claim, but [] a plaintiff may not be permitted to 'go fishing'; the trial court retains discretion." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th

5

Cir. 2017) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)); *see also Superior Prod. P'ship v. Gordon Auto Body Parts Co., Ltd.*, 784 F.3d 311, 320–21 (6th Cir. 2015) ("In sum, '[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" (quoting *Surles ex rel. Johnson*, 474 F.3d at 305)).

"[T]he movant bears the initial burden of showing that the information is sought is relevant." *Prado v. Thomas*, No. 3:16-cv-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *Gruenbaum v. Werner*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Id.* (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

### III.

Plaintiffs seek an order compelling DODD to produce discovery responsive to RFPs 1, 2, 3, 18, 20, 22, 28, and 29, as well as ROGs 1, 2, 4, 10, 12, and 13. (ECF No. 345.)[4] Except as

---

[4] At the beginning and end of their Motion to Compel, Plaintiffs identify ROG 11 as disputed requiring an Order (ECF No. 345 at 2, 15) but the body of the Motion does not address this ROG (*see generally id.*). In addition, although *not* identified in the beginning and end of their Motion as a request requiring an Order, Plaintiffs argue in the body of their Motion that RFP 28 requires an Order. (*Id.* at 2, 13, 15; *see also* Opposition, ECF No. 349 at 32 (addressing

6

otherwise noted, these RFPs and ROGs cover a response period of July 16, 2016 to the present. (ECF No. 345-1 at 6; ECF No. 345-2 at 6.) The Court now considers in turn each category of requested information identified in the Motion to Compel.

## A.    Information related to new waiting list rule (RFPs 1, 2, 3; ROGs 1, 2)

Plaintiffs seek an order compelling DODD to produce information related to a "new" (or "revised") waiting list rule, including documents related to the assessment performed or to be performed under this rule and documents related to the development, design, and construction of this rule and resources allocated to implement it. Specifically, the RFPs related to this category are as follow:

1.    Documents relating to the design, implementation and monitoring of the revised waiting list management process and Ohio Admin. Code 5123-9-04 (Home and Community- Based Services Waivers - Waiting List), including the creation, management and oversight of the transitional list of individuals waiting for home and community-based services, the pace of assessments, and the new individual waiver allocation process.

2.    Documents relating to the County Boards' implementation of Ohio Admin. Code 5123-9-04, including resources made available to complete the waiting list assessment tool for individuals on the transitional list, provide counseling on service options, develop individual service plans, and coordination of waiver enrollment and/or access to alternative, locally-funded services for those with current or immediate needs.

3.    Documents relating to the application of emergency status as defined under Ohio Admin. Code 5123:2-1-08(B)(5) and (D)(9), from July 1, 2015 to the present, including the number of persons found to meet this criteria, the date on which that determination was made, the length of time individuals waited for waiver slots, the number of individuals who did not receive waiver services, the number of individuals  who ultimately enrolled in waiver services, the date when those individuals were enrolled, and the type of waiver they received.

(ECF No. 345-1 at 8 (emphasis added).)

---

RFP 28).) Based on this record, the Court will address RFP 28 but not ROG 11 in this Opinion and Order.

7

The ROGs related to this category are as follow:

1.     Describe the new waiting list information technology system, including its functionality, reporting capacity, and ability to generate data and reports regarding the ongoing assessment of individuals on the transitional waiting list and the outcome of those assessments.

2.     Describe the specific steps being taken to ensure County Boards of Developmental Disability have the training, staffing capacity and resources required to carry out the functions described in Ohio Admin. Code § 5123-9-04, including completion of the waiting list assessment tool, the provision of options counseling, individual service planning, enrollment in waiver services, and access to alternative community services.

(ECF No. 345-2 at 8.)

Plaintiffs contend that these discovery requests are "directly relevant to the development of factual and expert evidence for Plaintiffs' ADA and 504 claims." (ECF No. 345 at 4.) Specifically, Plaintiffs believe that information regarding implementation of the waiting list rule will identify current and future class members. (*Id.* (explaining further that, *inter alia*, "individuals found to have immediate needs will receive information about their options to receive ICF, waiver or locally funded services, as well as assistance in 'identifying and accessing alternative services.'" (citation omitted)).) Plaintiffs argue that this discovery is appropriate because "the Court's class definition is not limited to individuals already in ICFs, but rather includes all individuals with intellectual and developmental disabilities who 'want to utilize community-based services, whether they are currently in an ICF or in the community and wish to move to another setting in the community.'" (*Id.* at 5 (quoting ECF No. 303 at 23).) Plaintiffs go on to argue that they "should be able to compare the outcome of this new assessment process, and specifically the number of individuals determined to have immediate needs, with the number of individuals previously determined to meet emergency status under the previous waiting list rule." (*Id.*)

8

DODD disagrees, responding that the requested information is outside the scope of the Court's certified class, not proportional to the needs of the case as required by Federal Rule of Civil Procedure 26(b), and that RFP 3, with its long time-frame, imposes an undue burden. (ECF No. 368-1 at 4; ECF No. 368-2 at 5–6.) DODD specifically argues that the requested information is not relevant to the identification of class members, that Plaintiffs' justifications rely on arguments previously rejected by this Court, and that responding to these requests would require at least 1,778 hours of attorney review at a taxpayer cost in excess of $63,765. (ECF No. 349 at 13–18 (citing, *inter alia*, Affidavit of Jeffrey D. Roush, ECF No. 349-2, at ¶¶ 6, 8 ("Roush Affidavit").).)

DODD's arguments are well taken. As set forth above, the Court clarified on May 2, 2018, that class members

a.     Must be Medicaid-eligible adults with intellectual and developmental disabilities residing in the state of Ohio who, on or after March 31, 2016, are qualified for home and community-based services; and

b.     <u>Must have received options counseling</u>; and

c.     Must have <u>affirmatively stated</u> that they want community-based services, and have not had them provided.

(ECF No. 309 at 1–2 (emphasis added).) The Court specifically explained on the same date that "options counseling" "means the counseling that is <u>currently being utilized</u>." (*Id.* at 1 (emphasis added); *see also* ECF No. 332 at 2 (explaining further that "[t]he class consists of individuals who <u>already received</u> the options counseling <u>as it is provided by the defendants</u>") (emphasis added).) The "new" or "revised" waiting list that is the subject of these disputed discovery requests was not "currently being utilized" when the Court clarified the scope of the class on May 2, 2018. (*Cf.* Ohio Admin. Code § 5123-9-04; ECF No. 345-1 at 8; ECF No. 345-2 at 5–6, 8.) Accordingly, options counseling "currently being utilized" as of May 2018 does not include

the "new" or "revised" waiting list assessment. It therefore follows that the requested information is not relevant to the identification of class members.

Moreover, as noted earlier and as DODD points out (ECF No. 349 at 15), the Court, when ruling on Plaintiffs' motion for class certification, previously rejected Plaintiffs' argument that a waiting list is the best method of identifying class members. (*See* ECF No. 303 at 21–22 (reasoning, *inter alia*, that individuals on the wait list have competing interests because some individuals want community-based services and other individuals want services provided in Large ICFs).) This conclusion therefore undermines Plaintiffs' present contentions that information regarding the "new" or "revised" waiting list is relevant to identifying class members.

Plaintiffs go on to argue that information regarding the application of emergency status (RFP 3) is relevant because Plaintiffs should be able to compare the outcome of the new waiting list assessment with "the number of individuals previously determined to meet emergency status under the previous waiting list rule." (ECF No. 345 at 5.) However, having rejected Plaintiffs' relevancy arguments regarding information regarding the "new" or "revised" waiting list, the Court finds that Plaintiffs' request for information relating to the application of emergency status (RFP 3) for comparison is similarly unavailing.

Finally, the Roush Declaration establishes that locating and producing the requested information would be unduly burdensome at significant cost to taxpayers. (*See* Roush Declaration, ¶¶ 6, 8.) Based on this record and considering the relevant factors under Rule 26(b)(1), the likely benefit of the requested information does not outweigh the burden and expense in this matter and is not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Anwar*, 876 F.3d at 854; *Superior Prod. P'ship*, 784 F.3d at 320–21.

For all of these reasons, as it relates to RFPs 1, 2, and 3, and ROGs 1 and 2, the Motion to Compel is **DENIED**.

**B.      Information related to the identity of individuals residing in state-operated ICFs (ROG 13)**

Plaintiffs seek an order compelling DODD to "[i]dentify individuals who, as of the date of this request, reside in a Developmental Center [("DC"), which is a state-run ICF], their guardians, as appropriate, and their current length of stay." (ECF No. 345-2 at 10.) Plaintiffs contend that case authority authorizes discovery of confidential information, including confidential health-protected information, about both putative class members and non-class members as part of developing evidence for class claims in discrimination classes. (*Id.* at 8–9 (citations omitted).) In addition, according to Plaintiffs, the protective order entered in this action (ECF No. 72) specifically contemplated this type of discovery. (ECF No. 345 at 9.) Plaintiffs further explain that central to their claims and to this litigation are "the size and scope of the Plaintiff class, the outcome of their individual options counseling process, and the extent to which they may be experiencing unnecessary segregation[.]" (*Id.*) Plaintiffs contend that the requested discovery is proportional to the needs of the case because the information is otherwise inaccessible to them and there is no undue burden where the individuals reside in facilities administered, overseen, and operated by DODD. (*Id.* at 9–10.) Finally, Plaintiffs represent that no further disclosure of confidential information would be requested if individuals choose not to communicate with Plaintiffs, or in doing so, confirm their opposition to community living. (*Id.* at 10.)

Plaintiffs' arguments are not well taken. As an initial matter, every individual currently residing in a DC is not part of the class as the Court previously clarified. (*See, e.g.*, ECF No. 332 at 2 (reiterating that to be class members, individuals must be "Medicaid-eligible adults with

11

intellectual and developmental disabilities residing in the state of Ohio who, on or after March 31, 2016, are qualified for home and community-based services" who "received options counsel" and who "affirmatively stated that they want community-based services, and have not had them provided") (emphasis added).) Specifically, while four individuals currently living in DCs have requested a waiver and are transitioning to the community, none of the remaining DC residents (approximately 400 individuals) has expressed an interest in a waiver. (ECF No. 356 at 2; Supplemental Affidavit of Ginnie Whisman, ECF No. 356-1, ¶¶ 2–5 ("Supplemental Whisman Affidavit")[5] (averring further that 433 long-term residents lived in DCs as of October 22, 2018; that since July 2017, fourteen residents have moved to another ICF and eighteen residents have requested and been enrolled on a waiver).) Moreover, DODD has represented that, in response to Plaintiffs' discovery requests, it will identify these individuals who have requested and received a waiver. (ECF No. 356 at 2.) In short, the present record reflects that Plaintiffs will receive (or have already received by this date) the identities of these individuals who fall within the class definition.

While Plaintiffs nevertheless insist that they "are entitled to test" DODD's sworn statements regarding the state-operated ICF residents who have received options counseling and elected to remain in their ICFs (ECF No. 345 at 8), their cited cases do not justify the broad production of non-parties' confidential information in this action. DODD correctly distinguishes four of those cases (all outside of this circuit) as Title VII cases that authorized discovery about non-parties only in instances distinct from this action where the legal claims required

---

[5] Ms. Whisman is the Deputy Director for DODD's Division of Residential Resources. (*Id.* at ¶ 1.) Her duties include management of the state-operated DCs. (*Id.*) DODD filed the Supplemental Whisman Affidavit after it became aware of modest changes to earlier statistics provided to the Court and Plaintiffs in July 2017. (ECF No. 356 at 2.)

consideration of similarly-situated individuals (ECF No. 349 at 20–21). *See Rich v. Martin Marietta Corp.*, 522 F.2d 333, 342–45 (10th Cir. 1975) (authorizing discovery regarding plant-wide job and promotional policies in Title VII case because "there were no other means of ascertaining whether there was merit in the allegations of the plaintiffs" and "it was grossly unjust to allow the defendant company to utilize plant-wide statistics involving large classes of people plus statistics of other employers in this five-county area, while at the same time restricting the plaintiffs to the narrowest possible scope"); *Kennicott v. Sandia Corp.*, No. 17-cv-188, 2018 WL 2206880 (D. N.M. May 14, 2018) (authorizing discovery of information about non-parties who had previously filed gender discrimination complaints against defendant because plaintiffs needed to establish a culture of discrimination against similarly-situated individuals as part of their Title VII claim); *Lang v. Intrado, Inc.*, No. 07-cv-00589, 2007 WL 3407366, at *4 (D. Colo. Nov. 13, 2007) (authorizing discovery of information regarding comparitors, including qualifications, compensation, and personnel files (excluding social security numbers, medical information, and tax information) where plaintiff "must first establish how her comparitors were treated before she can establish disparate treatment"); *Morgenstern v. Int'l All. of Theatrical Stage Emp., Local 16*, No. C 05-03156, 2006 WL 2385233 (N.D. Cal. Aug. 17, 2006) (concluding that names, gender, income, and benefits of similarly-situated employees was discoverable and relevant to one of the required elements of the plaintiff's Title VII claim, *i.e.*, whether those individuals were treated more favorably than the plaintiff).

The scope of the class and the discovery authorized in the two remaining cases cited by Plaintiffs, class actions against the State of Illinois involving the rights of individuals with developmental disabilities, are also distinguishable and do not warrant the broad confidential information sought in the present action. (ECF No. 345 at 9 (citing *Ligas v. Maram*, No. 05 C

13

4331, 2007 WL 4225459 (N.D. Ill. Nov. 27, 2007) and *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680 (N.D. Ill. Jan. 2, 2008)).) For example, in *Ligas*, the court defined the class as individuals with cognitive impairment and/or other developmental disabilities who, among other things, "with appropriate supports and services, could live in the community and who would not oppose community placement[.]" *Ligas*, 2007 WL 4225459, at *1. The *Ligas* court initially held that the plaintiffs' initial subpoenas seeking the "complete file" of each resident from a randomly selected sample of 100 residents were overly broad and unenforceable and "were likely to gather much irrelevant information and that their seemingly limitless scope would make compliance unduly burdensome." *Id.* at *1–3. After the plaintiffs narrowed the scope of their request to categories of documents identified as relevant by an expert, 76 of the 78 ICFs stipulated to producing responsive documents. *Id.* at *2. The *Ligas* court later granted plaintiffs' motion to compel the remaining two ICFs to respond to the amended subpoenas because, *inter alia*, the narrowed scope of requested documents was "sufficiently tailored" to gather relevant information and "may yield highly probative evidence to support or disprove Plaintiffs' claim that there are numerous individuals currently living in large institutions who are willing and able to live in a community setting." *Id.* at *4 (limiting the scope of the amended subpoenas further by reducing the responsive period from three years to five years). The *Ligas* court therefore authorized discovery directly related to subjective criteria to be used in identifying putative class members. *Id.* at *2 (describing the five categories of documents, including documents related to each resident's treatment program, treatment schedule, behavioral support plans or intervention programs).

Conversely, in the instant case, the Court has clearly defined the scope of the class through objective criteria and DODD has previously disclosed the identity of those individuals

(with an updated list of such individuals forthcoming). (ECF No. 332 at 2 (defining class members as individuals who, among other things, "affirmatively stated that they want community-based services, and have not been provided" and clarifying further that Plaintiffs' "Free Choice" claim was live as to only individually-named Plaintiffs); ECF Nos. 273-5, 273-7 (affidavits regarding individuals living in a DC who were offered and interested in waivers); Supplemental Whisman Affidavit (updating such list of individuals)).) As previously noted and as discussed in more detail below, every individual currently residing in a DC is not part of the class and therefore the confidential information requested by Plaintiffs is not highly probative to Plaintiffs' class claims. (*See id.*; ECF No. 345-2 at 8–9) (contending that Plaintiffs need to obtain the names and addresses of all individuals currently residing in ICFs "as part of developing evidence for class claims").) Moreover, Plaintiffs do not limit the scope of their request to a randomly selected sample size or provide any protection for DC residents to refuse to provide their confidential information in the first instance. (*See* ROG 13; ECF No. 345 at 9–10 (representing only that "no further disclosure of confidential information is requested" if DC "individuals choose not to communicate with Plaintiffs, or in so doing confirm their opposition to community living").)

Similarly, in *Williams*, the court used subjective criteria in certifying a Rule 23(b)(2) class of Illinois residents who "(a) have a mental illness; (b) are institutionalized in a privately owned Institution for Mental Diseases ["IMDs"]; and (c) with appropriate supports and services may be able to live in an integrated community setting." *Williams*, 2008 WL 68680, at *1 (internal quotation marks omitted). The *Williams* plaintiffs' subpoenas directed to non-party IMDs sought access to residents' records (later clarified to include only those "readily available at the IMD") and/or the opportunity to interview randomly selected residents, excluding any

15

resident who has a guardian. *Id.* at *1–2, 5. The plaintiffs' retained experts could then review these records and/or conduct interviews in order "to make generalized determinations regarding what opportunities for community placement are being provided, whether residents would qualify for such placements, and whether residents would be interested in such placements." *Id.* at *1. The *Williams* court recognized that "some or many" of these individuals will not be class members "because they will not satisfy the criterion of being able to live in an integrated community setting with appropriate supports and services." *Id.* However, the court went on to grant in part and deny in part the IMDs' motions to quash, noting the proposed limitations on documents to be produced, that only residents who consent would be interviewed, and that the plaintiffs' three experts have substantial training and vast experience interviewing mentally ill persons and that these experts opined that "their interviews are likely to produce usable material for their intended purpose[,]" *id.* at *4–6, *i.e.*, for the purpose of making "generalized determinations regarding what opportunities for community placement are being provided, whether residents would qualify for such placements, and whether residents would be interested in such placements." *Id.* at *1. In short, as with *Ligas*, *Williams* presents a distinct class definition, factual posture, and discovery request that does not encompass the discovery of the identities and contact information of all individuals currently residing in ICFs—which include individuals who have declined waivers and are therefore expressly out of the objectively defined class sought in this action.

Accordingly, as it relates to ROG 13 as presently formulated, the Motion to Compel is **DENIED**.

C. **Information related to options counseling in state-operated ICFs (RFP 22)**

Plaintiffs seek an order compelling production information relating to the options

counseling process used in state-operated ICFs:

> 22. Documents relating to the delivery of options counseling to developmental
> center residents, including the process for recording individuals' interest in or
> opposition to community services, how often community services are offered, who
> provides information and counseling regarding service options, the number of peer-
> to-peer or family-to-family supports offered/provided, the number of community
> provider visits offered/provided, and how DODD/DC [developmental center] staff
> address concerns expressed by individuals or guardians regarding discharge to
> community-based services.

(ECF No. 345-1 at 12.)

Plaintiffs contend that their class claims and the class definition include individuals

residing in state-operated ICFs and that there are over 650 such individuals. (ECF No. 345 at 6

(citing ECF No. 273 at 17).) According to Plaintiffs, Defendants have acknowledged that they

currently provide options counseling in these settings and, on prior occasions, Defendants have

represented that none of the 471 long-term residents has any interest in community services. (*Id.*

at 6–7 (citations omitted).) Plaintiffs argue that they should be able to discover information

regarding this "unsupported contention, especially given the number of individuals served in

state-operated ICFs, the potential for those individuals to change their mind, and the importance

of their expressed preferences to determining current and future class membership." (*Id.* at 7.)

Plaintiffs further argue that this information, which is exclusively in Defendants' possession, is

relevant to assessing their claims of unnecessary segregation under the ADA and Section 504

because the size of the class (and the extent to which potential class members would choose

integrated services after receiving options counseling) will impact "the need for scope of class-

wide relief." (*Id.*)

17

Plaintiffs' arguments are not well taken. As a preliminary matter, the information DODD provided to Plaintiffs regarding DC residents and waivers was in the form of sworn affidavits. Specifically, DODD's Deputy Director for the Division of Residential Resources has averred under oath statements regarding residents at DCs and their preference for community-based services. (ECF No. 273-5 ("First Whisman Affidavit") and Supplemental Whisman Affidavit.) Similarly, DODD's Residential Resource Administrator's sworn affidavit provides additional information ("First Whisman Affidavit") regarding counseling, waivers, and the specific information provided to residents, guardians, and their families. (ECF No. 273-7 ("Lawson Affidavit").)

In addition, after DODD filed its Opposition to the Motion to Compel, it filed a Supplemental Brief, updating its 2017 statistics. (ECF No. 356 and Supplemental Whisman Affidavit, ¶¶ 2–5 (averring that 433 long-term residents lived in DCs as of October 22, 2018; that since July 2017, fourteen residents have moved to another ICF and eighteen residents have requested and been enrolled on a waiver; and that four individuals presently are interested in a waiver and planning is underway for transition and enrollment onto a waiver).) The Court finds that this information does not constitute an "unsupported contention[.]" (ECF No. 345 at 7.)

Moreover, to the extent that RFP 22 may be relevant to Plaintiffs' claims, DODD has represented under oath that responding to this request is unduly burdensome. (ECF No. 349 at 24–25; Roush Affidavit, ¶¶ 6–8.) Specifically, DODD explains that Plaintiffs' revised search terms produced a report of 52,716 documents totaling 34.84 GB, at a cost to taxpayers of at least $36,901.20, to review these documents. (*Id.*) After considering this record and the relevant factors under Rule 26(b)(1), the Court is not persuaded that the likely benefit of the requested information outweighs the burden and expense in this matter or that it is proportional to the

needs of the case. Fed. R. Civ. P. 26(b)(1); *Anwar*, 876 F.3d at 854; *Superior Prod. P'ship*, 784 F.3d at 320–21. As it relates to RFP 22 as presently formulated, the Motion to Compel is therefore **DENIED**.

**D.     Information related to aggregate assessment data for state-operated ICF residents (RFP 20)**

Plaintiffs seek an order compelling DODD to respond to RFP 20, which they proposed modifying as follows in their Motion to Compel: "Documents relating to aggregate functional assessment results for state-operated developmental center residents, including how those assessment results are used to determine appropriate level of care." (ECF No. 345 at 10 (explaining that they learned during the meet and confer process that "the specific assessment tool referenced in RPD 20 is only used in private ICFs" and that "state ICF residents are administered what is known as a comprehensive functional assessment tool, and which is unrelated to funding"); *compare with* ECF No. 345-1 at 12 (stating RFP 20 as initially formulated: "Documents relating to aggregate IAF/ODDP assessment results for state-operated developmental center residents, including how those results are used to determine appropriate level of care for individuals and funding for ICF placements.").)

Plaintiffs contend that the requested information is relevant to individual residents' "ability to benefit from integrated community services[,]" to Plaintiffs' claims "that individuals at the ICF level of care could also be safely served in the community with appropriate supports[,]" and "to rebutting allegations by the Guardian-Intervenors that individuals in large ICFs have needs that cannot otherwise be met in less restrictive service settings." (ECF No. 345 at 10.)

Plaintiffs' arguments are not well taken. As DODD points out (ECF No. 349 at 25), Plaintiffs rationale presupposes that these individuals want community-based services.

19

However, with some exceptions previously discussed and as updated by DODD, the individuals currently residing in DCs do not want community-based services (*see* Supplemental Whisman Affidavit, ¶¶ 2–5) and therefore fall outside the scope of the defined class. (ECF No. 332.) Considering this as well as the reasons previously discussed with regard to ROG 13 and RFP 22, the present record does not persuade the Court that the likely benefit of the requested information outweighs the burden and expense in this matter or that it is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

Accordingly, as it relates to RFP 20 as originally issued and revised, the Motion to Compel is **DENIED**.

**E.    Information related to individuals residing in privately-operated ICFs (ROG 10)**

Plaintiffs seek an order compelling DODD to "[i]dentify the individuals/guardians who were contacted by, or received options counseling from, CareStar or APSI, and the outcome of these contacts/counseling sessions." (ECF No. 345-2 at 9.) Plaintiffs explain that this interrogatory includes individuals "who originally expressed that they 'may be' interested in community services, but for whom there was little or no follow-up after their initial contact with options counselors" and "individuals whom CareStar was unable to contact in person, such that their preference for community living is unknown." (ECF No. 345 at 11.) Plaintiffs contend that they have a right "to discovery that may identify potential class members and their preferences" and "a right to test Defendants' assertions regarding when and how class membership is determined, based on currently utilized options counseling." (*Id.*)

For the reasons previously discussed at length herein, the Court disagrees. Briefly, class members "[m]ust have affirmatively stated that they want community-based services, and have not had them provided." (ECF No. 309 at 1–2; ECF No. 332 at 2 (clarifying further that "the

issue of the sufficiency of the options counseling 'was not certified for class purposes'" (citing

ECF No. 323 at 3).)  The Court has explained that this class definition excludes individuals who

say "no" to, or "may be" interested in, community-based services.  (*Id.*; ECF No. 303 at 18–22

(explaining why, *inter alia*, the Court declined to certify a class including individuals who "may

be" interested in a waiver in the future).)  Plaintiffs' reasons for insisting on this information

unrelated to the defined class is therefore not well taken.

 Moreover, DODD requests that it produce only the following information in response to

ROG 10:

> (1) the identities and contact information for all individuals who have undergone
> options counseling <u>and affirmatively requested community-based services</u>; and (2)
> the APSI and CareStar aggregate counseling summary reports detailing the total
> number of individuals receiving counseling, the number affirmatively requesting
> community-based services, the number declining community-based services, the
> number saying "may be" to community-based services, and the number of people
> who declined to return phone calls from counselors.

(ECF No. 349 at 28 (emphasis added); *see also id.* at 26.)  The Court finds that the proposed

production is sufficiently responsive to ROG 10 while consistent with the scope of the defined

class.  Accordingly, to the extent ROG 10 seeks information beyond the above proposed

response, the Motion to Compel is **DENIED**.

## F. Information related to individuals residing in eight-bed ICFs (ROG 12)

 Plaintiffs also seek an order compelling DODD to "[i]dentify the individuals who, as of

the date of this request, reside in an ICF with 8 beds, their guardians, as appropriate, and their

current length of stay."  (ECF No. 345-2 at 10.)  According to Plaintiffs, there are approximately

1,300 individuals residing in ICFs with eight beds and these individuals receive options

counseling as part of their annual service planning meeting.  (ECF No. 345 at 11–12 (citations

omitted).)  Plaintiffs contend that they "have no way to determine the number of potential class

members in eight-bed ICFs" because there is no public reporting of the outcome of these meetings. (*Id.* at 12.) Plaintiffs argue that contact information for these individuals residing in eight-bed ICFs is relevant to "Plaintiffs' underlying ADA and Section 504 claims, and to their ability gather evidence regarding the extent of potentially discriminatory segregation, and unmet demand for community-based services" as well as "relevant to the size and scope of the Plaintiff class, and the extent to which systemic injunctive relief is required to remedy class claims." (*Id.*)

DODD disagrees, arguing that the Court, when ruling on the motion for class certification, recognized that the certified class did not include all individuals in eight-bed ICFs. (ECF No. 349 at 29–30 (citing, *inter alia*, ECF No. 303 at 15 n.2).) DODD explains that this is because the Court requires that class members receive options counseling and the only eight-bed ICF residents who have received options counseling are those who have the Ohio public guardian's office ("APSI") as a guardian. (*Id.* at 29 (citing, *inter alia*, Affidavit of Lori Horvath, ECF No. 273-3, ¶ 11); *see also* ECF No. 345 at 12 n.7 (recognizing that individuals in eight-bed ICFs who have APSI as a guardian receive options counseling as part of an agreement with the State of Ohio).) DODD further contends that ROG 12 is flawed because it does not ask for the annual assessment outcome of individuals residing in eight-bed ICFs. (ECF No. 349 at 30.) DODD also challenges Plaintiffs' assertion that it needs the information requested in ROG 12 to identify class members, arguing that the Court previously determined that Plaintiffs did not seek class certification for all individuals in eight-bed ICFs and that discovery outside of the parameters of the Court's objective criteria for class membership is irrelevant. (*Id.* at 29–30.) DODD goes on to explain that even if the information were relevant, the burden of searching for and producing the information is unduly burdensome and disproportionate to the needs of this case. (*Id.* at 30–32.)

DODD's arguments are well taken. In ruling on Plaintiffs' motion for class certification, the Court specifically stated that it did not interpret Plaintiffs' certification request to include all residents in eight-bed ICFs:

> The Ohio Defendants add "residents of eight-bed ICFs" as a fourth category. (*Ohio Defs.' Supp. Opp.* at 28, ECF No. 291.) However, the Ohio Defendants admit that they are "uncertain whether, and to what extent, these people are in or out of this proposed class" because, while Plaintiffs "repeatedly suggest they seek to represent such people" the definition of the class requires an ICF resident to have "'receiv[ed] options counseling' and then expressed at least some interest in waivers." (*Id.* at 32.) The Court does not interpret Plaintiffs' request to encompass all residents of Large ICFs [defined on p. 1 of Opinion and Order as ICFs with eight or more beds]. Thus, the Court will not address the Ohio Defendants' arguments related to this category.

(ECF No. 303 at 15 n.2 (emphasis added).) Accordingly, ROG 12, in requesting the identity of individuals residing in eight-bed ICFs, their guardians, and their current length of stay, seeks information outside of the class definition that is not relevant to Plaintiffs' claims.

Even if it were relevant to Plaintiffs' claims, the Court is not persuaded that the burden of producing this information outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). There are approximately 160 eight-bed ICFs with about 1,300 residents. (ECF No. 345 at 11–12; ECF No. 349 at 31.) The annual assessment results for each such individual is outside of DODD's possession. (ECF No. 349 at 31.) Instead, it is stored at each of the 160 ICFs, requiring DODD to request that each ICF pull the information and provide it to DODD. (*Id.*) DODD further represents that the length of stay information is difficult to compile because "ICFs and DODD do not necessarily maintain their data in this manner." (*Id.*) Moreover, some of these individuals who have APSI as a guardian will have said "no" or "may be" to community-based services, excluding them from the scope of the objectively defined class. (ECF No. 303 at 18–22; ECF No. 332 at 2.)

For these reasons, the Court concludes that DODD's proposed production of the

following information sufficiently responds to ROG 12 in light of the scope of the class and

interests of Rule 26(b)(1):

> (1) only the identities of the individuals affirmatively requesting community-based
> services after undergoing APSI counseling; and (2) the aggregate numbers detailing
> the total number of individuals receiving APSI counseling, the number
> affirmatively requesting community-based services, the number declining
> community-based services, and the number saying "may be" to community-based
> services.

(ECF No. 349 at 32.)

Accordingly, to the extent ROG 12 seeks information beyond the above proposed

response, the Motion to Compel is **DENIED**.

## G. Information related to alleged abuse, neglect, and treatment failures in private ICFs (RFP 28)

Plaintiffs next seek an order compelling DODD to produce "[d]ocuments relating to

alleged regulatory, contractual or licensing violations in private ICFs concerning inadequate

conditions or service provision, abuse and neglect, or the failure to provide active treatment, and

any resulting investigations, findings, or corrective measures including suspension of

admissions, license revocations, or facility closures." (ECF No. 345-1 at 13.) Plaintiffs contend

that this information regarding the health and safety of current and prospective class members

residing in private ICFs is relevant because "individuals whose needs are not being met in the

ICF, or who are subject to abuse and neglect, are likely to express an interest in community

alternatives." (ECF No. 345 at 13.) Plaintiffs argue that the requested information is also

relevant to "rebutting Guardian-Intervenors' claims that the ICF system is contracting

inappropriately, as opposed to reductions in capacity and facility closures which result from State

investigations finding dangerous or inadequate care." (*Id.*) Plaintiffs go on to argue that this

24

Defendants have not said that the number of violations, resulting investigations, or corrective actions are so significant as to be unduly burdensome to produce and any individual information produced is covered by the Protective Order (ECF No. 72). (*Id.*)

The Court is persuaded that the requested information is relevant to at least rebutting the Guardian-Intervenors' claims. While DODD contends that the Court should deny the Motion to Compel as to this request because RFP 28 seeks information about certification and licensure reviews that is publicly available (ECF No. 349 at 33), the Court understands the request to seek information beyond such reviews that is not publicly available. DODD next argues that even if relevant, "the request as written is not the most proportionate method to achieve this information." (*Id.*) However, nothing in DODD's Opposition persuades this Court that responding to RFP 28 would impose an undue burden or is disproportionate to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1).

Accordingly, as it relates to RFP 28, the Motion to Compel is **GRANTED** as follows: The parties are directed to confer on a proposed timeline for DODD to produce the requested information. The parties are **ADVISED** that they should be prepared to update the Court as to the status of these discussions and forthcoming production at the next scheduled conference. The parties are **REMINDED** to exhaust all extra-judicial efforts before asking the Court to address any dispute related to RFP 28.

## H. Information related to funding of ICF programs and state ICF rate redesigns (RFP 18)

Plaintiffs also seek an order compelling DODD to produce the following:

18. Documents relating to the rationale for, and implementation of, ICF reimbursement redesign, including communications related to House Bill 24 of the 132 General Assembly (2018), and presentations, data, communications, minutes, recommendations, assessments, and reports authored by or exchanged with the

following entities: PCG Health, the ICF reimbursement workgroup, the ICF work group, and the ICF/MR Medicaid rate group.

(ECF No. 345-1 at 11.) Plaintiffs contend that "it is clear" that Defendants "intend to raise affirmative defenses to the Plaintiffs' ADA claims, including that Plaintiffs' requested system modifications cannot be achieved without fundamentally altering the existing service system." (ECF No. 345 at 14 (citing Defendants' Brief in Opposition to Plaintiffs' Motion for Class Certification, ECF No. 273, at 7, 44) (referring to public funding).) According to Plaintiffs, funding of the ICF system is relevant to rebutting Defendants' claims of fundamental alteration, developing factual and expert evidence regarding Plaintiffs' claims that class members' needs can be reasonably accommodated, and to Plaintiffs' allegations that the State of Ohio has engaged in discriminatory administration, funding, and policy decisions under the ADA and Section 504. (*Id.*)

DODD argues that even if Plaintiffs' proffered rationales were correct, the final reimbursement rule, not internal discussions leading to the final rule, is what matters and that any "alteration" to ICF rate structure "would occur within the context of the publicly available rule, not draft rules or preliminary discussions." (ECF No. 349 at 34–35.) DODD goes on to explain that the ICF reimbursement rule change process took months to complete and included feedback from various disability service system stakeholders and, therefore, the only way to identify all potentially responsive documents is to perform an ESI search. (*Id.*) The parties previously agreed-upon ESI search terms resulted in 23,883 items totaling 8.8 GB, at a cost to taxpayers of at least $16,717.40, to review this information. (*Id.* at 35 (citing Roush Affidavit, ¶¶ 6, 8).) DODD goes on to propose that it produce "the ICF workgroup meeting presentations, which include the presentations provided by PCG Health and the final rule." (*Id.*)

DODD's position is well taken. In light of the parameters of Rule 26(b)(1), the Court finds that DODD's proposed production of ICF workgroup meeting presentations sufficiently responds to RFP 18. To the extent RFP 18 seeks information beyond this response, the Motion to Compel is **DENIED**.

## I.    Information related to the DODD warehouse (RFP 29 and ROG 4)

Plaintiffs seek an order compelling DODD to produce information related to the DODD warehouse. As originally formulated, Plaintiffs sought the following information:

> 29.    Documents relating to the DODD data warehouse and computer platforms, the information collected therein, and the searchability, functionality and capabilities of those databases.

(ECF No. 345-1 at 13.)

> 4.    Describe the searchability, functionality and reporting capabilities of the DODD data warehouse, including its various databases and computer platforms and the information collected therein.

(ECF No. 345-2 at 8.)

Plaintiffs represent that following the parties' meet and confer process, Plaintiffs agreed to further specify the information sought, revising the requests as follows:

> RPD 29: "Documents sufficient to show each of the following as they concern DODD clients, service providers, and service delivery: 1) the nature and scope of data collected in the DODD data warehouse; 2) the title, content and frequency of reports generated from this data in the normal course of business; 3) the purpose and use of those reports; and 4) the searchability, functionality and capabilities of those databases."

> Interrogatory 4: "Describe the searchability, functionality and reporting capabilities of the DODD data warehouse as concerns DODD clients, service providers, and service delivery, including descriptions of its various databases and the information collected therein."

(*Id.* at 15.) Plaintiffs clarify that they do not currently seek the production of specific databases but rather seek "descriptions and examples of the kind of information held by the Defendants in

these areas, how that information is routinely used, and the ways in which it can be searched and analyzed." (*Id.* (stating further that they "hope that a timely response will allow for any future requests to be targeted to the specific data, reports, or databases most relevant to the claims in this case").) Plaintiffs take the position that this information is "is relevant to, and forms the basis for, the Defendants' administrative, funding, and policy decisions." (*Id.* at 14.)

The Court agrees with DODD that RFP 29 and ROG 4 even in their revised form are vague. As DODD points out, DODD is a state agency responsible for operating a budget of over $2.6 billion. (ECF No. 349 at 36 (citation omitted).) General requests for information about DODD's "data collected in the DODD data warehouse" and "reports" generated from that data, without any further specification or limitation, are therefore not proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1); *see also Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017) ("[A] plaintiff should have access to information necessary to establish her claim, but [] a plaintiff may not be permitted to 'go fishing'; the trial court retains discretion."). For these reasons, as it relates to RFP 29 and ROG 4, whether as originally proposed or revised, the Motion to Compel is **DENIED**.

## J.      DODD's Request that Plaintiffs Bear the Costs of Production

Finally, DODD argues that even though the producing party typically bears the cost of production, the Court should use its discretion to shift such cost to Plaintiffs if the Court compels DODD to respond to the disputed requests. (ECF No. 349 at 37–38 (representing that it has expended over $730,000 producing nearly 300,000 documents totaling 53.7GB).) The Court, however, has directed DODD to produce information responsive to only a few requests, primarily in the revised form suggested by DODD. Under these circumstances, DODD's request

to shift the cost of production to Plaintiffs (ECF No. 349 at 37–39) is **DENIED WITHOUT PREJUDICE**.

**IV.**

For these reasons, Plaintiffs' Motion to Compel from Defendant Dodd and Memorandum in Support (ECF No. 345) is **GRANTED IN PART AND DENIED IN PART** consistent with the foregoing.

**IT IS SO ORDERED.**

11-29-2018
_____
**DATE**

_____
EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**

**ELIZABETH A. PRESTON DEAVERS**
**CHIEF UNITED STATES MAGISTRATE JUDGE**