IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PHYLLIS BALL, et al.,
    Plaintiffs,

v.

Case No. 2:16-cv-282
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

JOHN KASICH, et al.,
    Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Reconsideration of the Court's September 25, 2018 Order (ECF No. 344), Defendants' Response in Opposition to Plaintiffs' Motion (ECF No. 357), Intervenor Guardians' Response in Opposition to Plaintiffs' Motion (ECF No. 358), and Plaintiffs' Reply in Support of their Motion (ECF No. 366). For the reasons that follow, the Court **DENIES** Plaintiffs' Motion.

**I.**

Plaintiffs move for reconsideration of the definition of the class that this Court certified. Defendants contend that this Court should not consider Plaintiffs' motion because they made no effort "to discuss reconsideration standards at all." (Defs' Mem. in Opp. at 8) (citing *Monroe v. Houk*, No. 2:07-cv-258, 2016 U.S. Dist. LEXIS 136117, at *4 (S.D. Ohio Sept. 30, 2016) (stating that reconsideration of interlocutory decisions "is generally disfavored"); *Zobel v. Contech Enters.*, No. 2:14-cv-2721, 2017 U.S. Dist. LEXIS 40829, at *3 (S.D. Ohio 2017) (highlighting that reconsideration motions "are 'extraordinary in nature and, because they run contrary to notions of finality and repose, should be discouraged.'")).

In reply, Plaintiffs contend that, "[i]t is well-settled that '[o]rders concerning class certification are inherently tentative in nature since they may be revisited at any time prior to

final judgment.'" (Pls' Reply at 3, ECF No. 366) (quoiting *In re Breast Implant Litig.*, No. 92-3420, 1992 WL 739891, at *1 (6th Cir. May 22, 1992)). Plaintiffs maintain that "courts have held that the 'usual reluctance to entertain motions for reconsideration simply does not apply in the class certification context . . . because of the special procedural role played by a district court in supervising the maintenance of a class action.'" *Id.* (citing *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651-52 (C.D. Cal. 2000) and *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 593 n. 6 (E.D. Cal. 1999) ("Because the court has the power to alter or amend the previous class certification order under Rule 23(c)(1), the court need not consider whether 'reconsideration' is also warranted under Fed. R. Civ. P. 60(b) . . . .")).

Plaintiffs are correct that this Court may alter or amend its class definition at any time prior to final judgment. As is reflected in both of the cases relied upon by Plaintiffs, generally when courts alter or amend a class definition it is done as the progression of the case brings to light facts that were unknown at the time of the class was certified or to address law that had changed since the time the class was certified. For example, in *Slaven* the parties moved in 2000 to have amended a class definition that was certified in 1994. The Court noted that "the governing law has changed since 1994, when the Court last entertained a motion pertaining to class certification. The Ninth Circuit now requires a Court to undertake 'rigorous analysis' in reaching class certification decisions." *Slaven*, 190 F.R.D. at 651–52. Similarly, in *Ballard*, "the body of law pertaining to debt collection in general as well as the law and facts in th[e] case have evolved" in the two years since the motion for class certification had been filed. In the instant action, Plaintiffs make no argument that the law or facts have evolved since the Court considered, decided, and twice clarified, Plaintiffs' Motion for Class Certification.

2

**II.**

This case was filed on March 31, 2016. Plaintiffs seek the following declaratory and injunctive relief under these three federal statutes:

(1) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132 *et seq.*, alleging that "Individual Plaintiffs and the members of the Plaintiff class . . . . are qualified to participate in the Defendants' system of home and community-based programs and services" but that Defendants failed to provide them with that access, which is "required to remedy or prevent their unnecessary institutionalization . . . ." (Compl. ¶¶ 205–11.)

(2) Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 794 *et seq.*, alleging that "Individual Plaintiffs and the members of the Plaintiff class . . . . are qualified to participate in the Defendants' system of home and community-based programs and services" but that Defendants failed to provide them with that access, which is "required to remedy or prevent their unnecessary institutionalization . . . ." (Compl. ¶¶ 212–18.)

(3) The Social Security Act, 42 U.S.C. §§ 1396n(c)(2)(B) and (C), alleging that "Individual Plaintiffs and the members of the Plaintiff class . . . who are likely to meet [Intermediate Care Facility ("ICF")] level of care criteria, which qualifies them for either ICF or home and community-based waiver services . . . . have [not been] meaningfully inform[ed] . . . . of feasible alternatives to institutional placement, including their eligibility for, and the availability of, home and community-based services which could prevent or avoid their continued and unnecessary institutionalization . . . ." (Compl. ¶¶ 219–23.) Plaintiffs have refer to this claim as the "Free Choice" claim.

Plaintiffs filed a Motion to for Class Certification on August 22, 2016, which consisted of briefing and exhibits that totaled 1,316 pages. (ECF No. 42.) In this motion, Plaintiffs requested certification of the following class:

3

> All Medicaid-eligible adults with intellectual and developmental disabilities residing in the state of Ohio who, on or after March 31, 2016, are institutionalized, or at serious risk of institutionalization, in an Intermediate Care Facility with eight or more beds, and who have not documented their opposition to receiving integrated, community-based services.

(ECF No. 42 at 3–4.)

After class discovery, Defendants responded in opposition to Plaintiffs' Motion for Class Certification in a document that consisted of 429 pages of briefing and exhibits. (ECF No. 273.) Defendants focused in large part on what they viewed as the proposed class members' different and conflicting interests. (ECF No. 273.)

On August 22, 2017, the Court held a settlement conference with the parties. While the conference failed to secure a settlement, there were many issues discussed that prompted Plaintiffs to file a Motion to Include Supplemental Evidence and a Revised, Proposed Class Definition. (ECF No. 276.) Defendants opposed this request, noting the significant time and resources it spent responding to the first class certification motion. (ECF No. 279.) The Court, however, granted Plaintiffs' request.

In Plaintiffs supplemental brief, which totaled 1,156 pages of briefing and exhibits, Plaintiffs revised their requested class definition to the following:

> All Medicaid-eligible adults with intellectual and developmental disabilities residing in the state of Ohio who, on or after March 31, 2016, are qualified for home and community-based services, but (a) are institutionalized in an Intermediate Care Facility with eight or more beds, <u>and, after receiving options counseling</u>, express that they are interested in, or may be interested in, integrated community-based services; or (b) are at serious risk of institutionalization in an Intermediate Care Facility with eight or more beds and have, by placing themselves on a waiting list for community-based services, expressed an interest in receiving integrated services while continuing to live in the community.

(ECF No. 283 at 2) (emphasis added). Plaintiffs explained:

> Class members at serious risk of institutionalization in large ICFs include people with intellectual and developmental disabilities who are qualified for home and community-based services and who now, or in the future: (1) apply for or are

4

referred for admission to an ICF; (2) are on waiting lists for Medicaid home and community-based services and have either an aging caregiver, intensive needs, or an emergency, as defined by Ohio's current or future waiting list rule, or (3) have another immediate need which creates a substantial risk of harm, as determined by Ohio's current or future waiting list rule.

*Id.* at 2–3.

By the time the class certification issue was ripe for this Court's review, the parties had filed over 3,000 pages of briefs and exhibits over a period of nearly two years. (ECF Nos. 42, 94, 273, 275-76, 278–81, 283, 289, 291, 293–94, 296, 300, 308.)

On March 30, 2018, this Court issued its decision granting in part and denying in part Plaintiffs' request to litigate all of their claims on a class wide basis. The Court utilized some of the requested language offered by Plaintiffs, such as making the receipt of options counseling an element of the definition, and certified the following class:

> All Medicaid-eligible adults with intellectual and developmental disabilities residing in the state of Ohio who, on or after March 31, 2016, are qualified for home and community-based services, and, <u>after receiving options counseling</u>, express that they are interested in community-based services.

(ECF No. 303 at 22) (emphasis added).

After certifying the class, the Court held a status conference on May 2, 2018. The parties disagreed as to the meaning of the definition of the class that the Court certified. The Court issued a memorialization of that conference that addressed, *inter alia*, the class definition as follows:

> In the parties' suggested agenda topics submitted to the Court, it was clear that there is a disagreement as to this Court's definition of the class it certified. In its decision on class certification, the Court narrowed the proposed class definition as follows:
>
> > All Medicaid-eligible adults with intellectual and developmental disabilities residing in the state of Ohio who, on or after March 31, 2016, are qualified for home and community-based services, and,

after receiving options counseling, express that they are interested in community-based services.

1. At the status conference, the Court clarified its class definition as follows:

    a. "Interested in" means affirmatively state that they want community-based services.

    b. "Options counseling" means the counseling that is currently being utilized.

2. Thus, to be class members, the individuals:

    a. Must be Medicaid-eligible adults with intellectual and developmental disabilities residing in the state of Ohio who, on or after March 31, 2016, are qualified for home and community-based services; and

    b. Must have received options counseling; and

    c. Must have affirmatively stated that they want community-based services, and have not had them provided.

(ECF No. 309 at 1–2.) At the May 2, 2018 conference, the parties also indicated that they would like to engage in another settlement conference.

On June 11 and 12, 2018, the Court held a two-day mediation. At that conference the issue of the class definition was still a point of contention between the parties. Plaintiffs took the position that the sufficiency of the options counseling was a claim that they could litigate on a class wide basis. This Court disagreed. The Court issued a Second Clarification Order memorializing the clarifications it made at the conference, which stated in relevant part:

> The Court explained that the issue of the sufficiency of the options counseling "was not certified for class purposes." (Tr. at 3, ECF No. 323.) The class consists of individuals who already received the options counseling as it is provided by the defendants. The Court specified that the plaintiffs' claim that the defendants "failed to meaningfully inform" the plaintiffs "about feasible alternatives to institutional care" brought in the "Free Choice" claim was certainly a live claim, but with regard

6

to individually-named plaintiffs only. (*Id.*); (Compl. ¶¶ 219–220) ("Third Claim for Relief: Violation of the Social Security Act's "Free Choice" Provision under 42 U.S.C. § 1396n(c)(2)(B)&(C)").

(ECF No. 332 at 2–3.)

### III.

In Plaintiffs' Motion for Reconsideration, they seek reconsideration of "four aspects" of the Court's clarification of the class definition in its Second Clarification Order:

> (1) the Court's limitation of the class to those who "already received" options counseling; (2) the Court's limitation of the class to those who have received options counseling "as it is provided by the defendants"; (3) the Court's finding that "the sufficiency of the options counseling" cannot be challenged by the class; and (4) the Court's exclusion of the Plaintiffs' freedom of choice claims from class consideration.

(ECF No 344 at 1.)

Plaintiffs contend that,

> Together, these holdings exclude potentially thousands of individuals from the class, by restricting future membership in the class and by permitting State Defendants to unilaterally limit who receives options counseling. The process by which individuals become class members should be fair, adequate, and in compliance with federal law; it cannot be within the exclusive control of State.

*Id.*

Plaintiffs' arguments are not well taken. The Court, however, agrees with Plaintiffs that "the process by which individuals become class members should be fair, adequate, and in compliance with federal law." This Court, however, has met that burden by "conducting a 'rigorous analysis,' that the requirements of Rule 23 have been met." *In re Whirlpool Corp.*, 722 F.3d at 851 (citing *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). In the instant action, Plaintiffs moved for certification of an injunctive and declaratory relief class under Federal Rule of Civil Procedure 23(b)(2). In 23(b)(2)

7

mandatory classes, the movant must show "that the party opposing the class has affected the class in a way generally applicable to the class as a whole so that final injunctive or declaratory relief with respect to the entire class is appropriate." *Reeb v. Ohio Dept. of Rehab. and Correction*, 435 F.3d 639, 645–46 (6th Cir. 2006) (citing Fed. R. Civ. P. 23(b)(2)). Further, the 23(b)(2) injunctive relief class "requirements are designed to permit only classes with homogenous interests" because it provides for mandatory, non-opt-out classes. *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002). The "defining characteristic" of such a class is "'the homogeneity of the interests of the members of the class.'" *Romberio[ v. UNUMProvident Corp.*, 385 F. App'x 423, 432 (6th Cir. 2009)] (quoting *Reeb*[, 435 F.3d at 649).] As part of this endeavor, the Court "must define the class." Fed. R. Civ. P. 23(c)(1)(B). With this law as its guide, the Court considered over 3000 pages of briefing and exhibits and issued a decision that defined the class.

In addition to defining a class, a court must define "the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(1)(B). In granting in part and denying in part Plaintiffs' request to litigate all of their claims on a class wide basis, the Court anticipated that some of the claims would be litigated on a class-wide basis and some may be litigated on an individual basis. How a certified class is defined will naturally affect which claims can proceed as class claims. That is, a party is only permitted to proceed on class claims that are consistent with the defined class that is ultimately certified.

In their Complaint, Plaintiffs named certain individuals as plaintiffs in their individual capacity and as class representative plaintiffs. Plaintiffs alleged that in their representative capacity, these individuals were representative of a class of people who were harmed by Defendants' violations of certain federal statutes ("class claims"), as set forth above. The ability

8

to litigate the class claims is contingent upon the individuals who were allegedly harmed by Defendants' violations being class members. The certified class, however, does not include all of the individuals Plaintiffs requested to be made class members. The class that this Court certified is narrower than the one Plaintiffs requested. For example, the class certified by the Court excluded Plaintiffs' requested potential class members who "may be interested in" community based services, explaining:

> The policies or practices targeted by a proposed plaintiff class must at a minimum have the potential to uniformly harm the class so that the entire class has an interest in modifying those policies. In the case *sub judice*, individuals who are currently residing in Large ICFs and who have requested community-based services are potentially harmed by the policies targeted by Plaintiffs, *i.e.*, providing fewer community services slots than are necessary to meet this need.
>
> However, some of the class members who after counseling indicate that they "may be" interested in community-based services will not be harmed by this targeted conduct. Some of the class members who indicated that they "may be" interested in community-based services will decide that they prefer to stay in a Large ICF. These class members, therefore, will not be harmed by the Ohio Defendants' failure to fund community-based services. Indeed, the opposite.
>
> The class members who decide that they prefer to stay in a Large ICF may actually be harmed by Plaintiffs' proposed modification of Ohio's funding policies, which would divert funding away from these class members' preferred service option (Large ICFs) to community-based service. Indeed, this concern is not merely hypothetical. The Guardians in this case make this precise contention. Thus, some of the class members will not "complain of a pattern or practice [failure to sufficiently fund community-based services] that is generally applicable to the class as a whole." *Id.* (quoting *Gooch*, 672 F.3d at 428). The class members who do not want community-based services do not complain that there are insufficient community-based services available for them.
>
> The potentially aggrieved class members in the instant action are those individuals with intellectual and developmental disabilities who have indicated that they want community-based services. If Ohio does not have enough "community-based services required by the Plaintiff class," this group is harmed – a harm that may be "redressed by the expansion of community based services." (Pls.' Mot. for Class Cert. at 41, ECF No. 42) (articulating requested relief)

(ECF No. 303 at 18–19.)

The Court similarly excluded from the class the proposed members who were allegedly "at-risk" of institutionalization, explaining:

> The same issues of cohesiveness and homogeneity of interests exist with Plaintiffs' proposed "at-risk" class (individuals who "are at serious risk of institutionalization in an Intermediate Care Facility with eight or more beds and have, by placing themselves on a waiting list for community-based services, expressed an interest in receiving integrated services while continuing to live in the community"). The DD Boards provide evidence that placement on a waiting list and assignment to a priority category is not necessarily reflective of need or desire for community-based services.
>
> . . . .
>
> The Court concludes that the proposed "at risk" class members do not have homogenous interests for the same reasons the proposed class members above did not. That is, the class members who may want community-based services do not have homogenous interests with those class members who do want community-based services. Likewise, some class members who are on the wait list want community-based services and some want services provided in Large ICFs. In a situation where there is limited funding, this not only reflects lack of homogenous interests, it indicates competing interests, which could actually harm certain members of a broad Rule 23(b) class because of the lack of notice and opportunity for class members to opt out. Therefore, because the proposed class does not suffer a uniform harm that can be remedied with the same relief, certifying a broad class is inappropriate. *See Reeb*, 435 F.3d at 645–46 (the plaintiffs must show "that the party opposing the class has affected the class in a way generally applicable to the class as a whole so that final injunctive or declaratory relief with respect to the entire class is appropriate.") (citing Fed. R. Civ. P. 23(b)(2)).

*Id.* at 19–22.

Thus, after a rigorous analysis, this Court certified a homogenous class of individuals with cohesive interests—those who have received options counseling and said yes to waiver services. That group of people has no need for more, or improved, counseling about waiver services. They have already decided they want community based services. Thus, class members have no need to pursue a claim challenging options counseling.

As Defendants correctly point out, Plaintiffs ask for "reconsideration of aspects of the class definition *that they created* by voluntarily incorporating Ohio's approach to options counseling into

10

their second proposed class definition." (ECF No. 357 at 1.) That is, the relationship between options counseling and class membership is a product of Plaintiffs' own litigation choices. Defendants contend that Plaintiffs made these litigation choices because they "faced a significant cohesiveness problem under Rule 23(b)(2)." *Id.* Regardless of why Plaintiffs chose to define the class the way they did, they did not ask for the Court to determine whether a group of individuals who failed to receive sufficient options counseling could be certified as an injunctive and declaratory relief class under Rule 23(b)(2).

Therefore, Plaintiffs are mistaken that they are guaranteed a class-wide "judicial determination on the merits of the sufficiency of the existing options counseling process." (Pls' Mot. for Reconsideration at 9, ECF No. 344.) No such guarantee exists. Nothing about the nature of Plaintiffs' federal claims allows them to jump past Rule 23 standards. Like all litigants, Plaintiffs are not limited to the claims that they can bring before this Court but are certainly limited as to the claims that may be litigated on a class wide basis. The pertinent inquiry in certifying class claims is not only whether such claims exist, but also whether the claims fit the certified class. Plaintiffs' option-counseling challenges do not fit with the certified class because by definition class members do not need more counseling. This element of the class definition (receipt of options counseling) was proposed by Plaintiffs and adopted by this Court. The Court has not engaged in a Rule 23 analysis of individuals who allegedly received insufficient options counseling. Plaintiffs simply did not ask for such a class to be certified.

Thus, Plaintiffs' options counseling claim may proceed on an individual level, but not on a class level. By way of example, during briefing on class certification, Plaintiffs offer the declaration of Pat Callahan. (ECF No. 283-14.) Ms. Callahan lived in an eight-bed ICF and avers that she wanted to live in the community. Ms. Callahan declares that she was never offered options counseling, or any other meaningful opportunity to access community based

services even though she told her ICF staff that she wanted to live in the community and no one helped her. *Id.* Plaintiffs may explore the sufficiency of the options counseling for any individually named plaintiffs who have claims, like those of Ms. Callahan, that they were denied options counseling or any other meaningful opportunity to access community based services.

Plaintiffs also argue that the options counseling, "while not a separate cause of action, is an important aspect of Plaintiffs' class claims under the ADA and Section 504 [of the Rehabilitation Act]." (Mot. for Reconsideration at 7, ECF No. 344.) Thus, it seems Plaintiffs suggest that because at least part of their claims brought under the ADA and/or the Rehabilitation Act will be litigated on a class wide basis, the Court should not "forecloses their ability to ensure options counseling is fair and non-discriminatory to potential class members." *Id.* Plaintiffs rely on case law that holds that "[i]t is commonly understood that, for such classes to be fair and effective, potential class members must be provided with notice sufficient for them to make an informed decision about class membership." *Id.* (citing as examples, *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1075 (S.D. Ohio 2016) (in context of FLSA collective action, requiring that class notice contain "necessary information for potential plaintiffs to make an informed decision about whether to opt-in as a plaintiff") (citation and quotation omitted); *Heaps v. Safelite Sols.*, LLC, No. 2:10 CV 729, 2011 WL 1325207, at *7.))

Defendants, however, correctly highlight that this case law is inapposite because it was developed under Rule 23(b)(3), which is the rule for opt-in classes, not mandatory ones like the one certified in the case at bar. Plaintiffs recognize that they moved and were granted a mandatory, non-opt-out class under Rule 23(b)(2), but maintain that the class "is, in effect, an 'opt-in' class." (Pls' Mot. for Reconsideration at 7, ECF No. 344.) This description misapprehends the nature of mandatory and opt-in classes. Opt-in classes under Rule 23(b)(3)

involve a process by which class members receive notice and then can choose whether to stay in a case. By contrast, Rule 23(b)(2) classes are mandatory, with no opportunity for class members to opt out. *Reeb*, 435 F.3d at 649. Individuals either meet the class definition (and are in) or they do not (and are out). Here, options counseling is a substantive element of the class definition—an element Plaintiffs chose to use to identify the class. It works to limit the class to only people with homogenous interests, *i.e.*, those who have committed to waiver services. Options counseling is not a procedural method of providing notice and a chance to opt in or opt-out.

While the Court is sympathetic to Plaintiffs' frustration at not having certified the broad class they wanted, the Court is simply not permitted to circumvent Rule 23's requirements.

## IV.

Based on the foregoing, the Court **DENIES** Plaintiffs' Motion for Reconsideration of the Court's September 25, 2018 Order (ECF No. 344),

**IT IS SO ORDERED.**

12-7-2018
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE