IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PHYLLIS BALL, *et al.,* | : | Case No.: 2:16-cv-282 |
| Plaintiffs, | : | Chief Judge Sargus, Jr. |
| v. | : | Magistrate Judge Deavers |
| MIKE DEWINE, *et al.,* | : | |
| Defendants. | : | |
| and | : | |
| GUARDIANS OF HENRY LAHRMANN, *et al.*; OHIO ASSOCIATION OF COUNTY BOARDS, | : | |
| | : | |
| Defendant-Intervenors. | : | |

---

**THIRD JOINT MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT AND NOTICE**

---

The Individual Plaintiffs and the Ability Center of Greater Toledo, the State Defendants, and the Ohio Association of County Boards of Developmental Disabilities (hereinafter "the Moving Parties") respectfully move that this Court:

     A.     Preliminarily approve the Settlement Agreement attached as Exhibit A;

     B.     Approve the Notice of Proposed Class Action Settlement, attached as Exhibit B, and the methods of notice described below; and

     C.     Enter the Proposed Class Notice Order, attached as Exhibit C, ordering that notice to class members take place as proposed, setting a date for hearing on final approval of the Proposed Settlement Agreement and a schedule for further briefing, and establishing a timeline and process for comments and objections.

Due to the time-sensitive nature of many of the commitments within the proposed

Settlement Agreement, the Moving Parties also request expedited consideration of this

Preliminary Motion.


Respectfully submitted,

s/Kerstin Sjoberg

Kerstin Sjoberg (0076405)
ksjoberg@disabilityrightsohio.org
Trial Attorney
Kevin J. Truitt (0078092)
ktruitt@disabilityrightsohio.org
Alison McKay (0088153)
amckay@disabilityrightsohio.org
DISABILITY RIGHTS OHIO
200 Civic Center Drive, Suite 300
Columbus, Ohio 43215
Telephone: 614-466-7264
Facsimile: 614-644-1888

*Counsel for Plaintiffs*

Neil R. Ellis
nellis@sidley.com
Kristen A. Knapp
kknapp@sidley.com
SIDLEY AUSTIN LLP
1501 K Street N.W.
Washington, DC 20005
Telephone: 202-736-8075
Facsimile: 202-736-8711


John G. Hutchinson
jhutchinson@sidley.com
Jonathan W. Muenz
jmuenz@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: 212-839-5300
Facsimile: 212-839-5599

*s/ Larry H. James*

Larry H. James (0021773)*
*Trial Attorney
Robert C. Buchbinder (0039623)
Christopher R. Green (0096845)
Crabbe, Brown & James, LLP
500 S Front Street, Suite 1200
Columbus, Ohio 43215
P:      614-229-4567
F:      614-229-4559
E:      ljames@cbjlawyers.com
rbuchbinder@cbjlawyers.com
cgreen@cbjlawyers.com

DAVE YOST
Ohio Attorney General

*s/ Zachery P. Keller*

ZACHERY P. KELLER (0086930)
Assistant Attorney General Constitutional Offices
Section 30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Zachery.Keller@OhioAttorneyGeneral.gov

*s/ Julie E. Brigner*

Julie E. Brigner (0066367)
Assistant Attorney General
Health and Human Services Section
30 E. Broad Street, 26th Floor
Columbus, Ohio 43215
Telephone: (614) 466-1181
Facsimile: (866) 372-7126
julie.brigner@ohioattorneygeneral.gov

*Counsel for State Defendants*

Cathy E. Costanzo
ccostanzo@cpr-ma.org
Kathryn L. Rucker
krucker@cpr-ma.org
Anna M. Krieger
akrieger@cpr-ma.org
CENTER FOR PUBLIC
REPRESENTATION
22 Green Street
Northampton, Massachusetts 01060
Telephone: 413-586-6024
Facsimile: 413-586-5711

Samuel R. Bagenstos
sbagen@gmail.com
625 South State Street
Ann Arbor, Michigan 48109
Telephone: 734-647-7584

*Pro hac vice Counsel for Plaintiffs*

*s/ Franklin J. Hickman*
Franklin J. Hickman (0006105)*
*Trial Attorney
John R. Harrison (0065286) HICKMAN &
LOWDER CO., L.P.A.
1300 East Ninth St., Suite 1020
Cleveland, Ohio 44114
P:      216-861-0360
F:      216-861-3113
E:      fhickman@hickman-lowder.com
        jharrison@hickman-lowder.com

*Counsel for OACBDD*

## I.    INTRODUCTION

The Moving Parties ask the Court to grant preliminary approval of the proposed class Settlement Agreement (hereafter, "the Agreement").  The Agreement satisfies the Federal Rules of Civil Procedure because it is a fair, reasonable, and adequate resolution of the class claims.  The Moving Parties also ask the Court to approve their proposal for notifying current and potential class members of the Agreement's terms and the anticipated fairness hearing.

After three years of litigation, extensive discovery, and months of negotiations, the Moving Parties have reached an agreement that they all view as an acceptable resolution (despite their differing views during this case).  Through the Agreement, class members will receive commitments from Ohio, most specifically Ohio's Department of Developmental Disabilities.  These commitments feature (1) options and pre-admission counseling for people in Intermediate Care Facilities ("ICFs") with eight or more beds and (2) requests for state funding to facilitate home and community-based services, including support to people choosing to transition from ICFs.  In exchange for these commitments, class members will relinquish their claims.

Importantly, the Agreement's terms will benefit class members without harming others. Under the Agreement, options counseling will remain a voluntary program.  The Agreement also contemplates reasonable increases in home and community-based waiver services. Such increases are tied to anticipated and projected demand for those services, using agreed-upon factors.  These waiver commitments do not endanger ICFs, which will remain as another service option.

The Agreement meets the standards for preliminary approval as described by both the Sixth Circuit and this Court.  It also meets the factors within Federal Rule of Civil Procedure 23, which was recently amended in 2018. For instance, no risk of fraud or collusion exists because the Agreement is the result of arms-length negotiations between experienced counsel—counsel who have not been shy about litigating their disputes in this case.  The Agreement comes after ample

opportunity for discovery and multiple mediation sessions with the Court.  It resolves complicated factual and legal issues in a highly specialized area of disability law.  It benefits the members of the Plaintiff class, while allowing all of the Moving Parties to avoid the delay, costs, and risks inherent in further litigation and trial.

For these reasons, and those discussed below, the Court will likely find that the Agreement is a fair, adequate, and reasonable resolution of class members' claims *and* that the proposed content and method of notice are reasonable in light of the class definition.  Thus, the Moving Parties now ask that the Court preliminarily approve the Agreement; approve their proposed class notice; and set a schedule for the next steps, including a fairness hearing.

## II.    FACTS

### A.    History of Proceedings

On March 31, 2016, six named plaintiffs and the Ability Center of Greater Toledo (collectively "Plaintiffs") filed this action against the Governor of Ohio and the Directors of the Ohio Department of Developmental Disabilities (at times referred to as simply "the Department"), the Ohio Department of Medicaid, and Opportunities for Ohioans with Disabilities (collectively "State Defendants") in their official capacities. Plaintiffs alleged that Ohio's provision of services for people with intellectual and developmental disabilities violated Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12132 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq.*, and the Social Security Act, 42 U.S.C. §§ 1396n(c)(2)(B) and (C), seeking declaratory and injunctive relief.

In addition to bringing individual claims, Plaintiffs sought to represent a class of people with intellectual and developmental disabilities pursuant to Federal Rule of Civil Procedure 23(b)(2). State Defendants denied these claims and opposed class certification.  On July 25, 2017, the Court granted intervention by the Ohio Association of County Boards of Developmental Disabilities ("the

County Board Association"), a group of ten Guardians (Guardian-Intervenors), and 99 individual guardians. Intervenors also opposed class certification.

After two years of litigation, and extensive class-based discovery, the Court granted in part and denied in part Plaintiffs' request for class certification, certifying a class consisting of the following people:

> All Medicaid-eligible adults with intellectual and developmental disabilities residing in the state of Ohio who, on or after March 31, 2016, are qualified for home and community-based services, and, after receiving options counseling, express that they are interested in community-based services.

*See* Op. & Or. (Mar. 30, 2018), Doc. 303; *see also* Or. (May 2, 2018), Doc. 309; Or. (Sept. 25, 2018), Doc. 332; Op. & Or. (Dec. 7, 2018), Doc. 371.

Following months of arms-length negotiations, including mediation by this Court, Plaintiffs, State Defendants, and the County Board Association ("the Moving Parties"), entered into this Agreement as a complete and final resolution of all matters, claims, differences, and/or causes of action arising from Plaintiffs' Complaint. Through this Agreement, the Moving Parties intend to provide specific benefits to the Plaintiff class in exchange for voluntary dismissal of this action. In so doing, the Moving Parties seek to avoid the inherent cost and uncertainty associated with further litigation and trial.

**B.    The Moving Parties' Settlement Agreement**

The Moving Parties' Agreement is attached to this motion, but it can be briefly summarized as follows.

**1.    Options Counseling and Pre-Admission Counseling**

As earlier filings in this case have described, over the past few years, the Department of Developmental Disabilities has offered options counseling to people residing in ICFs, which

focused on people in ICFs with nine or more beds.  The first round of this counseling was recently completed.

Under the Agreement, the Department will offer a second round of options counseling to run through June 30, 2021.  This options counseling will be offered to individuals who reside in ICFs with eight or more beds and who are not represented by Advocacy and Protective Services, Inc.  The Department may exclude people who have asked the Department to take them off the options-counseling list or who have intervened in this case to advocate for their ICF preference. Additionally, under the Agreement's terms, County Boards of Developmental Disabilities will provide pre-admission counseling for all individuals with developmental disabilities who apply for admission to ICFs with eight or more beds. This commitment will apply through January 8, 2023.

The Agreement contains several other details about these counseling processes.  It outlines the method the Department (or its designee) will use when offering options counseling. It also memorializes a process by which County Boards will follow up with people who might be interested in community services. Under the Agreement, the Department will continue to maintain and promote its existing program for peer-to-peer or family-to-family meetings or community visits. The Department will also conduct a focus group to offer suggestions and revisions regarding counseling materials.

### 2.      Community-Based Services and Waiver Capacity

The Agreement includes commitments related to state-funded waivers and other services. For the upcoming budget cycle (fiscal years 2020 and 2021), the Department of Developmental Disabilities will request operating funding to allocate 700 new state-funded individual options waivers (350 each year).  Then, for the next budget cycle (fiscal years 2022 and 2023), the Department will assess unmet/future waiver need and request corresponding funding.  As the Agreement reflects, the Moving Parties negotiated factors to be considered for this assessment.

The Agreement also contains provisions relating to other services.  For example, the Department will provide capital housing assistance ($24 million) over the current capital-budget cycle and request capital-housing funding (at least $12 million) during the next capital-budget cycle. The Department will also request $250,000 to fund transformation grants designed to support transitions to integrated day and employment services.  Furthermore, the Agreement includes commitments related to further transition training and services.  As one example, the Department will continue to conduct follow-along visits for people who have recently transitioned to waivers.

### 3.    Other Provisions

The Moving Parties also negotiated the details of the Agreement's implementation. The Agreement contains terms related to information exchange, monitoring, continuing jurisdiction, and resolution of any compliance dispute. The Agreement also resolves attorney fees, with Plaintiffs accepting an agreed-upon amount of fees following the ultimate dismissal of their claims.  As with the Agreement's other provisions, the fee component was heavily negotiated and represents significant compromises from both sides. In accordance with the proposed order, an assented-to Motion for Attorney's Fees would be filed as part of the final approval process, no later than November 15, 2019.

### C.    The Moving Parties' Notice Plan

The Moving Parties propose sending a notice in the form of Exhibit B. The Moving Parties further propose distributing this notice through both direct and public methods.  First and foremost, the Moving Parties suggest that the Department of Developmental Disabilities send direct notice of the proposed Agreement to current class members identified as of the date of approval.  The Department can relatedly provide notice to Advocacy and Protective Services, Inc., the Ohio public guardianship agency.

5

Additionally, the Moving Parties propose using indirect, public notice to inform potential future class members of the Agreement. Under this proposal, public notice would occur in several ways. The Department would mail the notice to the superintendent at each of the 88 County Boards of Developmental Disabilities in Ohio. It would ask that the notice be posted in a conspicuous location at the County Board's headquarters and that it be provided to people upon request. The Department would also provide the notice to administrators of all ICFs with eight or more beds in Ohio. The Department would ask that these administrators post the notice in a conspicuous area of the facility where other public information is posted. Furthermore, both Disability Rights Ohio and the Department would post the notice on their respective websites. Disability Rights Ohio would also circulate the notice to its Constant Contact list, which includes 2,441 people.

The Moving Parties propose that notice take place within one week of the Court's preliminary approval of the Agreement. Class members would have the right to submit to the Court written comments or objections to the Agreement. The Moving Parties propose a time period of approximately a month and a half, beginning on the date of the Court's preliminary approval, which, if it occurs, is expected to be on or around October 18, 2019. The Moving Parties propose that comments or objections be received by the Court no later than December 2, 2019 and be submitted in the manner described in the notice. As the Court receives comments and objections, the Moving Parties propose that the Court file them through its CM/ECF system and ensure the parties' counsel have access to them.

The Moving Parties proposed that an assented-to motion for attorneys' fees be filed no later than November 15, 2019, and their motions and memoranda in support of final approval of the settlement agreement be filed no later than December 9, 2019. Any Reply briefs, if necessary,

would be filed no later than December 13, 2019.  The fairness hearing on the proposed settlement

agreement would be held at 9:30 A.M. on Tuesday, December 17, 2019.

## III.    ARGUMENT

In the Sixth Circuit, district courts follow certain procedures before approving a settlement

proposal.  Namely, "(1) the court must preliminarily approve the proposed settlement, i.e., the court

should determine whether the compromise embodied in the decree is illegal or tainted with

collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a

hearing must be held to determine whether the decree is fair to those affected, adequate and

reasonable." *Tennessee Ass'n of Health Maint. Organizations v. Grier*, 262 F.3d 559, 565- 66 (6th

Cir. 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983)).  At the preliminary

approval stage, courts generally reserve a full fairness determination until the hearing, but review

the proposed terms of settlement and make a preliminary determination on the fairness,

reasonableness, and adequacy of the settlement terms.  *See Vukovich*, 720 F.2d at 921 (describing

the different stages of review).

The Federal Rules of Civil Procedure were recently amended in 2018. Of importance here,

Rule 23 now requires parties to provide the district court "with information sufficient to enable it to

determine whether to give notice of the proposal to the class."  Fed. R. Civ. P. 23(e)(1)(A).

Additionally, the amended Rule provides that "[t]he court must direct notice . . . if giving notice is

justified by the parties' showing that the court will likely be able to: (i) approve the proposal under

Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B).  According to the advisory committee, "[t]he decision

to give notice of a proposed settlement to the class is an important event[,] [and] [i]t should be based

on a solid record supporting the conclusion that the proposed settlement will likely earn final

approval after notice and an opportunity to object."  Fed. R. Civ. 23(e)(1) advisory committee's

notes to 2018 amendment.

Through the present motion and attachments, the Moving Parties provide sufficient information to preliminarily approve their proposed Agreement.  Thus, the Court should direct notice to the class and schedule a fairness hearing.  Specifically, as demonstrated further below, the Agreement is fair, reasonable, and adequate—and the Moving Parties' notice plan is reasonably calculated to reach current and potential class members and inform them of their rights.

**A.     The Moving Parties' Proposed Settlement is Fair, Reasonable, and Adequate.**

Before approving a class action settlement, "a district court must conclude that it is 'fair, reasonable, and adequate.'" *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(e)(2)). Until recently, because the Rules provided no further guidance, federal courts were left to develop criteria for evaluating proposed settlements. Under Sixth Circuit precedent, when considering a proposed class settlement, district courts look to seven factors: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel; (6) the reaction of class members; and (7) the public interest. *See*, *e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 17-2137, 2018 WL 4520931, at *6 (6th Cir. May 24, 2018) (citing *Gen. Motors Corp.*, 497 F.3d at 631).

With the 2018 amendments, Rule 23 now contains a handful of specific factors courts must consider in determining whether a proposed settlement is fair, reasonable, and adequate. Specifically, Rule 23(e)(2) provides:

> [T]he court may approve [the settlement proposal] only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
> the class representatives and class counsel have adequately represented the class;
> the proposal was negotiated at arm's length;
> the relief provided for the class is adequate, taking into account:

> the costs, risks, and delay of trial and appeal;
> the effectiveness of any proposed method of distributing relief to the class, including the method of processing class- member claims;
> the terms of any proposed award of attorney's fees, including timing of payment; and
> Any agreement required to be identified under Rule 23(e)(3); and
> the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

"The goal of this amendment is not to displace any factor." Fed. R. Civ. P. 23(e)(2) advisory committee's notes to 2018 amendment. Rather, in considering whether to approve the parties' proposed settlement, the Court should look to both the factors found in Rule 23 as well as the Sixth Circuit's traditional factors. *See, e.g.*, *Hays v. Eaton Grp. Attorneys*, No. CV 17-88- JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019) ("There is, not surprisingly, overlap between the 2018 amendment's fairness, reasonableness and adequacy considerations and those set out in the Fifth Circuit test. This Court will therefore combine the two in its review and analysis."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720MKBJO, 2019 WL 359981, at *13 (E.D.N.Y. Jan. 28, 2019) ("The Court first considers the Rule 23(e)(2) factors and then considers the [Second Circuit's] additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors."). All factors here, those provided in Rule 23 and the Sixth Circuit's traditional factors, support approval of the Moving Parties' proposal.

### 1. The Class Representatives and Class Counsel have Adequately Represented the Class.

Rule 23 requires courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2). In line with this Court's holding at certification, at all times throughout this dispute and through settlement negotiations, the class representatives have continued to vigorously prosecute the interests of the class and possess the same interests and same injury as the class members. Similarly, as set forth in Plaintiffs'

9

certification motion, Doc. 42, class counsel is qualified, experienced, and capable of conducting the litigation. *See Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000).

        **2.**     **Because the Moving Parties Reached this Settlement After Extensive Arms-Length Negotiations, There is No Risk of Fraud or Collusion.**

Courts further consider whether the settling parties have acted in good faith. *See* Fed. R. Civ. P. 23(e)(2)(B). Some of the indicia of the parties' good faith include: that negotiations occurred after the case was well advanced, *Bronson v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 604 F. Supp. 68, 77 (S.D. Ohio 1984); that negotiations were not rushed once they started, *Thompson v. Midwest Found. Indep. Physicians Ass'n.*, 124 F.R.D. 154, 158-59 ¶30 (S.D. Ohio 1988); that the parties negotiated at arms-length, *e.g.*, *Stotts v. Memphis Fire Dep't*, 679 F.2d 541, 551 (6th Cir. 1982), *rev'd on other grounds*, *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561 (1984); and that the defendants had motivations to adequately consider the interests of non-parties impacted by the settlement, *see id.* at 555 n.12. At base, "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Stanley v. Turner Oil & Gas Properties, Inc.*, Case No. 2:16-cv-386, 2018 WL 2928028, at *5 (S.D. Ohio June 12, 2018) (Deavers, M.J.) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)); *see also Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *15 (N.D. Ohio Sept. 1, 2011) ("'[T]he courts respect the integrity of counsel and presume the absence of fraud and collusion in negotiating the settlement, unless evidence to the contrary is offered.'") (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.51 (4th ed.2002)).

Here, the Moving Parties negotiated in good faith—and no facts suggest otherwise. The Moving Parties have engaged in multiple mediation sessions with this Court over the course of this three-year litigation, and they have exchanged numerous settlement proposals. The Moving Parties reached this Agreement following months of additional arms-length negotiations. Throughout these

negotiations, both sides vigorously sought to advance their interests and the interests of those they represent.  In doing so, State Defendants carefully considered the interests of people outside the class, including those who choose to remain in or enter ICFs.

The Moving Parties' litigation history in this case further shows that the Agreement is a good-faith compromise.  The Moving Parties have undoubtedly been adversaries in this case.  As a prime example, they heavily litigated class certification, filing hundreds of pages of class-certification-related briefing.

### 3. The Costs and Risks of Pursuing a Litigated Outcome Suggest that the Proposed Settlement is a Fair, Reasonable, and Adequate Result.

As the advisory committee specified, Rule 23(e)(2)(C) and (D) "focus on what might be called a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(C) & (D) advisory committee's notes to 2018 amendment.  These new provisions require courts to consider "the cost and risk involved in pursuing a litigated outcome." *Id*. Indeed, these new rules contemplate the Court forecasting "the likely range of possible recoveries and the likelihood of success in obtaining such results." *Id*. The Court may also need to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii).

Courts look to the complexity, expense, and likely duration of the litigation when considering these factors.  Settlement is more likely to be approved if the case has a long history, Bronson, 604 F. Supp. at 77; if the issues involved would require significant discovery and trial time to resolve, In re Cincinnati Policing, 209 F.R.D. 395, 400 (S.D. Ohio 2002); if appeals are likely to further delay ultimate resolution, e.g., In re Dun & Bradstreet Credit Servs. Customer Litig., 130 F.R.D. 366, 371 ¶ 18 (S.D. Ohio 1990); or if the plaintiffs' circumstances make delay particularly prejudicial, In re Telectronics Pacing Sys., 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001).

Each of these considerations weigh in favor of approval. Again, the Moving Parties have litigated this case for three years and have engaged in extensive mediation and negotiations. Litigating this case through trial (with a likely appeal to follow) would bring significant further delay and exorbitant additional expense. Whereas, approval of the Agreement would result in both finality for the parties and immediate benefits for all class members. Importantly, in weighing the pros and cons of settlement, the Moving Parties have already had ample opportunity for discovery. During both class-based and merits-based discovery periods, each side issued and responded to numerous discovery requests and exchanged many documents. State Defendants also deposed each of the five individual plaintiffs during class-based discovery. Accordingly, this settlement is the result of an informed analysis.

Further, under traditional factors, "the most important factor, 'is the probability of success on the merits[,] [and] [t]he likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured.'" *In re Packaged Ice Antitrust Litig.*, 2018 WL 4520931 at *6 (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011)). This factor "weigh[s] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Gen. Motors Corp.*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 (1981)). The question for district courts, here, is "whether the parties are using the settlement to resolve legitimate legal and factual disagreements." *Gen. Motors Corp.*, 497 F.3d at 631.

Applying this likelihood factor here, each of the Moving Parties faces litigation risks if they continue. On one hand, Plaintiffs have been able to survive motions to dismiss and certify a class. On the other, State Defendants and the County Board Association have limited the scope of the class and its claims. As these mixed results reflect, no side has any guaranteed litigation outcome. So, to

avoid litigation risks and costs, the Moving Parties have agreed to exchange (1) the service commitments outlined above for (2) release of claims. This is a fair deal.

Finally, the Sixth Circuit has stated that "court[s] should defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs." *Vukovich*, 720 F.2d at 922 (citations omitted). Plaintiffs' counsel collectively has decades of experience in complex federal civil rights litigation on behalf of people with disabilities, including multiple Olmstead actions. *See* Doc. 42 at 45-46. State Defendants and the County Board Association likewise have experienced legal teams with decades of litigation experience. These experienced counsel all seek the Agreement's approval.

### 4. The Settlement Treats the Class Members Equitably vis-à-vis one Another.

Rule 23 also directs courts to consider whether the class members will be treated equitably vis-à-vis one another. Fed. R. Civ. P. 23(e)(2)(D). In particular, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(C) & (D) advisory committee's notes to 2018 amendment.

Here, the Agreement treats class members fairly and equally. As detailed above, the Agreement contains several service commitments, across a range of areas, which will benefit all class members. The Agreement does not differentiate between certain sub-groups of the class.

### 5. The Settlement is in the Public's Interest.

As the Sixth Circuit has noted, "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) (citations omitted). Further, as this Court has held, the public is well served by class action settlements that contribute to

the continued provision of needed public services, and the public benefit of such settlements is verified when they are approved by other public officials. *Thompson*, 124 F.R.D. at 161.

The settlement proposal serves the public interest. The Agreement resolves complicated factual and legal issues in a highly specialized area of disability law. It will help facilitate access to community services. It will also help ensure that people know their service options and make informed decisions. The Agreement has been approved by State Defendants (who span multiple government offices and agencies) and the County Board Association. Critically, in weighing settlement in this case, these Defendants have considered the interests of people with developmental disabilities both inside and outside the class. As State Defendants have explained on multiple occasions during this case, they have sought to administer Ohio's system in a way that promotes waiver services while still preserving other options. State Defendants are confident that the Agreement is consistent with this goal. In particular, they are confident they can meet their commitments under the Agreement without harming the interests of people who prefer the ICF option.

The Agreement also serves the public interest because it is fiscally responsible. In particular, it allows Ohio, and its taxpayers, to avoid further litigation costs in this matter. As noted above, going forward with litigation—and a likely appeal—would be very expensive. And, in addition to the costs of Ohio's defense, State Defendants must also consider the possibility of additional exposure (given potential fee shifting). The Agreement allows State Defendants to avoid both the costs of further defense and the risk of additional expenses depending on the outcome. This will benefit taxpayers.

***

14

In sum, the Agreement meets the new factors contained in Rule 23 and the Sixth Circuit's traditional factors. It comes after years of litigation, mediation, and negotiation. It is entered into by knowledgeable parties and counsel, who have vigorously prosecuted and defended this case. It is an arms-length compromise, an exchange of service commitments (benefiting the class) for the release of claims. It will prevent the unnecessary delay, expense, and risk of continued litigation. At bottom, the Agreement is a fair, reasonable, and adequate resolution to this case. It should be approved—both preliminarily now, and ultimately later.

**B.** **The Proposed Notice is Reasonably Calculated to Reach Current and Potential Class Members; and it will Provide them the Opportunity to Share their Views with the Court.**

Once the Moving Parties provide information sufficient to show the Court will likely approve the Agreement, the Court must then "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

**1.** **Method of Providing Notice to Class Members.**

In terms of *method*, Rule 23 and due process requirements require notice of a proposed settlement agreement to be provided in a manner that is "reasonably calculated" to reach class members. *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 318-20 (1950)). No particular method of notice is required; instead, courts evaluate the proper method of notice on a case-by-case basis. *See Shanechian v. Macy's Inc.*, No. 1:07-CV-828, 2013 WL 12178108 at *2-4 (S.D. Ohio June 25, 2013) (finding notice methods reasonable where the parties sent the notice to potential class members, maintained a dedicated settlement website, and circulated it through various news media); *see also In re Packaged Ice Antitrust Litig.*, 2018 WL 4520931 at *5 (affirming that notice was reasonable where the parties mailed notices directly to individuals, provided public notice through news organizations and on social media, and maintained a settlement website).

Here, as detailed above, the Moving Parties propose a hybrid of direct notice (to inform those who currently meet the class definition) and public notice (to inform those who might meet the class definition in the future).  In brief review, notice methods include mailing to current class members, posting on public websites, and informing County Boards and ICFs (with corresponding postings).  *See supra* II-C. These methods of notice are reasonably calculated to reach class members who will be affected by the proposed Agreement.

### 2.    Contents of the Notice to Class Members.

In terms of *content*, proper notice "should be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Gen. Motors Corp.*, 497 F.3d at 629 (quoting *Mullane*, 339 U.S. at 314); *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (under due process requirements, the notice must "fairly apprise [class members] of the terms of the proposed settlement" so that they "may come to their own conclusions about whether the settlement serves their interests") (quoting *Gen. Motors Corp.*, 497 F.3d at 630). District courts have "wide discretion" in determining the proper "form and content of the notice." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980)).

Here, the Moving Parties' proposed notice meets the reasonably-calculated standard. The proposed notice explains the basis for the lawsuit, the parties involved, the people affected, the class definition, and the terms of the proposed Agreement.  It states how one can obtain the full copy of the Agreement and more information about the litigation.  It also explains how class members can comment on, or object to, the Agreement before the Court decides whether to grant final approval. It relatedly provides a date, time, and location for the fairness hearing.

The Moving Parties intentionally wrote the proposed notice in a clear, understandable, and accessible manner to accommodate the needs of legal guardians and class members who have intellectual or developmental disabilities. Because of the complex nature of the service system, this lawsuit, and the Agreement, the proposed notice invites interested parties to contact class counsel with any questions and allows accommodations for people who may need to submit comments or objections in alternative formats.

Under these circumstances, the proposed notice's content is appropriate and should be approved.

## IV.    CONCLUSION

The Court should preliminarily approve the proposed Settlement Agreement because it is a fair, reasonable, and adequate resolution of class members' claims. The Moving Parties' proposed notice methods, and the notice itself, also should be approved since they are reasonably calculated to reach and inform class members about the Agreement and how they can be heard.

Respectfully submitted,

s/Kerstin Sjoberg
Kerstin Sjoberg (0076405)
ksjoberg@disabilityrightsohio.org Trial Attorney
Kevin J. Truitt (0078092)
ktruitt@disabilityrightsohio.org Alison McKay (0088153) amckay@disabilityrightsohio.org
DISABILITY RIGHTS OHIO
200 Civic Center Drive, Suite 300
Columbus, Ohio 43215
Telephone: 614-466-7264
Facsimile: 614-644-1888

*Counsel for Plaintiffs*

*s/ Larry H. James*
Larry H. James (0021773)*
*Trial Attorney
Robert C. Buchbinder (0039623)
Christopher R. Green (0096845)
Crabbe, Brown & James, LLP
500 S Front Street, Suite 1200
Columbus, Ohio 43215
P:      614-229-4567
F:      614-229-4559
E:      ljames@cbjlawyers.com
rbuchbinder@cbjlawyers.com
cgreen@cbjlawyers.com

| | |
|---|---|
| Neil R. Ellis | DAVE YOST |
| nellis@sidley.com | Ohio Attorney General |
| Kristen A. Knapp | |
| kknapp@sidley.com | *s/ Zachery P. Keller* |
| SIDLEY AUSTIN LLP | ZACHERY P. KELLER (0086930) |
| 1501 K Street N.W. | Assistant Attorney General |
| Washington, DC 20005 | Constitutional Offices Section |
| Telephone: 202-736-8075 | 30 East Broad Street, 16th Floor |
| Facsimile: 202-736-8711 | Columbus, Ohio 43215 |
| | Tel: 614-466-2872 \| Fax: 614-728-7592 |
| | Zachery.Keller@OhioAttorneyGeneral.gov |
| | |
| John G. Hutchinson | *s/ Julie E. Brigner* |
| jhutchinson@sidley.com | Julie E. Brigner (0066367) |
| Jonathan W. Muenz | Assistant Attorney General |
| jmuenz@sidley.com | Health and Human Services Section |
| SIDLEY AUSTIN LLP | 30 E. Broad Street, 26th Floor |
| 787 Seventh Avenue | Columbus, Ohio 43215 |
| New York, NY 10019 | Telephone: (614) 466-1181 |
| Telephone: 212-839-5300 | Facsimile: (866) 372-7126 |
| Facsimile: 212-839-5599 | Julie.brigner@ohioattorneygeneral.gov |
| | |
| | *Counsel for State Defendants* |
| | |
| Cathy E. Costanzo | *s/ Franklin J. Hickman* |
| ccostanzo@cpr-ma.org | Franklin J. Hickman (0006105)* |
| Kathryn L. Rucker | *Trial Attorney |
| krucker@cpr-ma.org | John R. Harrison (0065286) HICKMAN & |
| Anna M. Krieger | LOWDER CO., L.P.A. |
| akrieger@cpr-ma.org | 1300 East Ninth St., Suite 1020 |
| CENTER FOR PUBLIC REPRESENTATION | Cleveland, Ohio 44114 |
| 22 Green Street | P:     216-861-0360 |
| Northampton, Massachusetts 01060 | F:     216-861-3113 |
| Telephone: 413-586-6024 | E:     fhickman@hickman-lowder.com |
| Facsimile: 413-586-5711 | jharrison@hickman-lowder.com |
| | |
| | *Counsel for OACBDD* |
| Samuel R. Bagenstos | |
| sbagen@gmail.com | |
| 625 South State Street | |
| Ann Arbor, Michigan 48109 | |
| Telephone: 734-647-7584 | |
| | |
| *Pro hac vice Counsel for Plaintiffs* | |

## V.    CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Third Joint Motion for Preliminary

Approval of Proposed Class Action Settlement and Notice was filed electronically on October 18,

2019.  Notice of this filing will be sent by operation of the Court's electronic filing system to all

parties indicated on the electronic filing receipt.

s/Kerstin Sjoberg
Kerstin Sjoberg (0076405)
