IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PHYLLIS BALL, et al.,

      Plaintiffs,

v.

JOHN KASICH, et al.,

      Defendants.

Civil Action 2:16-cv-282
Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth P. Deavers

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Attorney's Fees and Costs Pursuant to Settlement Agreement (ECF No. 413), which is unopposed. For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion.

I.

On March 31, 2016, six individuals and the Ability Center of Greater Toledo ("Plaintiffs") filed this action seeking declarative and injunctive relief against the following in their official capacities: the Governor of Ohio and the Directors of the Ohio Department of Developmental Disabilities, the Ohio Department of Medicaid, and Opportunities for Ohioans with Disabilities ("Defendants").

In their complaint, Plaintiffs alleged that Ohio's provision of services to people with intellectual and developmental disabilities violated Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12132 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794

*et seq.*, and the Social Security Act, 42 U.S.C. §§ 1396n(c)(2)(B) and (C). Defendants denied liability under any of these statutes.

On April 24, 2020, this Court issued an Opinion and Order approving the class action settlement between Plaintiffs and Defendants, concluding:

> For the reasons set forth above, in light of the factual, legal, practical, and procedural considerations raised by this suit, the Court concludes that the Modified Settlement Agreement is a fair, reasonable, and adequate resolution of the class members' claims, is in the public interest, and does not harm the rights of any non-class members.

(ECF No. 473.)

In that decision, the Court set out in detail the procedural background of this litigation, discovery, motion practice, settlement negotiations, and fairness hearing and will not restate that information here. The Court also indicated that it would address Plaintiffs' Motion for Attorney's Fees and Costs Pursuant to Settlement Agreement by separate order, which the Court now considers.

## II.

Rule 23 of the Federal Rules of Civil Procedure authorizes a court to "award reasonable attorney's fees and nontaxable costs that are authorized by the parties' agreement." Fed. R. Civ. P. 23(h). "When evaluating a negotiated fee award in civil rights cases such as this, a court should give weight to the agreement between the parties where there are no collusion concerns and there have been months of arms-length negotiations." *Doe v. Ohio*, 2:91-CV-00464, 2020 WL 728276, at *8 (S.D. Ohio Feb. 12, 2020), *report and recommendation adopted,* 2:91-CV-464, 2020 WL 996561 (S.D. Ohio Mar. 2, 2020) (citing as an example *Smith v. Ohio Dep't of Rehab. & Correc*tion, No. 2:08-CV-15, 2012 WL 1440254, at *18–19 (S.D. Ohio Apr. 26, 2012)

2

(approving settlement agreement reached after three years of litigation and two years of settlement discussions); *cf. Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 277 (6th Cir. 2016) (affirming district court's determination that "two-and-a-half years of litigation, extensive discovery, ongoing settlement negotiations, and formal mediation session all weighed against the possibility of fraud or collusion")).

In reviewing a fee award request in a settlement context, a court's primary concern is the award's reasonableness. *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) (internal quotation omitted); *see also* Fed R. Civ. P. 23(e)(2) (class action settlements should be approved when they meet fair, reasonable, and adequate standard). In cases like this one, "where litigants are vindicating a social grievance," district courts should use the lodestar method rather than the common fund doctrine to determine reasonable attorney's fees. *Geier*, 372 F. 3d at 790. The lodestar is calculated by multiplying a reasonable hourly rate by the proven number of hours counsel reasonably spent on the case. *Id.* at 791 (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)).

## III.

Plaintiffs request $1.2 million in accordance with their settlement agreement with Defendants, indicating that "[t]he requested award is only 21% of the fees and costs to which Plaintiffs would otherwise be entitled" under the lodestar method of calculating attorney fees. Complex civil rights cases like the instant litigation often require multiple attorneys with specialized expertise. *See, e.g., The Ne. Ohio Coal. forthe Homeless v. Husted*, 831 F.3d 686, 704–05 (6th Cir. 2016). The Court agrees with Plaintiffs that the assembled litigation team was necessary to litigate this case effectively, particularly in light of Defendants' vigorous defense of this case, which supports the reasonableness of the negotiated fee. *See City of Riverside*,

3

477 U.S. 561, 580 n.11 (1986). Within their respective firms, lead counsel assigned litigation roles and tasks. Class counsel guarded against inefficiencies, including duplication of effort, by careful management and delegation of tasks among counsel and the various work groups. (Declaration of Kerstin Sjoberg, ECF No. 413-1); (Declaration of Cathy Costanzo, ECF No. 413-2); (Declaration of Neil Ellis, ECF No. 413-3); (Declaration of Samuel Bagenstos, ECF No. 413-4).

A.  **Hourly Rates**

"It is well-established that a district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Doe v. Ohio*, 2020 WL 728276, at *10 (approving attorney fees for same plaintiff's counsel as in the instant action, Disability Rights Ohio) (citing *Am. Broad. Companies, Inc. v. Brunner*, No. 1:04CV750, 2008 WL 11450441, at *10 (S.D. Ohio Sept. 30, 2008) (citations and quotation marks omitted)). To determine the rates at which counsel should be compensated, courts should look to prevailing market rates in the relevant community for lawyers with comparable skill and experience. *Id.* (citing, inter alia, *Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the 'prevailing market rate in the relevant community.'")).

"To avoid litigation over the appropriate 'market rate' for non-profit counsel, some federal courts, including those in the Southern District of Ohio, have identified a set of presumptive rates to be used in fee-shifting cases." *Id.* In the Southern District of Ohio, courts have used the rates identified by the Rubin Committee in 1983, adjusted upward each year by 4% for inflation ("Rubin rates"). *See, e.g., Gibson v. Forest Hills Sch. Dist., Bd. of Educ.*, No. 1:11-CV-329, 2014 WL 3530708, at *6 (S.D. Ohio, July 15, 2014) ("Judges in the Southern

4

District of Ohio have applied the Rubin Committee rate with a 4% annual cost-of-living allowance to measure the reasonableness of fees requested.") (citing *Hunter v. Hamilton Cty. Bd. of Elections*, No. 1:10-CV-820, 2013 WL 5467751, at *17 (S.D. Ohio Sept. 30, 2013)); *Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan*, 995 F. Supp. 2d 835, 844 (S.D. Ohio 2014).

Plaintiffs provided appropriate declarations supporting the reasonableness of the rates utilized in this case, which are the same as those used by federal courts in counsels' respective markets as the presumptive market rates in fee-shifting cases. (Declaration of Shawn Organ, ECF No. 413-5); (Declaration of Kerstin Sjoberg, ECF No. 413-1); (Declaration of Cathy Costanzo, ECF No. 413-2); (Declaration of Neil Ellis, ECF No. 413-3); (Declaration of Samuel Bagenstos, ECF No. 413-4). Plaintiffs utilized the Rubin rates and went outside of the presumptively reasonable amounts only for its out of state counsel, whose rates were less than what he has charged privately-paying clients and is consistent with the market rate for attorneys with his years of experience under the reasonable rates awarded in his place of . *See e.g., Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D. D.C. 2008) (Laffey rates are the "benchmark for reasonable rates" in D.C.).

Based on this evidence, the Court concludes that the rates are reasonable given the amount and nature of the experience of Plaintiffs' counsel, the complexity of this case, and the results reached.

**B.    Number of Compensable Hours**

The lodestar calculation is also based on hours reasonably expended. *Dowling v. Litton Loan Servicing, LP,* No. 05-CV-098, 2008 WL 906042, at *2 (S.D. Ohio Mar. 31, 2009), *aff'd*, 320 F. App'x 442 (6th Cir. 2009) (citation omitted). "Plaintiffs' attorney[s] should not recover

5

for hours that are excessive, redundant, or otherwise unnecessary." *Id.* (internal quotation marks and citation omitted). To determine whether hours expended are reasonable, the Court looks to "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Id.* at *3 (internal quotation marks and citation omitted). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended."

As stated above, the Court agrees with counsel that this case was complex. It involved the intersection of multiple, overlapping legal claims under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act and federal Medicaid law. The scale of systemic relief sought required multiple defendants and state agencies responsible for the administration, funding and provision of services to thousands of individuals with intellectual and developmental disabilities. Briefings on class certification were extensive and preceded by a protracted twelve-month discovery process. Plaintiffs' motions were opposed by State Defendants and two groups of intervenors. Further complicating the litigation was Intervenor Guardians' third-party complaint against one of Plaintiffs' counsel, and cross-claims filed against the State of Ohio.

As this Court previously explained, the terms of the final class action settlement agreement were reached over months of arms-length negotiations. Importantly, Plaintiffs' request is unopposed by Defendants who are represented by Larry James and the firm of Crabbe Brown & James, LLP, who are sophisticated, learned, and experienced in representing Ohio in civil litigation. Only after the substantive provisions of the agreement were negotiated did the parties discuss reimbursing Plaintiffs for attorney's fees and costs. Ultimately, State Defendants agreed to pay Plaintiffs' counsel $1.2 million—only 21% of the attorney's fees and costs to which Plaintiffs would otherwise be entitled. These agreed-upon fees and costs were then

incorporated into the larger, comprehensive settlement agreement, which provides substantial relief for the certified class members, including expanded and enhanced options counseling and increased funding for waivers, community housing, and integrated employment and day services.

Based on the evidence before the Court, it finds that Plaintiffs' counsel's hours were reasonably expended in pursuit of Plaintiffs' claims.

### III.

Based on the foregoing, the Court concludes that Plaintiffs' requested attorneys' fees are reasonable given the complexity of the case, the efforts taken to litigate the case efficiently, counsel's reasonable market-based rates, the arms-length negotiated settlement between sophisticated counsel, the benefit obtained for the class, and awards in similar cases. The negotiated award is far less than Plaintiffs' reasonable lodestar, further supporting the reasonableness of Plaintiffs' request for an award of $1.2 million for fees and costs. Therefore, the Court **GRANTS** Plaintiffs' Motion for Attorney's Fees and Costs Pursuant to Settlement Agreement. (ECF No. 413.)

**IT IS SO ORDERED.**

6-8-2020
**DATE**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE