UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT
EASTERN DIVISION

**PHYLLIS BALL, et al.,**

    **Plaintiffs,**

v.

    Civil Action 2:16-cv-282
    **JUDGE EDMUND A. SARGUS, JR.**
    Magistrate Judge Elizabeth P. Deavers

**JOHN KASICH, et al.,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on three Motions to Dismiss filed by the Ohio County Boards Serving People with Developmental Disabilities (ECF No. 353), the State of Ohio (ECF No. 354), and the Governor of Ohio (ECF No. 355).  Those motions are ripe for review.  (ECF Nos. 363, 372, 383, 384.)  Also, before the Court is the unopposed Motion for Leave to File as *Amicus Curiae* filed by VOR, Inc. (ECF Nos. 373.)  For the reasons that follow, the Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART** (ECF Nos. 353, 354, 355), and the Motion for Leave to File is **GRANTED** (ECF No. 373).

**I.**

This case involves two groups of individuals with developmental disabilities who are not satisfied with Ohio's administration of its developmental-disability system.  One group, Plaintiffs and Disability Rights Ohio, filed this case alleging that Ohio's system violates federal law because it is allegedly too reliant on Intermediate Care Facilities ("ICFs") at the expense of integration into the community for disability services.

The other group, who intervened as representatives of individuals who prefer institutional care in ICFs ("Guardians"), allege that Ohio's system violates the same federal law because it is fails to inform people of the ICF choice, leaving them only the option of community based care through waivers or wait lists for those waivers.  Defendants frame the general issue before this Court as follows:

> Defendants agree that [the] Guardians should have a voice in this case. Guardians hold reasonable and firmly-held beliefs that Intermediate Care Facilities ("ICFs") are the best places for their loved ones. . . .  But that does not mean Guardians have their own federal claims against State Defendants.

(Ohio Mot. to Dismiss at 1, ECF No. 354.)  Defendants have all, therefore, moved for dismissal of the Guardians' claims.

## A.     Initiation of This Lawsuit

On March 31, 2016, Disability Rights Ohio filed this case on behalf of six individually named Plaintiffs ("Individual Plaintiffs") and the Ability Center of Greater Toledo (together "Plaintiffs") seeking declarative and injunctive relief against and the Directors of the Ohio Department of Developmental Disabilities, the Ohio Department of Medicaid, and Opportunities for Ohioans with Disabilities (together "State of Ohio") and the Governor of Ohio (together "Defendants").  Plaintiffs alleged that Ohio's administration, management, and funding of its service system for people with intellectual and developmental disabilities such as themselves put them at serious risk of segregation and institutionalization in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq.* and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.2 as interpreted by the Supreme Court's decision in *Olmstead v. L.C.,* 527 U.S. 581 (1999).  Plaintiffs also moved under Title XIX of the Social Security Act ("Medicaid Act"), 42 U.S.C. 1396, *et seq.*,

2

Defendants filed motions for dismissal of Plaintiffs' claims for failure to state a claim upon which relief can be granted. (ECF Nos. 16, 27, 28.) The Court granted in part and denied in part those motions. (ECF No. 90.)

The Ohio County Boards Serving People with Developmental Disabilities ("County Boards") moved to intervene, which was opposed by Plaintiffs. (ECF Nos. 68, 73.) After full briefing (ECF No. 79), this Court permitted the County Boards to intervene (ECF No. 261), adding them to the existing Defendants.

The Guardians, representing individuals who prefer institutional care in ICFs also moved to intervene. (Mot. Intervene 5, ECF No. 107; Individual Guardian Docs., ECF Nos. 123, 125–29, 138, 139, 141–44, 146–48, 152–53, 155, 160, 161, 166–70, 172–77, 182–86, 192–220, 223–32, 234–41, 243–45, 247–49, 251–60). Defendants supported the Guardians' request to intervene, but only for the purpose of opposing Plaintiffs' request for class certification. (ECF No. 130.) Plaintiffs opposed intervention. (ECF No. 131.) The Court granted intervention to the Guardians in July 2017. (Opinion and Order, ECF No. 261.)

VOR, Inc. moved to intervene to support the Guardians' opposition to class certification, (ECF No. 164), which this Court granted (ECF No. 261) after full briefing (ECF Nos. 222, 246).

The Individual Plaintiffs sought to represent a class of similarly situated individuals with intellectual and developmental disabilities, moving for class certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure. (ECF No. 42, 53, 276.) Defendants opposed class certification (ECF Nos. 273, 279, 291), as did the County Boards (ECF Nos. 275, 293), VOR (ECF No. 294), and the Guardians (ECF No. 296). The Court granted in part Plaintiffs' Motion to Certify Class, certifying a narrower class than requested. (Opinion and Order at 1–2, ECF No. 309; Opinion and Order, ECF No. 303.)

**B.     The Guardians' Crossclaims**

The Guardians filed a Third-Party Complaint with Crossclaims against all Defendants (the State of Ohio, the Governor of Ohio, and the County Boards). (ECF No. 326.) The Guardians allege that Ohio has systematically denied ICF services, by failing, in their view, to assure that individuals who qualify for ICF services are informed of that qualification so that they may be provided that ICF service if they so choose. Guardians aver that the County Boards routinely fail to provide information about ICFs to eligible individuals so that the individuals know they have a choice to reside in an ICF, and instead only provide information related to the individual's qualification for waiver services, *i.e.*, community based options or wait lists for community based options.

The State of Ohio, the Governor of Ohio, and the County Boards, all moved for dismissal of the Guardians' crossclaims. (ECF No. 353, 354, 355.) VOR has moved for leave to file as *amicus curiae* for the purpose of opposing Defendants' requests for dismissal, which the Court grants herein. (ECF Nos. 373.) The Guardians and VOR opposed the motions to dismiss (ECF No. 372, 373-1), and Defendants filed replies (ECF Nos. 383, 384.) At the request of the parties, the Court stayed decision on the motions to dismiss so that all parties could engage in settlement negotiations.

**C.     Settlement Negotiations**

Following extensive settlement negotiations, all parties entered into a settlement as a complete and final resolution of all matters. The Court granted the unopposed request of the Plaintiff Class, Defendants, and the County Boards for Preliminary Approval of the Class Action Settlement Agreement (ECF Nos. 396, 407, 408) on October 18, 2019 (ECF No. 409). The following month, the Guardians withdrew from their agreement to settle.

### D.     Procedural Posture

On December 17, 2019, the Court held a Fairness Hearing on the Proposed Final Settlement Agreement.  At that Hearing, there were no objections by any class members. The Guardians had numerous objectors present and each was permitted to speak, giving his or her reasons for objecting to the Settlement Agreement.

Following the Fairness Hearing, the Court suggested modifications to the Settlement Agreement to alleviate the concerns of those whose interests are aligned with the Guardians and offered all parties the opportunity to respond to the proposed modifications, which they all did. After review of the briefing, the Court approved the Settlement Agreement with the proposed modifications.  (Final Approval Order, ECF No. 473.)

Plaintiffs and Defendants moved for certification of the Final Approval Order under Rule 54(b) of the Federal Rules of Civil Procedure (ECF No. 478), which provides that a district "court may direct entry of a final judgment as to one or more, but fewer that all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).  The Guardians opposed the request.  (ECF No. 481.)  The Court granted the request for Rule 54 certification and entered judgment on the claims brought by Plaintiffs.  (ECF No. 482.)

At the parties' request, the Court vacated the stay on the motions to dismiss of the State of Ohio, the Governor of Ohio, and the County Boards.  The Court also permitted the Guardians to file a surreply.  (ECF No. 476.)  The motions are now ripe for review.

### II.

In evaluating a complaint to determine whether it states a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe it in favor of the plaintiff, accept the factual allegations contained in the pleading as true, and

5

determine whether the factual allegations present any plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a plaintiff's complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555.

### III.

The Guardians filed claims under the same three statutes as did Plaintiffs: (A) the ADA 42 U.S.C. § 12132, *et seq.*, the Rehabilitation Act, 29 U.S.C. § 794.2, and (B) the Medicaid Act, 42 U.S.C. 1396, *et seq.*,

**A.    Americans with Disabilities Act and the Rehabilitation Act**

The Guardians rely upon anti-discrimination provisions within both the ADA and the Rehabilitation Act as interpreted by the Supreme Court's decision in *Olmstead v. L.C.,* 527 U.S. 581 (1999). Defendants argue that the Guardians have failed to state any plausible claim because *Olmstead* recognized a claim for community placement, *not* a claim for ICF services. (Ohio's Mot. to Dismiss at 8, ECF No. 354.) This Court agrees.

Title II of the ADA prohibits public entities, when administering services, from denying services, or discriminating against people, "by reason of [] disability." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act contains an analogous anti-discrimination provision, which applies to programs receiving federal money. 29 U.S.C. § 794(a). The two provisions "cover largely the same ground" and should be analyzed together. *R.K. v. Bd. of Educ.*, 637 F. App'x

922, 924 (6th Cir. 2016); *Qiu v. Univ. of Cincinnati*, No. 1:18-cv-634, 2018 U.S. Dist. LEXIS 160246, at *12-13 (S.D. Ohio Sept. 19, 2018) (recognizing that claims under the two provisions "are generally reviewed under the same standards").

*Olmstead* outlined a claim under the ADA's anti-discrimination provision. 527 U.S. at 587. The Court held that the ADA "require[s]" States to place people "in community settings rather than in institutions." *Id.* The requirement, however, exists only when (1) "the State's treatment professionals have determined that community placement is appropriate," (2) "the transfer from institutional care to a less restrictive setting is not opposed by the affected individual," and (3) "the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others." *Id.* In reaching this holding, the Court reasoned that "[u]njustified isolation" could be "properly regarded as discrimination" under federal law. *Id.* at 597.

*Olmstead* identified two public policy justifications underlying its decision:

> First, institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life . . . . Second, confinement in an institution severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment.

*Id.* at 600–601 (citations omitted).

Other federal courts have rejected similar arguments to those presented by the Guardians, in cases where an individual challenges a state decision to close a treatment facility for the developmentally disabled or relocate such disabled individuals to community settings. These courts find that failure to provide facility-based services does not constitute discrimination under the ADA or Rehabilitation Act. *See D.T. v. Armstrong*, 2017 U.S. Dist. LEXIS 91725, *20-21, 2017 WL 2590137 (D. Idaho 2017) *Sciarrillo v. Christie*, 2013 U.S. Dist. LEXIS 175178, 2013

WL 6586569, * 4 (D. N.J. Dec. 13, 2013) (citing *Richard S. v. Dep't of Developmental Servs. of the State of Cal.*, 2000 U.S. Dist. LEXIS 22750, 2000 WL 35944246, *3 (C.D. Cal. Mar. 27, 2000); *Richard C. ex rel. Kathy B. v. Houstoun*, 196 F.R.D. 288, 292 (W.D. Pa. 1999); *Ill. League of Advocates for the Developmentally, Disabled v. Quinn*, 2013 U.S. Dist. LEXIS 86637, 2013 WL 3168758, *5 (N.D. Ill. June 20, 2013). As one district court explained:

> [T]here is no basis for saying a premature discharge into the community is an ADA *discrimination* based on disability. There is no ADA provision that *providing* community placement is a discrimination. It may be a bad medical decision, or poor policy, but it is not discrimination based on disability.

*Richard S.*, 2000 U.S. Dist. LEXIS 22750, 2000 WL 35944246, *3.

The analyses in which these courts engaged is just as relevant to the Guardians' claims here. Failure to provide institutional settings for individuals cannot constitute discrimination based on disability. It may be a bad medical decision, or poor policy, but it is not discrimination based on disability. Accordingly, Defendants are entitled to dismissal of the Guardians' discrimination claims brought under the ADA and the Rehabilitation Act.

**B.    Medicaid Act**

"Medicaid, enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, is a cooperative federal-state program that was established to enable the states to provide medical services to those who cannot afford such services." C*hambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 797–98 (6th Cir. 1998). "For states that participate in the program, such as Ohio, the federal government provides partial funding and establishes mandatory and optional categories of eligibility and services covered." *Id.* While participation in the program is optional, once a state decides to pursue a Medicaid plan, federal law requires that the plan "shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them." 42 U.S.C.A. § 1396a(a)(1).

The Guardians allege that Defendants are violating the Medicaid Act by failing to meaningfully inform people about ICFs, and this failure to inform leads, in turn, to a failure to provide ICF services with reasonable promptness. Their claims are brought under the "free choice" provision of the Medicaid Act, located at 42 U.S.C. § 1396n(c)(2)(B) and (C), and the "reasonable promptness" provision found at 42 U.S.C. § 1396(a)(8). Guardians, as did Plaintiffs, move under 42 U.S.C. § 1983 to enforce their alleged rights under the Medicaid Act.

Defendants move for dismissal arguing that (1) these provisions do not confer a private right of action, (2) "[e]ven assuming this language confers *a* privately-enforceable right, it does not confer *the* right Guardians seek to enforce," and (3) the Guardians' crossclaims fail because, "even at this pleading stage, Guardians cannot seriously dispute that Ohio informs people about ICFs in several ways." (Ohio's Mot. to Dismiss at 15, ECF No. 354; Ohio Reply at 14, ECF No. 383.)

### 1. Private Right of Action

Defendants move for dismissal of both the Guardians' claims under the Medicaid Act, arguing that neither (a) the free choice provision nor (b) the reasonable promptness provision provide for a private right of action.

#### a. Free Choice Provision

Whether the free choice provision of the Medicaid Act confers a private right of action was an issue first brought before this Court in a motion filed by Defendants, in which they moved for dismissal of Plaintiffs' claims under this provision. While Plaintiffs and Defendants agreed that the Sixth Circuit had previously held that there was such a right, it had not revisited this conclusion since *Blessing v. Freestone*, 520 U.S. 329 (1997) and *Gonzaga Univ. v. Doe*, 536

9

U.S. 273, 284 (2002). Defendants maintained that, under the analysis dictated by the later cases of *Blessing* and *Gonzaga*, the free choice provision did not provide a privately enforceable right.

After analysis, the Court disagreed with Defendants' position. The Court concluded that *Blessing* and *Gonzaga* did not require departure from the previous law of the Sixth Circuit that held that the free choice provision of the Medicaid Act provides a private right of action. *Ball by Burba v. Kasich*, 244 F. Supp. 3d 662, 667 (S.D. Ohio 2017) (denying that portion of Defendants' motion to dismiss). Defendants, in their current motions requesting dismissal of the Guardians' claim under this same provision, recognize this Court's previous determination but note that, while this Court disagreed with their position, it recognized "that federal courts have split on the issue." (Mot at 15, n. 2, ECF No. 354.) This argument, however, has since been made unavailable.

That is, after the briefing on the motions to dismiss the Guardians' counterclaims was complete, the Sixth Circuit revisited this exact issue. In October 2020, the Sixth Circuit concluded that *Blessing* and *Gonzaga* did not require departure from the previous law of the Sixth Circuit, which found that the free choice provision of the Medicaid Act provides a private right of action enforceable under 42 U.S.C. § 1983. The Sixth Circuit explained:

> We have previously found that both §§ 1396n(c)(2)(A) and (C) [the free choice provisions] are enforceable under § 1983. *Wood v. Tompkins*, 33 F.3d 600, 611 (6th Cir. 1994). However, since then, the Supreme Court has issued its decisions in *Blessing* and *Gonzaga* expanding upon when a statute creates rights enforceable under § 1983, and so that decision no longer binds us.
>
> Nevertheless, upon reconsideration, we adhere to our conclusion that §§ 1396n(c)(2)(A) and (C) [the free choice provisions] are enforceable under § 1983. The analysis that this Court applied in *Wood* nearly parallels the analysis required under *Blessing* and *Gonzaga*. *See id.* at 607–11. And the great majority of courts to consider the question of whether these provisions allow for a private right of action post-*Gonzaga* has found that they do.

*Waskul v. Washtenaw County Community Mental Health*, 979 F.3d 426, 453 (6th Cir. 2020).

10

The Sixth Circuit cited numerous cases as support for the observation that the great majority of courts are in agreement with its holding that the free choice provision of the Medicaid Act provides for a private right of action, *including this Court's previous decision on the issue*. *Id*. (citing as *Ball v. Rodgers*, 492 F.3d 1094, 1117 (9th Cir. 2007) (§ 1396n(c)(2)(C)); *Jackson v. Dep't of Human Servs. Div. of Developmental Disabilities*, No. 17-118, 2019 WL 669804, at *2–3 (D. N.J. Feb. 19, 2019) (§ 1396n(c)(2)(A)); **Ball v. Kasich, 244 F. Supp. 3d 662, 684 (S.D. Ohio 2017)** (§ 1396n(c)(2)(C)); *Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 1014–15 (D. Minn. 2016) (§ 1396n(c)(2)(C)); *Cohen v. Chester Cnty. Dep't of Mental Health/Intellectual Disabilities Servs*., No. 15-2585, 2016 WL 3031719, at *8 (E.D. Pa. May 25, 2016) (§ 1396n(c)(2)(A)); *Steward v. Abbott*, 189 F. Supp. 3d 620, 635–37 (W.D. Tex. 2016) (§ 1396n(c)(2) generally*); Ill. League of Advocates for the Developmentally Disabled v. Quinn*, No. 13-1300, 2013 WL 5548929, at *9–10 (N.D. Ill. Oct. 8, 2013) (§ 1396n(c)(2)(C)); *Zatuchni v. Richman*, No. 07-4600, 2008 WL 3408554, at *8–11 (E.D. Pa. Aug. 12, 2008) (§ 1396n(c)(2)(C)); *Michelle P. ex el. Deisenroth v. Holsinger*, 356 F. Supp. 2d 763, 769 (E.D. Ky. 2005) (§ 1396n(c)(2)(C)); *Masterman v. Goodno*, No. 03-2939, 2004 WL 51271, at *9–10 (D. Minn. Jan. 8, 2004) (§§ 1396n(c)(2)(A) and (C)). *But see M.A.C. v. Betit*, 284 F. Supp. 2d 1298, 1307 (D. Utah 2003) (§ 1396n(c)(2)(C)); *Gaines v. Hadi*, No. 06-60129, 2006 WL 6035742, at *23–24 (S.D. Fla. Jan. 30, 2006) (§ 1396n(c)(2)(A)).

    b.  **Reasonable Promptness Provision**

The reasonable promptness provision of the Medicaid Act provides in relevant part that "[a] State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C.

11

1396a(a)(8). Defendants argue that the "Guardians fail to state any independent 'reasonable promptness' claim [because] [m]uch like the free-choice provision, the reasonable-promptness provision does not confer a personal right to receive information about ICFs." (Mot. at 20, ECF No. 354.)

In *Waskul,* the case just discussed, the Sixth Circuit not only held that a private right of action is available under the free choice provision, but also held that there is a private right of action under the reasonable promptness provision. *Waskul*, 979 F.3d at 448 (stating "we conclude that Plaintiffs have a private right of action under both §§ 1396a(a)(8) [(reasonable promptness provision)] and (a)(10)").

### 2. Rights Enforceable Under Free Choice and Reasonable Promptness Provisions

Defendants argue that, even if there is a private right of action under the free choice and/or reasonable promptness provisions, the Medicaid Act does not confer the rights the Guardians seek to enforce.

#### a. Rights Enforceable Under the Reasonable Promptness Provision

The Medicaid Act requires that developmentally disabled individuals be provided with "medical assistance" which, in turn, is expressly defined to include, if necessary, "services in an intermediate care facility for the mentally retarded." 42 U.S.C. §§ 1396a(a)(10), 1396d(a)(15). Further, as cited above, those services must be provided "with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). Defendants contend that the Guardians "pleadings fall outside any private right the provisions language confers, citing the Guardians' recognition that thousands of people are in ICFs, including most of the people the Guardians represent. (Ohio Reply at 15, ECF No. 383.) This argument is not well taken.

As the Sixth Circuit just highlighted in *Waskul*, allegations that "Defendants failed to ensure that the Individual Plaintiffs were able to obtain medically necessary services with reasonable promptness, in violation of §§ 1396a(a)(8)" sufficiently stated a claim upon which relief can be granted. *Waskul*, 979 F.3d at 449.  In their crossclaims, the Guardians similarly allege that Defendants failed to ensure that the individuals under the care of the Guardians were able to obtain medically necessary services with reasonable promptness, in violation of §§ 1396a(a)(8), because they were never provided information about the availability of the medically necessary services (ICFs). Consequently, the Guardians have alleged rights that are enforceable under the reasonable promptness provision.

### b. Rights Enforceable Under the Free Choice Provision

The free choice provision of the Medicaid Act provides in relevant part:

> (2) A waiver shall not be granted under this subsection unless the State provides assurances satisfactory to the Secretary that--. . . .
>> . . . .
>
>> (B) the State will provide, with respect to individuals who—
>>
>>> (i) are entitled to medical assistance for inpatient hospital services, nursing facility services, or services in an intermediate care facility for the mentally retarded under the State plan,
>>>
>>> (ii) may require such services, and
>>>
>>> (iii) may be eligible for such home or community-based care under such waiver,
>>>
>>> for an evaluation of the need for inpatient hospital services, nursing facility services, or services in an intermediate care facility for the mentally retarded;
>>
>> (C) such individuals who are determined to be likely to require the level of care provided in a hospital, nursing facility, or intermediate care facility for the mentally retarded are informed of the feasible alternatives, if available under the waiver, at the choice of such

13

> individuals, to the provision of inpatient hospital services, nursing facility services, or services in an intermediate care facility for the mentally retarded;

42 U.S.C. § 1396n(c)(2)(B) and (C).

Defendants contend that under this free choice provision, "[t]he State must assure the Secretary that people needing an ICF-level of care will be 'informed of the feasible alternatives.'" 42 U.S.C. § 1396n(c)(2)." They conclude that, "[n]othing in the free-choice provision's language reflects—much less unambiguously states—that a State has an obverse duty to provide information about ICFs." (Ohio's Mot. to Dismiss at 15–16, ECF No. 354.) This Court, however, disagrees.

Under Defendants' interpretation, people who qualify for ICF-level care must be informed of community-based services but need not be informed of ICF services. This is an untenable interpretation of the statute.

The plain language of the free choice provision requires the state to ensure that individuals who are eligible for an institutional level of care "are *informed of the feasible alternatives*, if available under the [state's home and community-based services] waiver, at the choice of such individuals, to the provision of inpatient hospital services, nursing facility services, or services in an intermediate care facility." 42 U.S.C. § 1396n(c)(2)(C). It is impossible to provide information of the feasible *alternatives to* the provision of inpatient hospital services, nursing facility services, or services in an intermediate care facility if the individual has no knowledge of the option of inpatient hospital services, nursing facility services, or services in an intermediate care facility.

The Court's reading of the plain language of the Medicaid Act is confirmed by the implementing regulations, which in relevant part provide:

14

>  (d) Alternatives—Assurance that when a beneficiary is determined to be likely to require the level of care provided in a hospital, NF, or ICF/IID, *the beneficiary or his or her legal representative will be*—
>
>> (1) Informed of any feasible alternatives available under the waiver; and
>>
>> (2) *Given the choice of either institutional or home and community-based services*.

42 C.F.R. § 441.302(d) (emphasis added). *See also Holsinger,* 356 F.Supp.2d at 769 (cited with approval by the Sixth Circuit in *Waskul*, where the district court explained that the free choice provision requires a state to provide "assurances that it has informed eligible individuals of their options, and provided them with ICF/MR services (if the individuals so choose)"). Thus, the Guardians have alleged rights that are enforceable under the free choice provision.

### 3. Pleading Sufficiency

Defendants' last argument for dismissal of the Guardians' claims under the Medicaid Act is that they are already providing all of the services requested by the Guardians. Defendants assert that, "[r]ather than micromanaging, the provision leaves to the States' discretion, subject to the Secretary's approval, how best to comply" with the requirements under the free choice provision. (Ohio Mot. to Dismiss at 16, ECF No. 354.) Defendants are adamant in their briefing that they "absolutely seek to inform people about their service options." (Ohio Reply at 14–15, ECF No. 383.) They conclude, however, "[t]he pleadings and judicially-noticeable materials show that State Defendants provide people with information about available services, including ICFs." (Ohio Mot. to Dismiss at 16, ECF No. 354.)

The Guardians, however, do not allege that they are entitled to micromanage Ohio's methods on how to inform qualified individuals of their choices. Instead, they contend that in large measure Ohio completely fails to inform about ICFs, instead hiding that option from

15

individuals. The Guardians argue that "Defendants have systematically thwarted and denied the ICF entitlement to eligible residents. . . . [and] [a]s a result today, thousands of eligible Ohioans sit on 'wait lists' for 'waiver' services not knowing they have an immediate entitlement to an ICF bed." (Guardians' Mem. in Opp. at 1, ECF No. 372.) The Guardians continue, maintaining that "tens of thousands of eligible Ohioans do not know of their ICF entitlement. Likewise hundreds, if not thousands, of ICF beds have been eliminated in Ohio *not* because they are unneeded or unwanted, but instead because they are effectively hidden from the disabled beneficiaries who are entitled to them." (*Id*. at 2, ECF No. 372.)

The Guardians have filed detailed crossclaims supporting these contentions that Ohio and the County Boards fail to inform qualified individuals about ICFs. For example, the Guardians allege that "the vast majority of DD Medicaid eligible residents receive information about DD services only from, or principally from, their [County] Boards, but their [County] Boards do not provide them information about ICF services." (Crossclaims ¶ 221, ECF No. 326.) They aver that "[f]ew, if any, of the 88 [County] Boards provide information about ICF services on their websites (other than on how to leave an ICF or be diverted from an ICF)." (*Id*. ¶ 216.) The Guardians further allege that, Defendants "publish[] a detailed guide called 'Life Map,' which is a guide for DD services from birth through retirement." http://www.oacbdd.org/clientuploads/publications/OACBLifeMap-ThirdEdition.pdf (visited Sept. 7, 2018)." (*Id*. ¶ 217.) They continue, that although "the Life Map references nursing homes, it makes no reference to ICFs." (*Id*. ¶ 218.) The Guardians also allege that, "[w]hen [County] Boards annually send wait-listed individuals letters regarding their status on the waiver wait list, they do not mention that the recipient has the right – the entitlement – to an immediate ICF placement, let alone provide information on the ICF entitlement." (*Id*. ¶ 220.)

In their crossclaims the Guardians offer information about twenty individuals with disabilities who qualify for ICF services and who were allegedly not provided information about, and therefore not given the option to utilize, the ICF option. (*Id.* ¶¶ 26–108.) The Guardians also included in their claims the stories of Noah Goldberg, Zoe Edler, and Maya Edler, whom the Guardians moved to join as parties. (ECF No. 325). Noah, Zoe, and Maya currently do not receive ICF services, may someday want or need ICF services, but allege that they were never informed of their ICF entitlement by their respective County Boards. Specifically, with regard to Noah Goldberg, the pleading provides:

> Despite interacting with the DD Board for almost two decades, [his mother] has never been told about – let alone offered – the ICF option. Whether she would select it or not, she would like to know of all her (and Noah's) options.

(Crossclaims ¶ 111, ECF No. 326.) As to Zoe and Maya Edler, their parents report that despite numerous meetings with their local County Board, the following is there experience:

> At no time was an ICF mentioned in the discussion– either as an option or alternative. Additionally, it was never explained that a waiver meant 'waiving our rights' to an alternative option. Both children have been placed on the DD Board waiting list for approximately four years running" without ever being informed of their ICF option.

(*Id.* at ¶ 112.)

These allegations contain sufficient factual content that allows the Court to draw the reasonable inference for pleading purposes that the Guardians' Medicaid Act has facial plausibility.

The Court notes that it is sensitive to Defendants' concerns articulated here:

> Ohio's developmental-disability system finds itself between two policy extremes in this case. On one end, Plaintiffs and Disability Rights Ohio say Ohio's system is discriminating under federal law because it is allegedly too reliant on Intermediate Care Facilities ("ICFs"). On the other end, Guardians now say Ohio's system is discriminating under *the same* federal law because it is allegedly too reliant on waivers. Both extremes are wrong.

17

> When serving Ohioans with developmental disabilities, and allocating finite resources, Ohio can permissibly consider people's competing interests and preferences. It can work to promote and expand waivers, but still preserve ICFs as another option. Considering and balancing everyone's interests in this complex field is reasonable, not discriminatory. Nothing in federal law says otherwise.

(Ohio Mot. to Dismiss at 1, ECF No. 354.)

This Court too does not say otherwise. This Court is not suggesting how the state of Ohio should allocate its finite resources. Here, the Court simply finds that the Medicaid Act requires Ohio to provide information about all of the services available, allow choice between waiver services and ICFs, and provide ICF services if that is the choice made by the individual or his or her guardian. There is no dispute in the record before this Court that there are ICF beds available. Thus, there is no indication that enforcement of the provision of the Medicaid Act at issue here will prevent Ohio from balancing all of the different interests in this complex field.

Moreover, the Court does not agree that the law allows for the Guardians to direct how Ohio transmits the information about the ICF choice. If it is shown that Defendants are providing the ICF information and that the ICF beds are therefore empty by the choice of those individuals who qualify for services, then the claims have no merit. If, however, the Guardians show that Defendants are not providing information about the ICF choice, Defendants will be ordered to comply with the law.

**IV.**

Based on the foregoing, the Court **GRANTS** the unopposed Motion for Leave to File as *Amicus Curiae* filed by VOR, Inc. (ECF Nos. 373) and **GRANTS IN PART AND DENIES IN PART** the Motions to Dismiss filed by the Ohio County Boards Serving People with Developmental Disabilities (ECF No. 353), the State of Ohio (ECF No. 354), and the Governor of Ohio (ECF No. 355). Specifically, the Court **GRANTS** all Defendants' requests for dismissal

of the Guardians claims under the ADA and the Rehabilitation Act and **DENIES** their request for dismissal of the Guardians' claims under the Medicaid Act.

    **IT IS SO ORDERED.**

<u>2/17/2021</u>                                        <u>s/Edmund A. Sargus, Jr.</u>
**DATE**                                           **EDMUND A. SARGUS, JR.**
                                                **UNITED STATES DISTRICT JUDGE**