UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT
EASTERN DIVISION

**PHYLLIS BALL**, *et al.*,

      **Plaintiffs,**

v.

      Civil Action 2:16-cv-282
      **JUDGE EDMUND A. SARGUS, JR.**
      **Chief Magistrate Judge Elizabeth P. Deavers**

**JOHN KASICH**, *et al.*,

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on the Joint Motion for Summary Judgment of the State Defendants and the County Boards (ECF No. 547) and the County Boards' Supplemental Motion for Summary Judgment (ECF No. 548), both which are fully briefed (ECF Nos. 554, 557, 558); a Motion to File as Amicus Curiae which is unopposed (ECF No. 561); and, the Guardians' Motion to File a Sur-Reply (ECF No. 564), which is fully briefed (ECF Nos. 565, 566). For the reasons that follow, all four motions are **GRANTED**. (ECF Nos. 547, 548, 561, 564.)

**I.**

This case originally involved two groups of individuals with developmental disabilities who were not satisfied with Ohio's administration of its developmental-disability system. One group, headed by Disability Rights Ohio, filed this case alleging that Ohio's system violated federal law because it was allegedly too reliant on Intermediate Care Facilities ("ICFs") at the expense of integration into the community for disability services.

The other group, which intervened as representatives of individuals who prefer care in ICFs ("Guardians"), alleged that Ohio's system violates the same federal laws because it fails to inform people of the ICF choice, leaving them only the option of community-based care through

waivers or wait lists for those waivers. The Guardians, as did Plaintiffs, bring claims under 42 U.S.C. § 1983.

**A.      Initiation of this Lawsuit**

On March 31, 2016, Disability Rights Ohio filed this case on behalf of six individually named Plaintiffs and the Ability Center of Greater Toledo seeking declaratory and injunctive relief against the Directors of the Ohio Department of Developmental Disabilities, the Ohio Department of Medicaid, and Opportunities for Ohioans with Disabilities (together "State of Ohio") and the Governor of Ohio. Plaintiffs alleged that Ohio's administration, management, and funding of its service system for people with intellectual and developmental disabilities such as themselves put them at serious risk of segregation and institutionalization in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq*. and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.2 as interpreted by the Supreme Court's decision in *Olmstead v. L.C.,* 527 U.S. 581 (1999). Plaintiffs also moved under Title XIX of the Social Security Act ("Medicaid Act"), 42 U.S.C. 1396, *et seq*.

The Ohio County Boards Serving People with Developmental Disabilities ("County Boards") moved to intervene, which was opposed by Plaintiffs. (ECF Nos. 68, 73.) After full briefing (ECF No. 79), this Court permitted the County Boards to intervene (ECF No. 261), adding them as Defendants.

The Guardians, representing individuals who preferred institutional care in ICFs also moved to intervene. (ECF No. 107.) Defendants supported the Guardians' request to intervene, but only for the purpose of opposing Plaintiffs' request for class certification. (ECF No. 131.) Plaintiffs opposed intervention. (ECF No. 130.) The Court granted intervention to the Guardians in July 2017. (Opinion and Order, ECF No. 261.)

B.     **The Guardians' Crossclaims**

The Guardians filed a Third-Party Complaint with Crossclaims against the State of Ohio, the Governor of Ohio, and the Intervenor County Boards. (ECF No. 326.) The Guardians allege that Ohio has systematically denied ICF services, by failing, in their view, to assure that individuals who qualify for ICF services are informed of that qualification so that they may be provided the ICF service if they so choose. Guardians aver that the County Boards routinely failed to provide information about ICFs to eligible individuals so that the individuals knew they had a choice to reside in an ICF, and instead only provided information related to the individual's qualification for waiver services, *i.e.*, community-based options or wait lists for community-based options.

The State of Ohio, the Governor of Ohio, and the County Boards, all moved for dismissal of the Guardians' crossclaims. (ECF No. 353, 354, 355.) After full briefing, and at the request of the parties, the Court stayed decision on the motions to dismiss so that all parties could engage in settlement negotiations. Following extensive settlement negotiations, all parties entered into a settlement as a complete and final resolution of all matters that ultimately only encompassed Plaintiffs and Defendants. The Court granted the unopposed request of the Plaintiff Class, Defendants, and the County Boards for Preliminary Approval of the Class Action Settlement Agreement (ECF Nos. 396, 407, 408) on October 18, 2019 (ECF No. 409).

At the parties' request, the Court vacated the stay on the motions to dismiss of the State of Ohio, the Governor of Ohio, and the County Boards. The Court issued its decision, which dismissed the Guardians' claims brought pursuant to the ADA and the Rehabilitation Act and permitted the claim filed under the Medicaid Act to proceed. (ECF No. 486.) The Guardians asked the Court to reconsider its dismissal of the ADA and Rehabilitation Act claims (ECF No.

493), which this Court denied (ECF No. 567). Therefore, remaining for adjudication are the Guardians' Crossclaims under the "free choice" and "reasonable promptness" provisions of the Medicaid Act, located at 42 U.S.C. § 1396n(c)(2)(B) and (C); 42 U.S.C. § 1396(a)(8). There are ten Guardians who represent thirteen individuals with disabilities.

**C.** **Currently Before the Court**

The Guardians have requested permission to file a sur-reply, which is fully briefed. The Guardians provide declarations of "'regular' Ohioans of all stripes simply trying to navigate the system and learn of their options." (Sur-Reply at 6, ECF No. 564.)

While the Guardians' request addresses arguments that could have been made earlier, the Court finds good cause to permit filing. This case has a long history and the Court finds it beneficial to review the briefing even though it was not filed pursuant to the proper procedure. It is well established that district courts enjoy an inherent power to manage and control their own dockets. *See, e.g., Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936) (affirming "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). Therefore, the Court **GRANTS** the Guardians' Motion to File a Sur-reply. (ECF No. 564.)

**II.**

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

4

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III.

Defendants and the County Boards move for summary judgment on three grounds: standing, mootness, and statute of limitations. This Court finds that the claims of the Guardians have been rendered moot, and therefore declines to address the remaining arguments.

As to the doctrine of mootness, the Court starts with Article III, § 2 of the United States Constitution, which provides jurisdiction to a federal court only over a live case or controversy. *See Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990). The "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Id.*

5

> The Guardians maintain that their claims are not moot:
>
>> As the Court has *already* held, Guardians' claims are ripe, not moot. As the Court held 18 months ago when framing the relevant issue: "if Defendants are not providing information about the ICF choice, Defendants will be ordered to comply with the law." Opinion at 18. The necessary analysis ends there. The claims are not moot.
>>
>> Moreover, as relates to mootness, the Supreme Court has held that even "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envir. Servs., Inc*., 528 U.S. 167, 189 (2000), quoting *City of Mesquite*, 455 U.S. 283, 289 (1982). As the Court noted as a practical matter: otherwise, "if it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" *Id*. The Court then concluded:
>>
>>> In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.
>>
>> *Id*. (internal citations omitted); *See also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (questioning application of "ripeness" doctrine); *Kiser v. Reitz*, 765 F.3d 601, 606–07 (6th Cir. 2014) (citing cases holding that "a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging").
>>
>> Again, applied here, there is nothing moot about Guardians' claims. As the Court framed it, the relevant issue – which is not moot – remains whether Defendants are "providing information about the ICF choice."

(Mem. in Opp. at 13, n. 5, ECF No. 554) (emphasis in original).

The Guardians continue, asserting that "if somehow Guardians' claims were deemed moot, then this exception to the mootness doctrine would clearly apply since Guardians' "claims are not just 'capable of repetition yet evading review,' they are occurring daily." *Id*. at 14, n. 5 (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

Finally, the Guardians posit:

6

> From inception, with the Court's encouragement, Guardians have effectively been representing a *de facto* class of Ohioans comprised of: (1) the thousands of Ohioans who have not been told of their ICF entitlement with the choice effectively hidden or denied to them; and (2) the thousands of existing ICF residents affected by Defendants' attempts to limit or close their ICFs.
>
> In granting Guardians' intervention, the Court noted that Guardians are also acting on behalf of the 99 individuals who filed joinders to their intervention motion, as well as the thousands of other Ohioans affected by Defendants' failures. See Opinion and Order (granting intervention) at 21-22 dated July 25, 2017 (Dkt. 261). In granting intervention, the Court stated that "the individuals who the Guardians represent are designated as part of the group of 5,800 putative class members who are currently institutionalized in Ohio." *Id*. at 15. In then granting Guardians' intervention, the Court noted the "odd circular problem for any of the 5,800 putative class members who do not wish to leave their current institutional home or those who are at serious risk of being placed in an ICF and wish to be so placed." *Id*. at 16.

*Id*. at 11.

Contrarily, Defendants argue that the claims of the 13 individuals who are represented by the Guardians have been rendered moot:

> Guardians have sought declaratory and injunctive relief from this Court. (Crossclaims, ECF No. 326 at ¶¶ 362-68 (A-B), PageID #: 5489, 5494-95). There is no genuine dispute of material fact that the Guardians with Wards currently residing in an ICF have been informed of and provided the ICF benefit. Further, there is no genuine dispute of material fact that the remaining Guardians—again, the Guardians for Noah Goldberg and the Edler sisters—have been informed of ICF services and are not interested in their Wards receiving such services. (Goldberg Dep., ECF No. 544 at 69:24-70:11 & 59:8-13, PageID #: 9146-47, 9136; Goldberg Dep., ECF No. 544-1 at Ex. 7, PageID #: 9206; Edler Dep. 10:2-3, 19:24-20:2 & 25:13-15, PageID #: 9218, 9227-28, 9233).
>
> Thus, declaratory or injunctive relief from this Court requiring the State Defendants and [the County Boards] to inform the Guardians of ICF services and provide their Wards with those services would provide no relief, and indeed make no difference to the legal interests of the Guardians. As such, the remaining Crossclaims of all the Guardians are moot.

(Mot. for Summ. J. at 17, ECF No. 547.) This Court agrees.

7

A case becomes moot "'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Here, there is no dispute that all of the individuals whom the Guardians represent are either residing in ICFs or have no intention of seeking a bed in an ICF even though they know of that choice. (Of the thirteen, ten are in ICFs and the other three have knowingly declined to live in an ICF). Thus, the Guardians claims are moot unless they fall into an exception to the mootness doctrine.

There is an exception to the mootness doctrine in cases that are "capable of repetition, yet evading review." *Murphy v. Hunt*, 455 U.S. 478, 481–84 (1982). "[In] the absence of a class action, the 'capable of repetition, yet evading review' doctrine was limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id*. (citing *Illinois Elections Bd. v. Socialist Workers Party*, 440 U.S. 173, 187 (1979) and *Sosna v. Iowa*, 419 U.S. 393 (1975)). "[T]here must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur *involving the same complaining party*." *Id*. (citing *Weinstein v. Bradford, supra*, at 149) (emphasis added).

In the case *sub judice*, there is no suggestion that the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration. Instead, the parties dispute whether there was a reasonable expectation that the same complaining party would be subjected to the same action again. The Guardians argue that their harm is occurring daily because Defendants are not consistently informing of the ICF choice. The capable of repetition yet evading review exception, however, applies only to those claims that involve the same

8

complaining party. Here, there is no chance that Defendants' alleged conduct (not informing parties of the ICF option) could harm any of the individuals the Guardians represent. Thus, the Court concludes that there is no "reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining part[ies]" preventing the exception to the mootness doctrine from applying to the claims of the Guardians.

Further, regardless of the Guardians' suggestion that they have "effectively been representing a *de facto* class of Ohioans," this case has not been certified as a class action as to the Guardians. The Guardians' citation to prior decisions in this action merely highlight the Court's recognition that this case presented broader implications beyond just the named Guardians, which is not uncommon when the state is a defendant. A court "may not 'recognize . . . a common-law kind of class action' or 'create de facto class actions at will.'" *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1539 (2018) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 901 (2008)). Before certifying a class, a court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are satisfied. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). As the United States Supreme Court has cautioned:

> The class action is a creature of the Federal Rules of Civil Procedure. See generally 7A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1751 *et seq.* (3d ed. 2005). It is an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," and "provides a procedure by which the court may exercise . . . jurisdiction over the various individual claims in a single proceeding." *Califano v. Yamasaki,* 442 U.S. 682, 700–701 (1979).
>
> "The certification of a suit as a class action has important consequences for the unnamed members of the class." *Sosna,* 419 U.S., at 399, n. 8, 95 S.Ct. 553. Those class members may be "bound by the judgment" and are considered parties to the litigation in many important respects. *Devlin v. Scardelletti,* 536 U.S. 1, 7, 9–10 (2002). A certified class thus "acquires a legal status separate from the interest asserted by the named plaintiff." *Genesis HealthCare,* 569 U.S., at 74 (quoting *Sosna,* 419 U.S., at 399; alterations omitted).

*Sanchez-Gomez*, 138 S. Ct. at 1538 (parallel citations omitted).

9

The instant action consists of ten Guardians who represent thirteen individuals with disabilities.  Another consequence of this fact is that the affidavits from other community members not parties to this case and presented to the Court in the Guardians' Sur-reply are of no moment in this analysis.

Finally, the Guardians' assertion that the "claims are not moot" because this "Court held 18 months ago when framing the relevant issue: 'if Defendants are not providing information about the ICF choice, Defendants will be ordered to comply with the law.'"  (Mem. in Opp. at 13, ECF No. 554.)  That statement was merely the identification of the factual issue that remained after dismissing the Guardians' other Crossclaims in a decision of the Court rendered without considering mootness.  If there were any party before this Court with a live claim, that statement would describe the issue for determination.  There are no such parties in this case.

### IV.

For the reasons set forth above, the Court concludes that Defendants have met their burden of proving the claims of the Guardians have been rendered moot.  Thus, the Court **GRANTS** the Joint Motion for Summary Judgment of Defendants and the County Boards (ECF No. 547), **GRANTS** the County Boards' Supplemental Motion for Summary Judgment (ECF No. 548), and **GRANTS** the unopposed Motion to File as Amicus Curiae (ECF No. 561), and **GRANTS** the Guardians' Motion to File a Sur-Reply (ECF No. 564). The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants.

**IT IS SO ORDERED.**

**2/1/2023**                                            **s/Edmund A. Sargus, Jr.**
**DATE**                                                     **EDMUND A. SARGUS, JR.**
                                                               **UNITED STATES DISTRICT JUDGE**